# EXHIBIT

# A



U.S. Department of Housing and Urban Development

# FY 2026 Continuum of Care Competition and Youth Homelessness Demonstration Program Grants NOFO

CPD-2600-DC-0025

Applications are due by 8:00 PM Eastern Time on 08/26/2026.

Community Planning and Development

# TABLE OF CONTENTS

**I. BASIC INFORMATION**............................................**5**

A. Summary.................................................................5

B. Agency Contact(s) ................................................7

**II. ELIGIBILITY**..............................................................**9**

A. Eligible Applicants................................................9

B. Eligible Applications...........................................11

C. Cost Sharing or Matching ..................................26

**III. PROGRAM DESCRIPTION**...............................**28**

A. Purpose..............................................................28

B. Goals and Objectives.........................................28

C. Authority.............................................................34

D. Unallowable Costs.............................................35

E. Indirect Costs.....................................................35

F. Program History .................................................35

G. Other Information................................................38

**IV. APPLICATION CONTENTS AND FORMAT.....44**

A. Standard Forms, Assurances, and Certifications44

B. Budget................................................................46

C. Narratives and Other Attachments .....................54

D. Other Application Content ..................................54

**V. APPLICATION REVIEW INFORMATION..........58**

A. Threshold Review ...............................................58

B. Merit Review .......................................................69

C. Risk Review........................................................86

D. Selection Process...............................................87

E. Award Notices....................................................94

**VI. SUBMISSION REQUIREMENTS AND DEADLINES**...........................................................**96**

A. Deadlines...........................................................96

B. Submission Methods...........................................97

C. Other Submission Information ..........................102

D. False Statements.............................................102

**VII. POST-AWARD REQUIREMENTS AND ADMINISTRATION**................................................**106**

A. Administrative, National and Departmental Policy Requirements, and General Terms and Conditions ...............................................................106

B. Environmental Requirements ...........................108

C. Remedies for Noncompliance ..........................110

D. Reporting ..........................................................110

**VIII. CONTACT AND SUPPORT** .........................**115**

A. Agency Contact ................................................115

B. esnaps.hud.gov ...............................................116

C. SAM.gov ...........................................................116

D. Debriefing and Appeals ...................................116

E. Applicant Experience Survey...........................121

F. Other Online Resources...................................121

**APPENDIX**..............................................................**123**

Appendix I. Definitions ..........................................123

# BEFORE YOU BEGIN

If you are a good candidate for this funding opportunity, register in the required systems and review the application materials. If you are already registered, confirm that your information is current and active.

## SAM.gov Registration

You must have an active and up-to-date account with SAM.gov, at the time of application and throughout the life of any award.

To register, go to SAM.gov Entity Registration and click Get Started. From the same page, you can also click the Entity Registration Checklist for the information you will need to register.

It can take several weeks to register in SAM.gov, so get started now if you are planning to apply. SAM.gov also provides each organization with a unique entity identifier (UEI). A valid UEI is required to apply for funding.

## esnaps.hud.gov Registration

You must have an active esnaps.hud.gov account to submit your application. See step-by-step instructions at the CoC Registration and Competition home page.

See Section VI.B. Submission Methods.

## Find the Application Package

Use the Grants Search at Grants.gov and search for opportunity number CPD-2600-DC-0025 . The application package has all the online forms you need to apply. You also need to access the Download Instructions link and review the content before you apply.

If you have other technical difficulties using Grants.gov, contact the Support Center on Grants.gov.

To get updates on changes to this notice of funding opportunity (NOFO), click Subscribe from the View Grant Opportunity page on Grants.gov.

---

**Application Deadline**
Applications are due by 8:00 PM Eastern Time on 08/26/2026.
See Section VI.A. of this NOFO.

**HUD Listserv**
To get **email alerts** about current and future funding opportunities, **subscribe** to HUD's Funding Opportunities listserv.

---

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 5 of 129 PageID #: 163

# I. BASIC INFORMATION

I.  Basic Information

    A.  Summary

B.  Agency Contact(s)

TABLE OF CONTENTS

# I. BASIC INFORMATION

See Contact and Support section of this NOFO.

## A. Summary

**Federal Agency Name:**
United States Department of Housing and Urban Development (HUD)

**HUD Program Office:**
Community Planning and Development

**Announcement Type:**
Initial

**Program Type:**
Discretionary

**Paperwork Reduction Act Information:**
2506-0044

**Due Date for Intergovernmental Review:**
See Section VI.C.1.

| Key Facts | Key Dates |
|---|---|
| **Opportunity Name:**<br>FY 2026 Continuum of Care Competition and Youth Homelessness Demonstration Program Grants NOFO<br>**Opportunity Number:**<br>CPD-2600-DC-0025<br>**Federal Assistance Listing(s):**<br>14.267 | **Application Due Date: 8:00:00 PM Eastern Time on:**<br>08/26/2026<br>**Anticipated Award Date:**<br>12/01/2026<br>**Estimated Performance Period Start Date:**<br>01/01/2027<br>**Estimated Performance Period End Date:**<br>12/31/2027 |

## 1. NOFO Summary

The Continuum of Care (CoC) Program is a national competition between geographic areas designed to:

- promote a community-wide commitment to the goal of ending homelessness;

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 7 of 129 PageID #: 165

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

- provide funding for efforts by nonprofit providers, States, Indian Tribes or Tribally Designated Housing Entities [as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)], and local governments to quickly rehouse homeless individuals and families, persons experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking, and homeless youth while minimizing the trauma and dislocation caused by homelessness;

- promote access to, and effective utilization of, mainstream programs and programs funded with State or local resources; and

- optimize self-sufficiency among homeless individuals and families.

Self-sufficiency, consistent with the purposes of the McKinney-Vento Act, 42 U.S.C. § 11381(4), means the ability to meet basic needs, including a place to live, without public or private assistance. This is consistent with dictionary definitions of the term. The Oxford English Dictionary defines *self-sufficiency* as the "state or condition of not needing or relying on external assistance, support, or aid." Similarly, Merriam-Webster defines *self-sufficient* as "able to maintain oneself or itself without outside aid: capable of providing for one's own needs."

The goal of the Youth Homelessness Demonstration Program (YHDP) is to support the development and implementation of a coordinated community approach to preventing and ending youth homelessness and sharing that experience with and mobilizing communities around the country toward the same end. The population to be served by the demonstration program is homeless youth ages 24 and younger, including unaccompanied and pregnant or parenting youth.

## 2. Funding Details

### Type of Funding Instrument

G (Grant)

### Available Funds

Funding of approximately **$4,040,000,000** is available through this NOFO.

Additional funds may become available for award. Use of these funds is subject to statutory constraints. All awards are subject to the selection process contained in this NOFO.

On February 3, 2026, the President signed H.R. 7148 authorizing the Consolidated Appropriations Act, 2026 (Public Law 119-75) which makes approximately $4,010,000,000 in CoC Program funding available.

Of the $4,010,000,000, HUD is making available at least $52,000,000 for Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus) projects.

Additionally, HUD is making available approximately $52,000,000 in funding from the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4) for Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus) projects, described in section II.B.3.eof this NOFO. HUD reserves the right to use the earliest available

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 8 of 129 PageID #: 166

fiscal year funds for projects that are able to meet the FY 2025 CoC DV Bonus obligation deadline (September 30, 2027), so long as the total amount awarded for each DV Bonus project is consistent with the funding process outlined in V.D3.d.

HUD may add to the total amount with available funds that have been carried over or recaptured from previous fiscal years. All requirements in the FY 2026 application process, including requirements for the entire CoC Consolidated Application and the total amount of funds available, are included in this NOFO.

### Estimated Number of Awards

7000 awards from available funding

### Length of Performance Period:

12-month project period and budget period

18-month project period and budget period

24-month project period and budget period

36-month project period and budget period

42-month project period and budget period

48-month project period and budget period

60-month project period and budget period

Length of Periods Explanation:


## B. Agency Contact(s)

See Contact and Support section of this NOFO.

I. Basic
Information

II. Eligibility

III. Program
Description

IV. Application
Contents and
Format

V. Application
Review
Information

VI. Submission
Requirements and
Deadlines

VII. Post-Award
Requirements and
Administration

VIII. Contact and
Support

Appendix

# II. ELIGIBILITY

II. Eligibility

A. Eligible Applicants

B. Eligible Applications

C. Cost Sharing or Matching

TABLE OF CONTENTS

I. Basic
Information

II. Eligibility

III. Program
Description

IV. Application
Contents and
Format

V. Application
Review
Information

VI. Submission
Requirements and
Deadlines

VII. Post-Award
Requirements and
Administration

VIII. Contact and
Support

Appendix

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 10 of 129 PageID #: 168

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## II. ELIGIBILITY

### A. Eligible Applicants

If your organization is not an eligible applicant, your application won't be reviewed or scored, and you won't receive funding from HUD.

**1. Eligible Entity Types:**

00 (State governments)

01 (County governments)

02 (City or township governments)

04 (Special district governments)

06 (Public and State controlled institutions of higher education)

07 (Native American tribal governments (Federally recognized))

08 (Public housing authorities/Indian housing authorities)

11 (Native American tribal organizations (other than Federally recognized tribal governments))

12 (Nonprofits having a 501(c)(3) status with the IRS, other than institutions of higher education)

Additional Information on Eligibility

You cannot apply as an individual.

For-profit entities are not eligible to apply for grants or to be subrecipients of grant funds.

To be eligible for funding under the FY 2026 Continuum of Care and Youth Homelessness Demonstration Program Grants NOFO, project applicants must meet all statutory and regulatory requirements in the McKinney-Vento Homeless Assistance Act, (42 U.S.C. 11381–11389) (the Act) and the CoC Program Rule found in 24 CFR part 578 (the Rule).

Project applicants can obtain a copy of the Act and the Rule on HUD's website or by contacting the NOFO Information Center at 1-800-483-8929. Individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities may visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs for more information on how to make an accessible telephone call to HUD.

A faith-based organization may apply on the same basis as any other organization, subject to the requirements in 24 CFR 5.109, and receive the full protections for religion in Federal law, including the Free Speech and Free Exercise Clauses of the Constitution, the Religious Freedom Restoration Act (42 U.S.C. § 2000bb-1), Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e-1(a), 2000e-2(e), and the Americans with Disabilities Act (42 U.S.C. § 12113(d)). HUD does not engage in any unlawful and improper conduct, policies, or practices that target faith-based organizations.

An organization may seek a religious accommodation from any requirements of this program or other HUD requirement that substantially burden its religious exercise under the Religious

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 11 of 129 PageID #: 169

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Freedom Restoration Act or other applicable law, consistent with 24 CFR 5.109(c). If such an accommodation is requested, HUD will not deny the organization unless it determines that doing so is necessary to further a compelling governmental interest and is the least restrictive means of achieving that interest, consistent with applicable law.

Faith-based organizations may also hire, fire, and make other employment decisions on the basis of their sincerely held religious beliefs, including requiring employees to adhere to religious tenets, practices, and standards of conduct, without jeopardizing their eligibility to receive HUD funds, consistent with applicable law.

A faith-based organization may not use direct financial assistance from HUD to support or engage in any explicitly religious activities except where consistent with the Free Exercise Clause and Establishment Clause of the First Amendment, the Religious Freedom Restoration Act, and any other legal protections for religious exercise. Such an organization also may not, in providing services funded by HUD, or in their outreach activities related to such services, discriminate against a program beneficiary or prospective program beneficiary on the basis of religion, a religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

## 2. Restrictions

## a. Statutory and Regulatory Requirements

You must meet the current General Statutory and Regulatory Eligibility Requirements. If you do not meet these requirements, your application won't be scored, and you won't receive funding from HUD. This is a threshold requirement for all HUD funding.

## b. Resolution of Civil Rights Matters

If you have any outstanding or unresolved judgments for violating civil rights laws, you must settle them before you apply. If you don't, settle the civil rights law violations before you apply, your application won't be scored, and you won't receive funding from HUD. This is a threshold requirement for all HUD funding.

Applicants with outstanding, unresolved judgments against them for violations of civil rights laws must resolve those judgments before the application submission deadline or the applicant will be deemed ineligible.

**(1)** An applicant is ineligible for funding if the applicant has received notice of a judgment imposed against them for violations of:

**(a)** the Fair Housing Act or a substantially equivalent state or local fair housing law for discrimination because of race, color, religion, sex, national origin, disability or familial status; or

**(b)** Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Section 109 of the Housing and Community Development Act of 1974, the Americans with Disabilities Act, or the Violence Against Women Act or substantially equivalent state or local laws.

**(2)** HUD will determine if actions to resolve the judgment taken before the application deadline date will resolve the matter. Examples of actions that may be sufficient to

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 12 of 129 PageID #: 170

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

resolve the matter include, but are not limited to:

**(a)** Current compliance with a voluntary compliance agreement signed by all the parties;

**(b)** Current compliance with a HUD-approved conciliation agreement signed by all the parties;

**(c)** Current compliance with a conciliation agreement signed by all the parties and approved by the state governmental or local administrative agency with jurisdiction over the matter;

**(d)** Current compliance with a consent order or consent decree; or

**(e)** Current compliance with a final judicial ruling or administrative ruling or decision.

## B. Eligible Applications

1. An application from an eligible entity is considered for funding if it meets basic threshold requirements and passes merit review.

2. Your application must support the goals of this NOFO.

**3.** The following types of project applications will be eligible for completion and submission under this NOFO.

**a.** *CoC Planning projects.* All Collaborative Applicants are eligible and encouraged to apply for CoC Planning funds which they may use according to 24 CFR 578.39. CoC Planning project applications must be submitted by the CoC-designated Collaborative Applicant and the Collaborative Applicant organization must match the organization listed as the Collaborative Applicant in the CoC Applicant Profile in e-snaps. Planning projects will not affect a CoC's available amount for new and renewal project applications because it is not included in the CoC's ARD calculation.

**b.** *UFA Costs projects.* Only those CoC-designated Collaborative Applicants approved for UFA designation by HUD are eligible to apply for UFA Costs project funds as described in 24 CFR 578.41. UFA Costs project applications must be submitted by the CoC-designated Collaborative Applicant and the Collaborative Applicant organization must match the organization listed as the Collaborative Applicant in the CoC Applicant Profile in e-snaps. UFA Costs projects will not affect a CoC's available amount for new and renewal project applications as it is not included in the CoC's ARD calculation.

**c.** *CoC Bonus Project.* The CoC Bonus allows CoCs to use up to 15 percent of their Final Pro Rata Need (FPRN) to create one or more new project applications with the following limitations:

**(1)** The CoC Bonus amount for a Split CoC that is not a New Tribal CoC will be no less than $250,000 and no more than $3,000,000;

**(2)** The CoC Bonus for a Merged CoC will be no less than $750,000 and no more than $10,000,000;

**(3)** The CoC Bonus for a CoC that is neither a Split CoC nor a Merged CoC will be no

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 13 of 129 PageID #: 171

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

less than $500,000 and no more than $5,000,000.

**(4)** The CoC Bonus for a New Tribal CoC will be no less than $500,000 and no more than $5,000,000.

**Definitions:**

**Split CoC** is a CoC that has newly registered during the prior three registration periods (FY 2023 CoC Registration period or later) and includes geographic area that was previously associated with another CoC that continues to operate.

**Merged CoC** is a CoC that includes geographic area that was associated with one or more other CoCs in any of the prior three registration periods (the FY 2023 CoC Registration period or later) and that CoC no longer operates.

**New Tribal CoC** is a CoC that has newly registered in one of the prior three registration periods (FY 2023 CoC Registration period or later) that includes a Formula Area [see section 2.b.(3)of Appendix I].

**d.** *Domestic Violence, Dating Violence, Sexual Assault, and Stalking Renewal Projects (DV Renewal Projects).* Are eligible renewal projects that were previously funded, in whole or in part, with DV Bonus funding or were at some point expanded using DV Bonus funding and serve the population described in **III.G.11.c**.

**e.** *Domestic Violence, Dating Violence, Sexual Assault, and Stalking New Projects (DV Bonus and DV Reallocation Projects).* A new DV project created through (1) the DV Bonus or (2) through reallocation of renewal DV projects.

**(1)** CoCs may apply for DV Bonus projects where the total amount for one year of funding for all DV Bonus applications is up to 20 percent of its Preliminary Pro Rata Need (PPRN); however, this amount is limited to:

• A minimum of $50,000 if 20 percent of the CoC's PPRN is less than $50,000; or
• A maximum of $5 million if 20 percent of the CoC's PPRN is more than $5 million.

**(2)** CoCs may reallocate eligible DV Renewal projects to create new DV Reallocation projects.

**(3)** New projects or expansion projects created with DV Bonus or DV Reallocation funding must meet DV Bonus and DV Reallocation project requirements. Additionally, the sum of all DV Reallocation applications must be for the same amount of funding made available from the DV Renewal funding being reallocated.

**(4)** DV Bonus and DV Reallocation may only be used to create new SSO-Coordinated Entry, Rapid Re-housing (PH-RRH), and Transitional Housing (TH) projects.

**(a)** For PH-RRH and TH projects, the application must demonstrate:

The project applicant's experience serving individuals and families of persons experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking, and their ability to house survivors and meet safety outcomes.

**(b)** For Supportive Services Only Coordinated Entry (SSO-CE) projects, the

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 14 of 129 PageID #: 172

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

application must demonstrate:

The project is designed to implement policies, procedures, and practices that equip the CoC's coordinated entry to better meet the needs of homeless individuals who are experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking.

**(5)** The following restrictions apply to the DV Reallocation process:

**(a)** DV Renewal projects that have a SSO-CE component cannot be reallocated.

**(b)** Reallocated DV Renewal funding cannot be used to expand a CoC or YHDP Renewal grant.

**(c)** DV Renewal projects cannot be reallocated to create new non-DV CoC projects. If HUD determines that a project applicant incorrectly classified one or more new projects as a DV Reallocation, HUD may reclassify the project(s). For example, if the proposed project is not dedicated to serving individuals and families fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking, HUD may condition the project to ensure the required population is served.

To avoid any potential delays in funding or a loss in ARD, CoCs should review the FY 2026 GIW provided by HUD to determine which renewal projects were originally awarded DV Bonus or DV Reallocation funds, including CoC projects that were expanded with DV Bonus or DV Reallocation funding in a prior year competition.

**(d)** If a project does not have enough funding available from reallocation sources, HUD will reduce the project to the amount available, if any, and determine if the project is feasible at the reduced rate.

**f.** ***New Projects Created with CoC Bonus or Through the CoC Reallocation process.*** CoCs may apply for the following types of new CoC projects through the CoC Bonus or CoC Reallocation processes:

**(1)** SSO projects.

**(2)** TH projects.

**(3)** PH-PSH projects.

**(4)** PH-RRH projects.

**(5)** Dedicated HMIS projects for the costs at 24 CFR 578.37(a)(4) that may only be carried out by the HMIS Lead, which is the recipient or subrecipient of an HMIS grant and is listed on the HMIS Lead form in the CoC Applicant Profile in e-snaps. Additionally, if the CoC has organizations within its geographic area that are victim service providers, the HMIS Lead, or subrecipient, may request HMIS funds for a comparable database. Victim service providers may also request HMIS funds in their project application budgets to enter data into a comparable database.

**(6)** SSO-CE projects to develop or operate a Coordinated Entry system.

In addition to the fact that HUD may reject a CoC Bonus or CoC Reallocation project as described elsewhere in this NOFO, HUD may reclassify, reduce, or reject a CoC Bonus or

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 15 of 129 PageID #: 173

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

CoC Reallocation project as described below.

If HUD determines that a CoC Bonus or CoC Reallocation project applicant or a Collaborative Applicant incorrectly classified one or more new projects as reallocation or CoC Bonus, HUD may reclassify the project(s) as either reallocation or CoC Bonus if the CoC exceeded either its reallocation or CoC Bonus amounts. For example, if a project applicant or the Collaborative Applicant classified a new project application as reallocation but did not reallocate funds in whole or part from an eligible renewal project, and there are CoC Bonus funds available, HUD may reclassify the new project application as CoC Bonus during its review. If a project applicant uses both reallocation and CoC Bonus amounts to create a single new project but did not have enough available from either source, HUD will reduce the project to the amount available, if any.

If a project applicant or the Collaborative Applicant classified a new project application as reallocation but did not reallocate funds in whole or part from an eligible renewal project, HUD may reduce the funding amount or reject the new project application during its review.

For new projects created through the CoC Bonus process, HUD must determine whether the CoC has demonstrated that the projects are evaluated and ranked based on the degree to which they improve the CoC's system performance.

**g.** *Youth Homeless Demonstration Program (YHDP).* Consistent with the requirements of the Consolidated Appropriations Act, 2026, funding for the CoC Program may be used to competitively or non-competitively renew or replace grants for YHDP projects.

In order to ensure the best use of federal dollars, HUD will competitively award all YHDP projects, including renewal and replacement YHDP projects. CoCs seeking to reallocate YHDP projects may only reallocate to other youth projects. See section II.B.3.h. of this NOFO for additional information.

While YHDP projects can use the replacement process to consolidate projects as outlined in section II.B.3.h these projects cannot consolidate with non-YHDP projects. YHDP Renewal projects may apply to expand its current project through the YHDP Replacement process. Unified Funding Agencies (UFAs) are prohibited from moving funds out of or into YHDP-funded projects and mixing funding from any other non-YHDP funded project. UFAs may replace eligible YHDP renewal projects through the YHDP Replacement process.

To ensure YHDP activities are implemented in an effective, consistent, and proven way, all YHDP projects funded under this NOFO may only be used to serve homeless youth, age 24 and younger and all YHDP Renewal and YHDP Replacement projects, including YHDP reallocation, are subject to the following provisions of the Rule, as may be amended from time to time, except where they conflict with NOFO requirements, or with the Special YHDP Activities identified in section IV.B.2 of this NOFO: 24 CFR 578.3, 578.15, 578.23, 578.25, 578.29, 578.31, 578.37, 578.43, 578.45, 578.47, 578.49, 578.51, 578.53, 578.55, 578.57, 578.59, 578.61, 578.63, 578.73, 578.75, 578.77, 578.79, 578.81, 578.83, 578.85, 578.87, 578.89, 578.91, 578.93(a)-(b), 578.93(d)-(e), 578.95, 578.97, 578.99, 578.103(a)(3)-(14),578.103(a)(16)-(18), 578.103 (b),–578.103 (e), 578.105, 578.107 and 578.109. The requirements of 2 CFR 200.306, as may be amended from

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 16 of 129 PageID #: 174

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

time to time, with the exception of 200.306(b)(5) apply. Federal fair housing and nondiscrimination requirements cannot be waived.

**h. *New YHDP Projects Created through YHDP Replacement processes.*** CoCs may replace renewing YHDP project(s) to create one or more new YHDP Replacement projects, including YHDP Reallocation.

**(1)** YHDP Renewal project applicants may submit renewal applications for minor changes to a project, including adding or modifying select Special YHDP Activities listed in section IV.B.2 of this NOFO; however, if a renewing YHDP project applicant chooses to modify the current project in a way that does not meet the definition of renewal project found at Appendix I of this NOFO, it must submit a YHDP Replacement project application.

**(2)** A YHDP Renewal project applicant may apply to expand its current project through the YHDP Replacement process. See section II.B.3.i for more information.

**(3)** A YHDP Replacement project application must include the grant number from the YHDP Renewal project(s) being replaced with the YHDP Replacement project application. The CoC's Collaborative Applicant is responsible for ensuring that only a renewal YHDP or replacement YHDP project application is submitted through the CoC Project Priority Listing for each eligible YHDP project. If the Collaborative Applicant submits both a renewal project application and YHDP replacement project application for the same project, HUD will only select the renewal YHDP project application;

**(4)** HUD will only fund new YHDP Reallocation projects through the YHDP Replacement process as described below and in section IV.B.2 of this NOFO:

**(a)** TH or Crisis Residential Transitional Housing, which is a form of transitional housing that is short-term, low-barrier, using a congregate living setting, and provides access to the following supportive services in particular: family engagement and unification, case management, emergency triage services, and other supportive services whose purpose is to move youth rapidly into stable housing.

**(b)** SSO, including, but not limited to, housing search and placement services, case management, or street outreach.

**(c)** SSO-CE.

**(d)** SSO - Host Home and Kinship Care. A model in which a family agrees to permit a youth to reside with them. Recognizing that the addition of another person in the home may increase costs to the family, HUD will entertain applications that propose to house youth with families and to subsidize the additional costs attributable to housing the youth. The residence is in a community-based setting. The family could be related to the youth and the length of stay may be time-limited or without time limits. YHDP funds may be used to subsidize the increased costs to the family that are attributable to housing the youth. An example of eligible costs would be additional food or transportation costs, which are eligible supportive services under 24 CFR 578.53(e)(7) or 24 CFR 578.53(e)(15). Recipients must keep records related to this determination by the recipient for HUD review upon request.

**(e)** HMIS.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 17 of 129 PageID #: 175

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

**(f)** Permanent Housing, including PH-PSH and PH-RRH projects. Current YHDP recipients may apply for Permanent Housing projects through the YHDP Replacement process only when the recipient is consolidating multiple (up to 10) existing YHDP Permanent Housing renewal grants. In these instances, the YHDP Replacement project must have the same recipient as the existing renewal grants being consolidated and the BLIs for the YHDP Replacement project application must match the sum of the BLIs for each of the individual projects as they appear on the grant agreement, or the grant agreement as amended.

**(5)** HUD will review new YHDP Reallocation and YHDP Replacement project applications to ensure the activities requested are eligible and the amounts requested do not exceed the amounts available for YHDP reallocation or, in the case of YHDP Replacements, the ARA of the renewal project(s) being replaced. HUD will not reject YHDP project applications for not meeting threshold requirements; however, HUD may require YHDP grant recipients to correct or revise information submitted after the final award announcement, prior to executing the grant agreement. HUD will not select YHDP project applications that fail to score high enough according to the Tier 2 scoring process described in V.D.

**(6)** YHDP Replacement projects may establish an operating start date that will be the day after the end of the previous grant term for the expiring YHDP renewal.

**(7)** A YHDP renewal project applicant may submit a YHDP Replacement application to change from one program component to another eligible component. Replacement grant applications to change program components must fully transition to the new component by the end of the 1-year YHDP Replacement grant term and may only apply for renewal in the next CoC Program Competition under new the component.

YHDP grants changing component types that include housing costs (e.g. PHH, PH-RRH, or TH) to an SSO grant may not pay for rental assistance or leasing costs with SSO grant funding during the transition period. While the project is transitioning to SSO during the 1-year period after award, the project must use other funding to cover housing costs while it transitions to the new component.

**(8)** YHDP Replacement projects cannot request capital costs (i.e., new construction, acquisition, or rehabilitation).

**i.** *Expansion Project.* The process used by eligible renewal project applicants to add funds to an existing CoC Renewal, DV Renewal or YHDP Renewal project to expand its current operations either through reallocation, DV Bonus or a CoC Bonus project application. The new funding being added to the existing renewal must be submitted as a new project in e-snaps. This portion of the project is known as new expansion project.

HUD will allow project applicants to apply for new expansion projects to expand existing projects to increase the number of units, persons served, services provided to existing program participants, or to add additional activities to HMIS and SSO-CE projects.

The new expansion project applications must meet the project eligibility and project quality thresholds in V.A.4.a and V.A.4.c of this NOFO and must be for the same component as the project being expanded. Additionally, the renewal project being expanded must have

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 18 of 129 PageID #: 176

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

an expiration date in CY 2027.

In the case of YHDP Replacement applications to expand existing YHDP Renewal projects, applicants must submit a YHDP Replacement and a YHDP Reallocation application separately and each project must be included in the CoC's Priority Listing.

If a project application does not meet the following requirements, or if the renewal project the new project application is proposing to expand is not selected for award, HUD will review the new expansion project and will consider it as a standalone project during the selection process provided that the project is feasible on its own with its requested funding and provided it passes project eligibility and project quality threshold requirements.

If both the new expansion project and the renewal project it expands are conditionally selected for funding, one grant agreement incorporating both approved project applications will be executed.

**(1)** The following limitations apply to expansion grant applications:

**(a)** If the new expansion project exceeds the amount of funding available to the CoC under the reallocation or Bonus processes, HUD will reduce the funding request for the new expansion project to the available amount, which could affect the activities of the new expansion project.

**(b)** HUD will not fund expansion applications that include requests for capital costs (i.e., new constructions, rehabilitation, or acquisition) and will only allow 1-year funding requests.

**(c)** Recipients cannot apply to expand a project included in a grant consolidation during the same funding year. If an applicant applies to expand a project included in a grant consolidation, HUD may consider the expansion project for funding if it meets all the requirements of a new standalone project.

**(d)** CoC Bonus, CoC Reallocation, DV Bonus, or DV Reallocation funding cannot be used to expand a YHDP renewal project.

**(e)** If CoC Bonus, CoC Reallocation, DV Bonus, or DV Reallocation funding is used to expand a DV Renewal project, the entire expanded project must be 100 percent dedicated to serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking and who qualify under paragraph (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act and the project must meet all the DV project requirements in sections II.B.3.d and II.B.3.e of this NOFO.

**(f)** New YHDP projects created with reallocated YHDP funding may be used to expand an existing YHDP renewal project through the YHDP Replacement process. The expansion YHDP project must meet the requirements of a new YHDP Replacement application.

**(2)** Project applicants expanding an eligible CoC Renewal or DV Renewal project must:

**(a)** submit a separate renewal project application and the new project application with expansion information (both projects must be ranked by the CoC with unique rank numbers);

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 19 of 129 PageID #: 177

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(b)** in the new project application, enter the grant number of the eligible renewal project proposed for expansion;

**(c)** indicate how the new project application will expand units, beds, services, persons served, or services provided to existing program participants, or in the case of HMIS or SSO-CE project applications, how the current activities will be expanded for the CoC's geographic area; and

**(d)** ensure the funding request for the expansion grant is within the funding parameters allowed under CoC Bonus, CoC Reallocation, DV Bonus, or DV Reallocation amounts available.

**(3)** Project applicants expanding an eligible YHDP Renewal project through the YHDP Replacement process must:

**(a)** submit a new YHDP Reallocation project application with the expansion information through the YHDP Replacement process, including the grant number of the YHDP Renewal project being expanded.

**(b)** indicate how the expansion project application will expand units, beds, services, persons served, or services provided to existing program participants.

**(c)** ensure the funding request for the YHDP Reallocation application to expand the YHDP Renewal project is within the funding parameters allowed under the YHDP Reallocation amount available.

**(d)** ensure the YHDP Renewal and YHDP Reallocation project applications meet the requirements in sections II.B.3.h and II.B.4 of this NOFO.

**(4)** DV Bonus and DV Reallocation Expansion Applications.

**(a)** DV Bonus and DV Reallocation funds can only be used for an application to expand an existing renewal project if the new expansion project is dedicated to individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking and who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act.

**(b)** Project applicants may use DV Bonus funds to expand an existing renewal project that is not currently dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to dedicate additional beds, units, persons served, or services provided to existing program participants of this population; however, only the new project application for the expansion will be considered for DV Bonus funds.

**(c)** If an applicant proposes to use DV Reallocation funds to expand an existing renewal project that is not currently dedicated to serving individuals and families of persons experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking to dedicate additional beds, units, persons served, or services provided to existing program participants of this population, the entire project, including the renewal project being

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 20 of 129 PageID #: 178

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

expanded, must serve 100 percent individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking and who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act. In the case of DV Reallocation Projects, HUD will use the Tier 1 and Tier 2 selection process described in sections V.D.3.a and V.D.3.b of this NOFO.

**j. *Consolidation Project.*** HUD encourages the consolidation of eligible renewal grants. Applicants intending to use the consolidation process to combine two or more, but no more than 10, eligible renewal projects (including renewing YHDP projects and renewal Special NOFO Competition projects), may do so through the renewal project application. The projects being combined during a grant consolidation will continue uninterrupted.

To be eligible for consolidation, the projects must have the same recipient and be for the same component. This does not apply to CoCs that HUD designates as UFAs, because UFAs enter into a single renewal grant agreement with HUD for the CoC's entire geographic area. If applicable, HUD issues a separate UFA grant agreement that only includes YHDP grants.

**(1)** The period of performance and budget period of the expiring grants must have end dates in CY 2027. Applicants intending to use the consolidation process must ensure:

**(a)** Budget Line Items (BLIs) for the consolidated project application submitted exactly match the sum of the BLIs for each of the individual projects as they appear on the grant agreement, or the grant agreement as amended;

**(b)** inclusion of the expiring grant numbers with period of performance and budget period start and end dates for the projects that are consolidating;

**(c)** are in good standing with HUD, meaning none of the projects have:

**i.** outstanding audit or monitoring findings,
**ii.** outstanding obligation to HUD that is in arrears,
**iii.** unresolved construction delays,
**iv.** a history of poor financial management/drawdown issues,
**v.** history of low occupancy levels, or lack experience in administering the project type, or
**vi.** other capacity issues.

**(d)** the projects have the same recipient and are for the same component.

**(2)** YHDP Renewal projects that wish to consolidate may establish a single YHDP Replacement grant to replace multiple YHDP Renewal grants.

**(3)** The following projects cannot be consolidated and if a project application meeting these characteristics attempts to consolidate, HUD will not consider the consolidation, but rather select the projects individually provided they pass project eligibility and project quality threshold requirements:

**(a)** a DV Renewal project cannot consolidate with a CoC Renewal project (a project not dedicated to serving individuals and families who meet the eligibility criteria in Section III.G.11 of this NOFO, including a project originally funded under the Special

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 21 of 129 PageID #: 179

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

NOFO Competition, and a YHDP Renewal project), or a project originally funded under the Special CoC NOFO Competition;

**(b)** a YHDP Renewal project cannot consolidate with a CoC Renewal project (including those projects originally funded under the Special CoC NOFO Competition) or a DV Renewal project;

**(c)** a project originally funded under the Special CoC NOFO Competition through the Rural Set Aside cannot consolidate with any other type of project (e.g., a project originally funded with DV Bonus or a project originally funded through the Unsheltered Set Aside in the Special NOFO Competition) except another project originally funded through the Rural Set Aside. This means, a project originally funded under the Special NOFO through the Rural Set Aside can only consolidate with another Special CoC NOFO Competition project originally funded through the Rural Set Aside;

**(d)** a TH and a PH project cannot consolidate to form a Joint TH/PH-RRH component project;

**(e)** transition grants cannot consolidate with any other project; and

**(f)** recipients cannot apply to consolidate projects and apply to expand the consolidated project during the same funding year. If an applicant applies to expand projects that are involved in a consolidation of grants, HUD may consider the expansion project for funding if it meets all the requirements of a new standalone project.

**(4)** To request the consolidation of eligible renewal projects, project applicants must submit renewal projects for the individual projects to be included in the consolidation and each project application must identify the grant number that will survive which must be the grant number with the earliest start date CY 2027. Project applications for the grants that are proposed to be part of the consolidation must be ranked with a unique rank number for each project, and if all those grants are selected, HUD will conditionally award the single surviving grant based on its ranked position to include the amount of funding of all grants included in the consolidation. All other project applications included in the surviving grant will be removed from the CoC's ranking resulting in project applications below to slide up one ranked position. Project applicants must not submit a consolidated project application that contains two different components (e.g., PH and TH).

**(5)** The start date for the consolidated grant, if conditionally awarded, will be the day after the expiration date of the eligible renewal project with the earliest expiration date. HUD will calculate the expiration date for the consolidated grant by averaging the expiration dates for all expiring grants included in the consolidated grant weighted by the size of each expiring grant. If that date falls on the first through the fifteenth of a month, then the expiration date will be the last day of the previous month. If the date falls on the sixteenth through the end of the month, then the expiration date will be the last day of the month.

**(6)** HUD will calculate the expiration date for the consolidated grant as follows: It will be 'X' months after the end of the 12th month after the start date for the consolidated grant

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 22 of 129 PageID #: 180

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

with 'X' determined by calculating the sum for all grants of the total award times the number of months after the expiration of the first expiring grant that the grant expires and dividing that sum by the total award for the consolidated grant. If the calculation of 'X' results in a partial month, if it is less than 0.5, then the consolidated grant will expire on the last day of the previous month, and if it is 0.5 or more, then the consolidated grant will expire on the last day of the calculated month.

**(7)** Collaborative Applicants designated by HUD as UFAs have more flexibility in how they manage their CoC Program-funded projects, making the consolidation of projects during the CoC Program competition unnecessary. A Collaborative Applicant with UFA designation can consolidate projects during the grant term, so long as the consolidations are not combining different component types and the projects are funded under the same grant (e.g., projects are currently funded under the same renewal grant). If a UFA-designated Collaborative Applicant consolidates projects during the grant term, it can apply to renew them during the CoC Program Competition as consolidated projects.

**k.** *Transition Grant.* A Transition grant is an application to fund a new CoC project through the reallocation process to transition eligible CoC renewal project(s) (including a Special NOFO project or DV Renewal project) from one program component to another eligible component over a 1-year period. Transition grant applications awarded FY 2026 funds must fully transition to the new component by the end of the 1-year grant term and may only apply for renewal in the next CoC Program Competition under the component to which it transitioned.

**(1)** Renewal Grants expiring in CY 2027 may submit a FY 2026 transition grant application to request a component type change. The transition grant's operating start date will be the day after the end of the previous grant term for the expiring component. For transition grants reallocated from more than one project, the operating start date of the transition grant will be the day after the end of the earliest expiring grant term. The grant term may be extended consistent with 2 CFR 200.308 and 2 CFR 200.309.

**(2)** Applicants wishing to apply for a transition grant must have the consent of its Continuum of Care; and the new project application must meet project eligibility and project quality thresholds established by HUD in sections V.A.4.a and V.A.4.c of this NOFO. If the project application identifies the project as a transition grant and the CoC accepts the new transition grant project on the New Project Application Project Listing in the CoC Priority Listing, HUD will consider this as CoC consent.

**(3)** For a new project to be considered a transition grant, the new project applicant must be the recipient listed on the current grant agreement for the eligible renewal grant(s) being eliminated and must include the grant number(s) of the project(s) being eliminated to create the new project and attach a copy of the most recently awarded project application. FY 2025 grants expiring in CY 2027 that were not required to submit a FY 2025 renewal application for the FY 2025 funding opportunity, the applicant will attach a copy of the FY 2024 CoC Program Competition project application.

**(4)** Transition Grant Restrictions:

YHDP Renewal grants are not eligible to use the transition grant process. YHDP Renewal grants must submit a YHDP Replacement application to change component

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 23 of 129 PageID #: 181

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

types. If HUD determines a new project submitted as a transition grant does not qualify, but meets all other new project requirements, HUD may award the project as a new non-transition grant project. If this occurs, the new project operating start date will be reflected in the grant agreement.

## 4. Renewal Project Requirements.

As set forth in 24 CFR 578.33, projects may renew under the CoC Program NOFO to continue ongoing leasing, operating, supportive services, rental assistance, HMIS, and project administrative costs.

Awards HUD made under the CoC Program (including projects awarded 1-year of funding under the FY 2025 CoC Program funding opportunity), projects originally awarded under the Special NOFO, and YHDP projects are eligible for renewal with FY 2026 CoC Program funds if they are currently operating and have an expiration date in CY 2027 (the period from January 1, 2027, through December 31, 2027).

**a.** Compliance and re-evaluation. To maintain the competitive and objective nature of the CoC Program under the McKinney Vento Act and comply with 2 CFR 200.309 and 200.205, which together require renewals for federal grants to be issued based on objective and merit-based criteria, all renewals will be re-evaluated each year. Further, HUD may condition renewal on compliance with audits for large grant recipients (over $1,000,000) as required by 2 CFR 200.501 and other post-award requirements from prior years, as required by 2 CFR Part 200, 24 CFR Part 91, 24 CFR Part 578, and other applicable law.

**b.** Renewal project applications must be submitted by the same recipient that signed the executed grant agreement for the grant being renewed, or entity that became the recipient through a grant agreement transfer amendment. To be eligible as a renewal project, the application must (1) be for the same amount of funding before any adjustments described in this NOFO (e.g. FMR adjustments), or the amount reduced due to reallocation; (2) be for the same program component; and (3) in the case of DV Renewal projects and YHDP Renewal projects, must continue to serve the same subpopulation.

**c.** If HUD conditionally selects a renewal grant for funding that does not have an expiration date that meets the renewal eligibility requirements prescribed by this NOFO, HUD will withdraw any funds conditionally selected for award.

**d.** Projects that were eligible under predecessor programs, specifically Safe Haven projects, will continue to be eligible under the CoC Program and will continue to be eligible for renewal of leasing, operating, supportive services, rental assistance, HMIS, and project administrative costs under 24 CFR 578.33(d)(1) so long as the project continues to serve the same population and the same number of program participants or units in the same type of housing as identified in their most recent grant agreement, or amended grant agreement, signed before August 31, 2012. No new Safe Haven projects will be funded; however, existing Safe Haven projects may be renewed to continue to carry out activities that are eligible costs under Subpart D of the Rule.

**e.** The total request for each renewing project, including YHDP Renewal and YHDP Replacement projects, is limited to a project's ARA. In cases where two or more eligible

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 24 of 129 PageID #: 182

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

projects are being consolidated through the project application, the total ARA of the consolidation project must be equal to the sum of the original ARA of the renewal projects before consolidation.

**f.** Because funds for acquisition, new construction, and rehabilitation are not renewable, grants being renewed whose original expiring award included acquisition, new construction, and rehabilitation funds may only renew leasing, supportive services, rental assistance, operating, and HMIS costs and must not exceed 10 percent in administrative costs.

**g.** HUD will recapture grant funds remaining unspent at the end of the previous grant period when it renews a grant.

**h.** Subject to HUD approval and the terms of the NOFO, the following requests may be included in a renewal application:

**(1)** CoC renewal project applications (including DV Renewal projects and projects originally funded under the Special NOFO) may include non-significant changes including shifting up to 10 percent of funds from one approved eligible activity to another.

**(2)** YHDP Renewal project applications from any round may include non-significant changes including adding select Special YHDP Activities in section IV.B.2and shifting up to 10 percent of funds from one approved eligible activity to another.

**(3)** Renewal applications that include requests to shift more than 10 percent of funds from one approved eligible activity to another and other significant changes as defined at 24 CFR 578.105 will not be considered during the CoC Program Competition by HUD, except as provided in Section IV.B.3 of this NOFO. If an application includes a budget shift that exceeds 10 percent, HUD will correct the project budget to reflect the previously awarded budget amounts. Applicants seeking to make significant changes to their grant, such as shifting more than 10 percent of funds from an approved eligible activity, should contact their Field Office and request a grant agreement amendment.

**i.** *Actual Per Unit Cost – Renewal Grants.* Applicants requesting renewal of grants for rental assistance may request a per-unit amount less than the Fair Market Rent (FMR) if the actual rent per unit under lease is less than the FMR. This will help reduce the number of projects receiving rental assistance that have large balances of unspent funds remaining at the end of the operating year. Renewal project applicants must ensure the amount requested will be sufficient to cover all eligible costs as HUD cannot provide funds beyond the amount awarded through the FY 2026 CoC Program funding process. Project applications for rental assistance cannot request more than 100 percent of the published FMR. New project applications must adhere to 24 CFR 578.51(f) and must request the full FMR amount per unit. See section V.D.5.a of this NOFO for additional information regarding FMR adjustments for projects receiving funds for rental assistance.

**j.** *Renewal Project Grant Terms.* Renewal project applications are limited to a 1-year grant term with 1 year of funding. Any renewal PH project that receives project-based rental assistance or operating costs may request up to a 15-year grant term; however, project applicants may only request 1 year of funding. HUD may extend the grant term consistent with 2 CFR 200.308 and 2 CFR 200.309.

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 25 of 129 PageID #: 183

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Project applicants must apply for the additional funds as a renewal project application prior to the anniversary of the first expenditure of grant funds by which date grant funds should have been expended; or, if HUD extends the date that funds must be expended, the date the extension expires. HUD does not guarantee CoC Program funds past the 1 year of renewal funding.

### 5. New Project Requirements.

CoCs are encouraged to submit new projects created through CoC Bonus, DV Bonus, CoC Reallocation, DV Reallocation, or YHDP Replacement including YHDP Reallocation. A CoC designated Collaborative Applicant may submit a new CoC Planning project application, and if applicable, a UFA Costs project application in FY 2026.

To expend funds within statutorily required deadlines, applicants funded for sponsor-based and project-based rental assistance must execute the grant agreement and begin providing rental assistance within 2 years. However, HUD strongly encourages all rental assistance to begin within 12 months of award. Applicants that are unable to begin rental assistance within the 12-month period should consult with the local HUD CPD field office.

**a.** HUD will review project subrecipient eligibility as part of the project quality threshold review process. Project applicants must submit documentation of the subrecipient's eligibility with the project application.

**b.** Per the Consolidated Appropriations Act, 2026, to receive funding for a new CoC project, except those created through reallocation, HUD must determine the CoC has demonstrated that projects are evaluated and ranked based on the degree to which they improve the CoC's system performance (See more information on the System Performance rating factor in section V.B.1.b of this NOFO).

**c.** *New Project Grant Terms.* The initial grant term for new project applications may be 1-year, 2-years, 3-years, 4-years, 5-years, or 15-years. HUD may extend the grant consistent with 2 CFR 200.308 and 2 CFR 200.309. The following exceptions apply:

**(1)** HUD will allow new projects to request 1 year of funding with a longer initial grant term not to exceed 18 months. HUD has determined that most new projects requesting 1 year of funding normally take approximately 3 to 6 months to begin fully operating the new project (e.g., hiring staff, developing partnerships with landowners if leasing or renting). Therefore, a new project requesting 1 year of funding may request a grant term of 12 months to 18 months that will allow for the additional start-up process. Any new projects requesting capital costs (i.e., new construction, acquisition, or rehabilitation) are not eligible for 1-year funding requests. See (8) below for more information on new projects requesting capital costs. Transition grant applications cannot request 18-month grant terms.

**(2)** Any new expansion project submitted to expand an eligible renewal CoC Program-funded project may only request a 1-year grant term, regardless of the project type.

**(3)** Any new project that requests tenant-based rental assistance may request a 1-year, 2-year, 3-year, 4-year, or 5-year grant term.

**(4)** Any new project that requests leasing costs - either leasing costs only or leasing costs plus other costs (e.g., supportive services, HMIS) - may request up to a 3-year

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 26 of 129 PageID #: 184

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

grant term.

**(5)** The first year of funding for YHDP Replacement projects will be based on the 1-year renewal amount of the current YHDP project being replaced. The YHDP Replacement project's operating start date will be the day after the end of the previous grant term for the project being replaced.

**(6)** Any new project that requests project-based rental assistance or sponsor-based rental assistance, or operating costs may request up to a 15-year grant term; however, the project applicant may only request up to 5 years of funds. Funding for the remainder of the term is subject to availability. Applicants must apply for additional funds through a renewal project application in the competition held in the calendar year prior to the anniversary of the first expenditure of grant funds, or if HUD has extended the grant term, the date the extension expires. HUD does not guarantee CoC Program funds past the initial 5-year grant term, if conditionally awarded.

**(7)** Any new project that requests operating costs, supportive services only, HMIS, and project administrative costs may request 1-year, 2-year, 3-year, 4-year, or 5-year grant terms with funding for the same number of years.

**(8)** Any new project conditionally selected by HUD that requests new construction, acquisition, or rehabilitation costs (capital costs) must request a minimum of a 3-year grant term and may request up to a 5-year grant term. Any new projects requesting capital costs are not eligible for 1-year funding requests. If a new project requests 1 year of funding with capital costs, HUD will increase the grant term to 3-years and the new project must spend the funds requested over a 3-year period.

If an applicant requests funds for new construction, acquisition, or rehabilitation in addition to requesting funds for operating, supportive services, or HMIS, the funding will be for the 3-years to 5-years requested, and the grant term will be 3-years to 5-years plus the time necessary to acquire the property, complete construction, and begin operating the project. HUD will require recordation of a HUD-approved use and repayment covenant before funds can be drawn down (the form can be obtained from the local HUD CPD field office) for all grants of funds for new construction, acquisition, and rehabilitation. (24 CFR 578.81) HUD Field Office Counsel must approve the use and repayment covenants in advance of their being recorded, and proof of recording must be submitted to HUD Field Office Counsel before HUD will release grant funds, other than acquisition funds.

**(9)** All new CoC Planning or UFA Costs project applications are limited to 1-year grant terms and 1 year of funding.

**(a)** The maximum amount for one year of funding to spend on administrative costs associated with the CoC planning activities listed at 24 CFR 578.39 is 5 percent of FPRN, up to a maximum of $1,500,000, or $50,000 whichever is greater.

**(b)** The maximum amount for one year of funding to spend on administrative costs associated with the UFA costs described at 42 USC 11383(a)(11) is up to 3 percent of FPRN or $1,250,000 per fiscal year; whichever is less.

**(c)** CoC Planning and UFA Costs grants are not renewable.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 27 of 129 PageID #: 185

 

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(10)** Any new project that is requesting consideration under the DV Bonus or DV Reallocation process may only request 1 year of funding, but may request a longer initial grant term not to exceed 18 months regardless of project application component type.

## C. Cost Sharing or Matching

This Program requires cost sharing or matching, as described below.

24 CFR 578.73 of the Rule requires that recipients must match all grant funds, except for leasing funds, with no less than 25 percent of funds or in-kind contributions from other sources.

Project applicants that intend to use program income as a match must provide an estimate of how much program income will be used for the match. HUD will not require YHDP Renewal or replacement projects to meet the 25 percent match requirement if the applicant is able to demonstrate it has taken reasonable steps to maximize resources available for homeless youth or if the recipient has already had a match exemption approved for this renewal as provided in Section I.C.1.b.4 of Appendix A of the FY 2022 Youth Homelessness Demonstration Program NOFO (FR-6700-N-35).

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 28 of 129 PageID #: 186

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix



# III. PROGRAM DESCRIPTION

III. Program Description

A. Purpose

B. Goals and Objectives

C. Authority

D. Unallowable Costs

E. Indirect Costs

TABLE OF CONTENTS

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 28 of 129 PageID #: 186

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 29 of 129 PageID #: 187

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# III. PROGRAM DESCRIPTION

## A. Purpose

The Continuum of Care (CoC) Program (24 CFR part 578) is a national competition between geographic areas designed to promote a community-wide commitment to the goal of ending homelessness; to provide funding for efforts by nonprofit providers, states, local governments and Indian Tribes or tribally designated housing entities (as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)) to quickly rehouse homeless individuals, families, persons fleeing domestic violence, dating violence, sexual assault, and stalking, and youth while minimizing the trauma and dislocation caused by homelessness; to promote access to and effective utilization of mainstream programs and programs funded with State or local resources; and to optimize self-sufficiency among homeless individuals and families.

As described in detail below, a "Housing First" approach to homelessness has failed to deliver on the CoC Program's primary goal: to end homelessness.

The FY 2026 CoC Program NOFO funds the renewal of existing CoC grants, including DV Renewal projects and projects originally funded under the Special NOFO to Address Unsheltered and Rural Homelessness, and the competitive renewal or replacement of existing YHDP grants that are expiring in Calendar Year 2027. This NOFO also provides funding for new projects, including those created with DV Bonus, CoC Bonus, and the reallocation of existing renewal projects.

For FY 2026, HUD requires Collaborative Applicants to rank all project applications, except for CoC Planning, and if applicable, UFA Costs project applications.

## B. Goals and Objectives

"Housing First" has been a profound failure by any measure. Far from ending homelessness as promised, since the policy was first mandated by HUD in 2013:

- Literal homelessness (on the street, in emergency shelters, or in transitional housing) has increased 27%,

- Chronic homelessness has increased 80.5%, and

- Unsheltered homelessness has increased 36.1%.[1]

This is despite the fact that, since 2013:

- Taxpayer funded "permanent housing" beds have increased 150.9%[2],

- "Rapid rehousing" was created, artificially lowering numbers by recategorizing people in short-term assistance as "permanently housed," and

- CoC spending has increased 111%.[3]

HUD is restoring the CoC program to its original goals of reducing homelessness and optimizing self-sufficiency by focusing on meaningful outcomes, expanding competition, prioritizing treatment, economic independence, and emphasizing law and order.

More than a decade ago, advocates of "Housing First" argued that the approach would end

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 30 of 129 PageID #: 188

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

all types of homelessness in 10 years.[4] By focusing on permanently subsidized housing with no conditions, the Obama Administration said it would end veteran homelessness by 2015, chronic homelessness by 2016 and family homelessness by 2020.[5]

In 2026, it is evident that those promises have profoundly failed. After focusing on permanently subsidized housing with no conditions for more than a decade, homelessness reached the highest population ever recorded at the highest rate of increase ever recorded last year. [6] There are more people today than ever before who are dependent on indefinitely subsidized housing for homelessness – Permanent Housing. The nation's supply of Permanent Supportive Housing has increased by 111% (more than double) since 2007. When Rapid Rehousing is included, the supply of Permanent Housing (Permanent Supportive Housing and Rapid Rehousing) has increased by 188%. During the same time period, the nation's supply of Transitional Housing has decreased by 59.5%.

The present-day homelessness assistance framework has incentivized the speed at which individuals receive subsidized housing rather than the quality of services individuals receive in order to reach self-sufficiency and independent living.[7] This NOFO takes steps to restore competition, balance, and true outcomes to the CoC program.

### 1. Improving Outcomes.

This NOFO incentivizes outcomes consistent with the purposes of the CoC program including optimizing self-sufficiency, reducing homelessness, and minimizing the trauma caused to communities as a whole by homelessness. HUD is committed to supporting meaningful, sustained reductions in homelessness and increases in self-sufficiency rather than measuring outputs such as the number of beds created or filled.

Because unsheltered homelessness causes unique trauma to individuals, families, and communities, this NOFO focuses on reductions in unsheltered homelessness and encampments.

One of the main objectives for the CoC program, as set out in the McKinney-Vento Act, 42 U.S.C. § 11381, is to optimize self-sufficiency among homeless individuals and families. CoCs should review all projects eligible for renewal under this NOFO to determine their effectiveness in reducing homelessness and increasing self-sufficiency. CoCs should prioritize projects that promote self-sufficiency, increase employment income over government assistance, and promote treatment and recovery.

This NOFO includes several options to help CoCs improve their effectiveness, including reallocation, expansion, and transition grants, and CoC's should take advantage of these options to expand the pool of successful providers, including faith-based providers, and improve the overall performance of the CoC. This NOFO also makes a significant investment in Transitional Housing and Supportive Service Only projects to ensure that those who can recover and achieve self-sufficiency have the support to do so.

### 2. Creating Competition to Improve Innovation and Accountability.

The Continuum of Care Program was intended to be a "national competition between geographic areas" (42 U.S.C § 11386a), which is also consistent with Office of Management and Budget requirements that federal grants be awarded on a competitive, objective basis, even for renewals. 2 CFR 200.204 and 200.205. In 2024, 90% of every CoC's Annual

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 31 of 129 PageID #: 189

Renewal Demand was conditionally awarded without any connection to CoC score or project merit.[8] This means that only about 10% of FY24 CoC awards were competed on the basis of merit between geographic areas. In fact, since 2013, the most competitive CoC competition required only 15% competition on the basis of merit, and the least competitive required merely 5% competition.

Competition drives outcomes, effectiveness, innovation, and accountability. Consistent with the FY26 appropriation bill, HUD is setting Tier 1 at 60% and competing 40% of CoC ARD on the basis of merit between geographic areas. Increased competition brings the CoC Program back to its original intent as a competitive program, not an entitlement program or block grant. Competition ensures that CoCs consistently evaluate the effectiveness of their projects and invest in new projects that deliver the best results at reducing homelessness and optimizing self-sufficiency.

### 3. Restoring Balance to the Continuum of Care.

The CoC program has four project components for all CoCs: Permanent Housing, Transitional Housing, Supportive Service Only, and HMIS. This NOFO provides opportunities to restore a healthy balance of CoC-funded projects to further community-wide efforts to reduce homelessness.

From 2007 to 2009 there was a nearly equal distribution of Emergency Shelter beds, Transitional Housing beds, and Permanent Supportive Housing beds.[9] During this time, the number of homeless individuals was decreasing consistently. Beginning in 2010, and reinforced by HUD's 2013 policy changes, Permanent Supportive Housing beds increased dramatically as Transitional Housing beds decreased dramatically. The distribution of types of assistance is far from the balance seen in 2007.

The numbers cited above reference nationwide bed counts. The trend and disparities between Permanent Housing and Transitional Housing is even more apparent when narrowed to CoC-funded housing in particular. In 2024, 88% of the CoC national award went to Permanent Housing, and only 1% supported transitional housing projects.[10]

Instead of a balanced continuum of assistance, the CoC Program has become a "one size fits all" response to homelessness that restricted the spectrum of eligible program components, excluding a wide array of community providers in the process. By investing in Transitional Housing and Supportive Service Only projects, HUD intends to restore the "continuum" to the Continuum of Care Program to help able-bodied people move to self-sufficiency. Individuals who are likely to never be able to return to the workforce–over 62 years old, physically disabled, developmentally disabled–should be prioritized for Permanent Supportive Housing. Instead, many Permanent Supportive Housing units prioritize certain disabilities thereby failing to serve the most vulnerable. Many individuals with disabilities, including impairment due to substance abuse, are able to recover and regain self-sufficiency and deserve every opportunity to receive treatment and services to help them do so.

To the extent permitted by law, HUD is shifting its focus from awarding nearly 90% of CoC funding to Permanent Housing to expand opportunities for other components of the CoC Program.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 32 of 129 PageID #: 190

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

## 4. Prioritizing Treatment and Recovery as a Means to Self-Sufficiency.

According to a nationwide study, 75% of a survey sample of 64,000 unsheltered homeless individuals reported a substance use disorder and 78% reported a mental health condition. The study found that substance use disorder contributed to the loss of housing for 50% of the unsheltered population, and mental health conditions contributed to loss of housing for 51% of the population.[11] Another study found that two-thirds of homeless individuals self-reported regular use of hard drugs like methamphetamine, cocaine, and opiates. Of those, 29% reported wanting treatment and being unable to receive it.[12] Based on HUD's 2024 Point-In-Time Count data, which asks individuals if they wish to self-report substance abuse, 24.7% of unsheltered homeless individuals select to self-report substance abuse. The results of ignoring the prevalence of substance use disorder among homeless people is deadly.

According to a 2022 study from JAMA, "deaths among people experiencing homelessness in San Francisco more than doubled to 331 deaths during the first year of the COVID-19 pandemic, driven by a large increase in overdose deaths."[13] The risk of fatal overdose inside Permanent Supportive Housing is noteworthy, and tragic. The City of Seattle reported a 282% increase in overdose deaths in King County's Permanent Supportive Housing (and other subsidized housing) between 2020 and 2023.[14] According to HUD's own data, 19.5% of exits from Permanent Supportive Housing among adults living alone are due to death. Between 2019 and 2022, the share of adults living alone who died in Permanent Supportive Housing increased from 13% of exits to 20%, and the *number* of adults who died increased by 31%.[15]

Despite the tragic realities of substance abuse and fatal overdose among those who are homeless or living in Permanent Supportive Housing, there are recipients of CoC funding who reportedly, under the misnomer of "harm reduction," permit, and even encourage, the use and distribution of illicit drugs on their property including by distributing drug paraphernalia like needles, pipes, and foil. This NOFO provides communities opportunities to invest in treatment services and recovery housing, and ensures that recipients do not distribute drug paraphernalia or knowingly permit the use and distribution of fatal, illicit drugs on their properties. This is not a requirement that projects condition assistance on sobriety or treatment, although both are allowable under 24 CFR 578. CoCs should prioritize projects that provide the treatment and services people need to recover and regain self-sufficiency including on-site behavioral health treatment, robust wraparound supportive services, and participation requirements. This NOFO devotes resources to Transitional Housing programs and Supportive Service Only projects with the goal of improving health and long-term economic independence for homeless individuals and families. The NOFO encourages investment in treatment-focused beds, recovery housing, and partnership with community behavioral healthcare providers, drug courts, and other addiction and severe mental illness treatment providers. HUD encourages CoCs to utilize the full array of mainstream programs and local and private resources to provide housing and healthcare needed to maintain safe and stable housing.

## 5. Promoting Economic Self-Sufficiency.

One of the primary purposes of the CoC Program, as outlined in 42 U.S.C. § 11381, is to optimize self-sufficiency. In fact, self-sufficiency is one of only four purposes Congress provided for the CoC Program. CoCs should partner with workforce development centers,

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 33 of 129 PageID #: 191

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

employers, childcare, and other supportive service providers to increase employment and employment income for program participants. CoCs should prioritize projects that help lead to long-term economic independence for individuals and families to exit homelessness to unsubsidized housing and prevent future returns to homelessness.

Although a chief goal of the program is self-sufficiency, HUD's data reveals low rates of increased employment income and exits to unsubsidized housing. As of 2023, a median of only 6% of individuals in CoC-funded housing across the nation increased their earned employment income during that reporting period. In comparison, 33% of individuals in CoC-funded housing increased their benefits and welfare income.[16] Nationwide, 76.1% of Permanent Supportive Housing residents are under age 65.[17] Yet in Permanent Supportive Housing, only 13.2% of all households exited their housing. Of that percentage, only 12.9%, or 1.7% of the total participating households, exited to unsubsidized housing. Nearly twice as many exits were due to death.[18]

One way to advance both recovery and self-sufficiency is through supportive service participation requirements. Service participation requirements have been successfully employed in most federal social service programs and were integral to the welfare policy reforms enacted under President Clinton in 1996. For example, Pell Grants require recipients to make satisfactory academic progress, attend classes, and maintain a passing grade point average. Unemployment insurance benefits require program participation, including demonstrated participation in prescriptive job searches. Temporary Assistance for Needy Families (TANF) requires beneficiaries to work or advance their education.

According to a national poll in 2025, there is strong bipartisan support for supportive service participation requirements, with 64% of respondents in favor of "requiring participation in addiction and mental health treatment and job training programs as a condition of receiving taxpayer-funded housing."[19] Well-designed supportive service participation requirements provide structure and accountability for program participants to meet their unique goals and needs. Rather than hinder participant choice, participation requirements empower goals and participant progress.

In accordance with 24 CFR 578.75(h), HUD encourages supportive service agreements that meet individual needs and advance individual progress towards self-sufficiency and independent living goals set forth in 42 U.S.C. 11386a(b)(1)(F).

### 6. Advancing Public Safety for All.

Safety and security for all members of the public, especially those living on the streets and in encampments, is essential to promoting a community-wide commitment to the goal of ending homelessness and minimizing trauma to individuals, families, and communities. CoCs should cooperate with law enforcement to advance public safety for the entire community impacted by homelessness. No one should sleep outside on the street or in dangerous encampments, and everyone should be able to enjoy public spaces safely. HUD encourages CoCs to assist in preventing and minimizing the trauma associated with living on the streets or in encampments, especially for women and youth that are the victims of sexual assault and trafficking. Unchecked public camping and public illicit drug use inhibit nonprofit providers and local government from effectively addressing homelessness.

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 34 of 129 PageID #: 192

Respecting the rule of law is critical to community-wide efforts to address homelessness and protect all residents. According to one report, as unsheltered homelessness increased in King County, gun crimes tied to homeless encampments increased by 122% in just the first six months of 2022. Between 2017 and 2020, 50% of all arrests in Portland, Oregon were of homeless individuals despite the homelessness population comprising only 2% of the total population. According to the same report, drug overdoses were the most common cause of death among homeless individuals in New York City between 2018 and 2021. The number of deaths doubled during that short time period.[20] One recent study indicates that in some states, as many as half of unsheltered homeless individuals are registered sex offenders, in violation of requirements that they have a registered address.[21]

None of the realities above suggest that the entire homeless population is engaged in criminal or illicit activity despite significant disproportionality. Data also indicates that homeless individuals are the victims of crime at higher rates than the general public.[22] Gun violence in encampments, fatal drug overdoses on the streets, and sexual assault in encampments all perpetuate harm and trauma to homeless individuals and to the community. It is common sense to acknowledge the close relationship between unchecked homelessness and illicit activity with its many victims. Enforcing the rule of law is critical to protecting the safety of everyone regardless of their housing status, which in turn promotes one of the core purposes of McKinney-Vento, "community-wide commitment to the goal of ending homelessness." 42 U.S.C. § 11381(1).

In 2024, The City of Seattle reported that 76% of residents surveyed in a downtown neighborhood disagreed or strongly disagreed with the statement "I feel safe in my neighborhood."[23] The respondents included residents of three Permanent Supportive Housing buildings in the neighborhood. The city described a downtown environment that creates "opportunities for illegal street markets, drug markets, and unsanctioned tent encampments to form."[24]

The public supports policies that advance public safety related to homelessness. According to national polling in 2024, there is strong bipartisan support for public camping bans and stricter enforcement of drug laws, with 72% of voters in favor of "moving individuals into shelters over allowing camping" and 60% of voters in favor of "stricter drug enforcement near service providers, including penalties for facilities permitting drug activity."[25]

Advancing public safety policies has been shown to decrease homelessness. Two years after the City of Austin reinstated a ban on public camping, unsheltered homelessness decreased by one-third.[26] Several years after Colorado Springs restricted public camping near creeks and waterways, unsheltered homelessness decreased by 14%.[27]

First responders are critical partners in engaging people into treatment and services and protecting public order and vulnerable homeless individuals. In *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024), the Supreme Court of the United States upheld the authority of local governments to prohibit public camping.

First responders and law enforcement are often the first to encounter our most vulnerable members of society and should be aware of the available services to triage individuals into safe and appropriate services, ideally alongside non-law enforcement service providers in the Continuum of Care. CoCs should work with law enforcement, first responders, and their state

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 35 of 129 PageID #: 193

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

and local governments to reduce encampments, public camping, and public drug use in order to address barriers to maintaining housing and increasing self-sufficiency.

### 7. Minimizing Trauma for Vulnerable Populations.

One of the purposes of the CoC program is to minimize the trauma associated with homelessness 42 U.S.C. § 11381(2). CoCs should encourage providers to provide trauma informed care and ensure participant safety in programs, especially for youth and survivors of domestic violence, dating violence, sexual assault, and stalking.

### 8. Expanding Access Based on Merit, and Not Ideology.

HUD is committed to providing an equal opportunity to every applicant, recipient, and program participant free from discrimination. Part of this commitment is recognizing that faith-based providers deserve a level playing field to compete for CoC funding and participate in the community-wide efforts of their local CoCs. Faith-based organizations first served the nation's homelessness population long before the Federal government was ever involved.[28]

To the fullest extent permitted by law, HUD will ensure that faith-based organizations can participate in the CoC program and operate consistent with their sincerely held religious beliefs, recognizing all relevant protections provided by subsection c of HUD's Equal Participation Rule, 24 CFR § 5.109, the Religious Freedom Restoration Act, and the First Amendment. Promoting equal access for faith-based organizations directly advances the goals of the CoC program by increasing the number and diversity of program providers and increasing overall competition for CoC funds.

Likewise, HUD is committed to promoting equal access to CoC programs for homeless individuals and program participants regardless of their race or other protected status. The prior administration wrongly and illegally pressured or required providers to discriminate against participants based on their race, sex, or other protected status.[29] The purpose of the Fourteenth Amendment of the U.S. Constitution is to "do away with all governmentally imposed discrimination based on race . . . . Eliminating racial discrimination means eliminating all of it." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023). To that end, this NOFO prohibits the use of federal funds being used for any type of racial preferences, even under the guise of "diversity, equity, and inclusion." HUD wants to increase access to homelessness relief for *all* individuals and families.

## C. Authority

The CoC Program is authorized by subtitle C of title IV of the McKinney-Vento Homeless Assistance Act, (42 U.S.C. 11381–11389) (the Act), and the CoC Program rule found in 24 CFR part 578 (the Rule). Pursuant to 42 U.S.C 11386a(a) and 42 U.S.C. 11386a(b)(1)(G), the Secretary can establish criteria for the awarding of funds including factors deemed appropriate to carry out the CoC Program in an effective and efficient manner.

FY 2026 funding for CoC Program Competition NOFO, including the competitive or noncompetitive renewal or replacements of YHDP grants under the CoC program, is authorized by the Consolidated Appropriations Act, 2026 (Public Law 119-75) which makes approximately $4,010,000,000 in CoC Program funding. Under this NOFO, HUD will competitively renew or replace YHDP grants under the CoC Program.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 36 of 129 PageID #: 194

Additionally, HUD is making available approximately $52,000,000 in funding from the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4) for Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus) projects, described in section II.B.3.e of this NOFO.

## D. Unallowable Costs

HUD will reject any requests for ineligible costs, except as otherwise provided in this NOFO.

## E. Indirect Costs

If you expect to charge indirect costs to the award, submit the Indirect Cost Information for Award Applicant/Recipient form (HUD-426) with your application.

The HUD-426 form is built into the *e-snaps* Project Applicant Profile where you will complete the information if requesting indirect costs, and you will also see the information transferred within your project application.

Indirect cost rules under 2 CFR part 200, as may be amended from time to time, apply. Project applicants that intend to charge indirect costs to the award must clearly state in the project application(s) the rate and distribution base the recipient intends to use, and if applicable, the rate and distribution base to be used by any subrecipient(s). If the rate is a Federally negotiated indirect cost rate, the project application must include the corresponding negotiated indirect cost rate agreement signed by the cognizant agency. A government department or agency unit that receives no more than $35 million in direct federal funding per year and has developed and maintains an indirect cost rate proposal and supporting documentation in accordance with 2 CFR part 200, appendix VII, may use the rate and distribution base specified in that indirect cost rate proposal. These governmental departments or agencies are not required to submit their proposals unless they are specifically requested to do so by an awarding Federal agency. The Federal agency's review should be limited to ensuring the proposal is consistent with the principles of this part.

For each applicant or intended subrecipient that meets the conditions for using the de minimis rate under 2 CFR 200.414(f) and will use that rate to charge indirect costs, the project application must clearly state the intended use of the de minimis rate. As described in 2 CFR 200.403, costs must be consistently charged as either indirect or direct costs but must not be double charged or inconsistently charged as both. Once an organization elects to use the de minimis rate, the organization must apply this methodology consistently for all Federal awards until the organization chooses to negotiate for a rate, which the organization may apply to do at any time. Documentation of the decision to use the de minimis rate must be retained on file for audit.

## F. Program History

FY 2026 CoC awards will be made through this NOFO. The following are new or different compared to previous years:

### 1. Investment in New Transitional Housing and Supportive Service Only Projects.

Unlike in prior years, CoCs may apply for Transitional Housing and Supportive Service Only projects including street outreach. In order to increase competition, broaden the applicant pool, and restore balance to the Continuum of Care Program, this NOFO provides a set-aside

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 37 of 129 PageID #: 195

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

of $1,300,000,000 for new projects with a priority for Transitional Housing and Supportive Service Only projects. CoCs may use the Transition Grant process described in Sec. II.B.3.k to create new projects. HUD reminds CoCs that individuals living in Permanent Housing may be eligible for Transitional Housing (see HUD guidance) and encourages CoCs to assess the unique needs of individuals and families to provide appropriate assistance to meet their needs.

## 2. Increase in Competition.

The Continuum of Care program is a national competition between geographic areas (42 U.S.C. 11386a). Consistent with the FY26 HUD appropriation, Tier 1 is set at 60 percent of the CoC's Annual Renewal Demand (ARD). HUD reminds CoCs and applicants of the Solo Applicant appeal process described in Sec. VIII.D.3.a. for project applicants that believe they were denied the right to participate in a reasonable manner.

HUD will competitively renew or replace YHDP projects. Additionally, the CoC may use the YHDP Replacement process (which includes YHDP Reallocation) to create new YHDP grants. If significant changes to a renewing YHDP project are needed the YHDP project may replace its current project with a new YHDP Replacement project, that may wholly or in part include activities ineligible under the CoC Program as outlined in section IV.B.2 of this NOFO.

## 3. Increase in Equitable Bonus Funding.

Due to the increase in competition, CoCs may apply for bonus projects in an amount of up to 15% of the CoC's Final Pro-Rata Need (FPRN). Unless otherwise described in Sec. II.B.3.c, the CoC Bonus will be no less than $500,000 and no more than $5,000,000. The CoC Bonus funding structure described in Sec. II.B.3.c affords all CoCs a more equitable opportunity to compete for bonus funds and better ensures that awards are made on the basis of merit, not merely existing resources.

## 4. Expanding Eligible DV Bonus Projects to Include Transitional Housing.

Unlike prior years, Transitional Housing is an eligible DV Bonus project in this NOFO. Consolidated Appropriations Act, 2026, Pub. L. 119-75, div. D, tit. II, 140 Stat. 173, 399 (Dec. 3, 2026). The Secretary has determined that Transitional Housing is an eligible activity that is critical in order to assist individuals and families of persons experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking.

## 5. Program Components that are eligible under this NOFO.

The four components that will be funded through this CoC Program Competition are fully described at 24 CFR 578.37 and include: (a). Transitional Housing; (b). Supportive Services Only; (c). Permanent Housing; and (d). HMIS.

Additionally, HUD will allow renewal project applications for Joint TH/PH-RRH component projects, which combine two existing program components in a single project (see section III.G.5 of this NOFO for more information). HUD will not accept new Joint TH/PH-RRH component project applications.

## 6. Housing with shared kitchen and bathroom facilities.

Under the CoC Interim Rule at 24 CFR 578.75, housing leased with Continuum of Care

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 38 of 129 PageID
#: 196

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

program funds, or for which rental assistance payments are made with Continuum of Care program funds, must meet the applicable standards at 24 CFR 982.401 (HQS), and starting on October 1, 2026, 24 CFR 5.703 (NSPIRE). Both HQS and NSPIRE require a bathroom and a kitchen in the unit. HUD will consider requests to waive this regulatory requirement for good cause to facilitate projects proposing a housing model that does not meet this standard, such as Single Rooms Occupancy units (SROs).

## 7. Special CoC NOFO grants and Rural Costs.

Grants originally awarded funding under the Special NOFO to Address Unsheltered and Rural Homelessness, that are expiring in Calendar year 2027 are eligible to renew under this NOFO.

Projects originally awarded under the Rural Set Aside through the Special CoC NOFO Competition that are applying for renewal may only request costs that are eligible under the CoC Program.

## 8. Reallocation.

CoCs may reallocate funding from any eligible renewal grant, including grants that have not previously renewed under the CoC Program, so long as the project has an executed grant agreement with an expiration date in Calendar Year 2027. For more information on Reallocation requirements see Sec. II.B.3.f of this NOFO.

## 9. Competitive Repurposing of YHDP Renewal Funds

Pursuant to the Consolidated Appropriations Act, 2026, any CoC, in consultation with their youth action board, that determines it no longer has an identified need for funds to renew an eligible YHDP renewal grant under this NOFO shall notify HUD, and HUD shall recapture the YHDP renewal funding and make the recaptured amounts competitively available for a subsequent YHDP and Youth Homelessness System Improvement (YHSI) grants NOFO Competition. See section VI.B.1.c.(3)

## 10. Preferences for Elderly Individuals and Families and Disabled Individuals and Families

Pursuant to the Consolidated Appropriations Act, 2026 recipients of CoC Program funds, including funds awarded under this NOFO and prior CoC Program Competition NOFOs may establish preferences for:

- Elderly individuals and families. For purposes of establishing preferences under this allowance, HUD is defining elderly as 55 and older.
- Disabled individuals or families as defined by section 401(10) of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11360(10)).

When implementing these preferences, all other federal fair housing and nondiscrimination requirements apply.

## 11. Award Announcement Timeline.

Pursuant to the Consolidated Appropriations Act, 2026, HUD will announce FY26 CoC awards no later than December 1, 2026, barring any judicial or congressional intervention.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 39 of 129 PageID #: 197

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## G. Other Information

### 1. CoC Program NOFO Requirements.

All requirements for submitting the entire CoC Consolidated Application, including applications for projects eligible for FY 2026 CoC and YHDP funding and the total amount of funds available, are contained in this NOFO. Applicants should read this information carefully and respond to all submission requirements and deadlines as described.

**a.** CoCs should consider the Goals and Objectives established in Section III.B of this NOFO in conjunction with local priorities to determine the ranking of new and renewal project application requests.

**b.** HUD will conduct threshold reviews of project applicants, and project applications for all CoC Consolidated Applications that are submitted by the application submission deadline as described in section VI.A.

**c.** HUD may issue more than one conditional funding announcement, including for instances where a CoC has been affected by a disaster and for which HUD has extended the deadline for application submission.

**d.** HUD will score the FY 2026 CoC Application portion of the Consolidated Application in accordance with the criteria set forth in section V.B of this NOFO.

**e.** With the exception of CoC Planning and, if applicable, UFA Cost applications, CoCs must rank all project applications. This includes CoC Bonus, DV Bonus, CoC Renewal (including DV Renewal projects), New CoC Reallocation, New DV Reallocation, and YHDP Renewal and YHDP Reallocation projects. CoC Planning and, if applicable, UFA Costs project applications are not ranked and will be selected provided they pass project eligibility and project quality threshold review.

### 2. Performance-Based Decisions.

**a.** The CoC must review each project application submitted to the CoC for inclusion on the FY 2026 CoC Priority Listing as part of the CoC Consolidated Application and either approve and rank or reject project application submissions. All project applications approved by the CoC must be listed on the CoC Priority Listings in rank order.

Higher ranked projects will be assigned to Tier 1 and lower ranked projects will be assigned to Tier 2 as described in sections V.D.3.a and V.D.3.b of this NOFO. This two-tiered approach for CoCs notifies HUD, which projects are prioritized for funding.

**b.** Consistent with the requirements of the Consolidated Appropriations Act, 2026:

**(1)** Requests for new CoC project applications are allowed if the CoC evaluates and competitively ranks projects based on how they improve the CoC's system performance as assessed in section V.B.1.a.(1) of this NOFO; and

**(2)** HUD will prioritize funding for CoCs that have demonstrated the capacity to reallocate funding from lower to higher performing projects.

### 3. Eligible Renewal Project.

YHDP and CoC projects originally funded in FY 2025 or earlier, including projects originally

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 40 of 129 PageID #: 198

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

funded under the Special NOFO or DV Bonus are eligible to renew under this NOFO, provided the projects have an expiration date in CY 2027 (between January 1, 2027, and December 31, 2027). Renewal project applications must be submitted by the recipient currently under grant agreement to operate the project. See section II.B.4 for more information on renewal project requirements.

### 4. Reallocation.

Reallocation is a process CoCs use to shift funds in whole or in part from existing eligible CoC renewal projects to create one or more new projects without decreasing the CoC's ARD. CoCs may only reallocate eligible renewal projects so long as the renewal project being reduced or eliminated has a current grant agreement with an expiration date in CY 2027. Additionally, new projects created through reallocation must meet the project eligibility and project quality thresholds established in sections V.A.4.a and V.A.4.c of this NOFO. For more information on the requirements for projects created through reallocation, see sections II.B.3.e (DV Reallocation), II.B.3.f (CoC Reallocation), and II.B.3.h (YHDP Reallocation) of this NOFO.

To create a Transition Grant through the reallocation process, the CoC must reduce or eliminate one or more projects and use those funds to create the single, new transition grant [see section II.B.3.k of this NOFO].

### 5. Joint TH/PH-RRH Component Project.

The Joint TH/PH-RRH component project combines two existing program components – Transitional Housing and Permanent Housing-Rapid Rehousing – in a single project to serve individuals and families experiencing homelessness.

If funded, HUD will limit eligible costs as follows, in addition to other limitations found in the Rule:

**a.** leasing of a structure or units, and operating costs to provide transitional housing;

**b.** short- and medium-term tenant-based rental assistance on behalf of program participants to pay for the RRH portion of the project;

**c.** supportive services;

**d.** costs of contributing data to the HMIS; and

**e.** project administrative costs.

Renewal project applicants must include details in the project description of how TH and PH-RRH assistance will be provided. Additionally, if CoC Program funds are not being requested for both TH and PH-RRH units, the renewal project application must describe and include the number of the project's TH units and PH-RRH units that will be paid for from another funding source. Applicants may only use CoC Program Leasing funds or non-CoC Program Funds to pay for the cost of housing program participants enrolled in the TH portion of the project.

When a program participant is enrolled in a Joint TH/PH-RRH component project, the recipient or subrecipient must be able to provide both components, including the units supported by the TH component and the tenant-based rental assistance and services

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 41 of 129 PageID #: 199

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

provided through the PH-RRH component, to all participants. A program participant may choose to receive only the assistance provided through the TH portion of the project or the assistance provided through the PH-RRH component, but the recipient or subrecipient must make both types of assistance available.

### 6. Supportive Services Only (SSO) projects not dedicated to Coordinated Entry.

Project applicants may apply for SSO projects consistent with 24 CFR 578.37 and 578.53, including projects with the outreach service activity described at 24 CFR 578.53(e)(13) to individuals and families primarily residing in places not meant for human habitation. Projects that are primarily providing these outreach services, and identify themselves as such in the project application, must meet the project quality threshold criteria in Section V.A.4.c.(4)(c) of this NOFO. All other SSO projects, except those dedicated to coordinated entry, must meet the threshold criteria in Section V.A.4.c.(4)(b) of this NOFO.

### 7. Centralized or Coordinated Assessment System (Coordinated Entry).

In general, 24 CFR 578.23(c)(9) and (11) requires all CoC program recipients and subrecipients to use the centralized or coordinated assessment system established by CoCs. CoCs may use planning costs to design and plan for the implementation of a Coordinated Entry system; however, once the system is established and operating, the costs of operating it are not eligible planning costs. CoCs must operate the system with CoC Program funds, other funds, or a combination of the two. Section 578.23(c)(9) of the CoC Program Rule exempts victim service providers from using the CoC's coordinated entry process if victim service providers use a coordinated entry process that otherwise meets HUD's requirements.

### 8. Non-Dedicated Permanent Supportive Housing Beds.

A Permanent Supportive Housing bed within a CoC's geographic area that is not currently classified as dedicated for use by chronically homeless individuals and families or as DedicatedPLUS.

### 9. Beds Dedicated to Chronically Homeless Individuals and Families.

A Permanent Supportive Housing bed that is dedicated specifically for use by individuals and families experiencing chronic homelessness [see 24 CFR 578.3 definition of Chronically Homeless] within a CoC's geographic area, as reported in the CoC's housing inventory count (HIC) and permanent housing (PH) project applications.

### 10. DedicatedPLUS Project.

**a.** A PSH project where 100 percent of the beds are dedicated to serve individuals, households with children, and unaccompanied youth (including pregnant and parenting youth) that at intake meet one of the following categories:

**(1)** experiencing chronic homelessness, meaning they qualify as "chronically homeless" as defined in 24 CFR 578.3;

**(2)** residing in a TH project that will be eliminated and meets the definition of chronically homeless in effect at the time in which the individual or family entered the TH project;

**(3)** residing in a place not meant for human habitation, emergency shelter, or Safe Haven and had been admitted and enrolled in a PH project within the last year but were

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 42 of 129 PageID #: 200

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

unable to maintain a housing placement and met the definition of chronically homeless as defined by 24 CFR 578.3 prior to entering the project;

**(4)** residing in transitional housing funded by a Joint TH/PH-RRH component project and who were experiencing chronic homelessness as defined by 24 CFR 578.3;

**(5)** residing and has resided in a place not meant for human habitation, Safe Haven, or emergency shelter for at least 12 months in the last three years, but has not done so on four separate occasions and the individual or head of household meet the definition of 'homeless individual with a disability; or

**(6)** receiving assistance through a Department of Veterans Affairs (VA)-funded homeless assistance program and met one of the above criteria at initial intake to the VA's homeless assistance system.

**b.** A renewal project where 100 percent of the beds were dedicated to individuals and families experiencing chronic homelessness may either be reallocated to create a DedicatedPLUS project or may continue as a renewal project dedicating 100 percent of its beds to individuals and families experiencing chronic homelessness. If the project is reallocated as a DedicatedPLUS project, the project must adhere to all fair housing requirements at 24 CFR 578.93.

**c.** Projects HUD awarded as DedicatedPLUS in a previous CoC Program Competition must continue to include households with children to qualify as a DedicatedPLUS project in the FY 2026 CoC Program Competition.

## 11. Participant Eligibility.

Projects funded through this NOFO must have the following eligibility criteria for program participants. All references to paragraphs of the definition of homeless that are found throughout this NOFO refer to the paragraphs listed under the definition of "homeless" in 24 CFR 578.3 and include the definition of "homeless" under section 103(b) of the McKinney-Vento Homeless Assistance Act, even if section 103(b) is not explicitly referenced. All specific references to the definition of "homeless" under paragraph (4) of 24 CFR 578.3 that are found throughout this NOFO also include the definition of "homeless" under section 103(b) of the McKinney-Vento Homeless Assistance Act, even if section 103(b) is not explicitly referenced. All projects must participate in coordinated entry, and the selection of program participants must be consistent with the CoC's coordinated entry process.

As provided by the Consolidated Appropriations Act, 2026, youth aged 24 and under must not be required to provide third-party documentation that they meet the homeless definition in 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act as a condition for receiving services funded under this NOFO. Additionally, any youth-serving provider funded under this NOFO may serve unaccompanied youth aged 24 and under or families headed by youth aged 24 and under who are living in unsafe situations. HUD interprets "youth-serving provider" as a private nonprofit organization whose primary mission is to provide services to youth aged 24 and under and families headed by youth aged 24 and under. HUD interprets "living in unsafe situations" as having an unsafe primary nighttime residence and no safe alternative to that residence. These youth-related requirements supersede any conflicting requirements under this NOFO or the Rule.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 43 of 129 PageID
#: 201

I. Basic
Information | II. Eligibility | III. Program
Description | IV. Application
Contents and
Format | V. Application
Review
Information | VI. Submission
Requirements and
Deadlines | VII. Post-Award
Requirements and
Administration | VIII. Contact and
Support | Appendix

Participants eligible to be served by projects funded under this NOFO, are as follows:

**a.** PH-PSH projects awarded CoC funds must serve one of the following:

**(1)** persons who qualify as homeless under paragraphs (1), (2), or (4) of 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act where the head of household also has a qualifying disability as defined section 401(9) of the McKinney-Vento Homeless Assistance Act; or

**(2)** for renewal projects, the same population of individuals and families indicated in the expiring grant agreement (e.g., PSH projects originally awarded under the Special NOFO Competition projects through the Unsheltered Set Aside must serve individuals and families who qualify under paragraph (1) or (4) of the definition of homeless).

**b.** TH, PH-RRH, Joint TH/PH-RRH, SSO projects awarded CoC funds must serve persons who qualify as homeless under paragraphs (1), (2), or (4) of 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act with the following exception:

PH-RRH, TH, Joint TH/PH-RRH, SSO- may serve persons who qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**c.** DV Bonus, DV Renewal and DV Reallocation projects must serve individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking and who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act with the following exception:

PH-RRH, Joint TH/PH-RRH, SSO- projects may serve individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking who qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

**d.** YHDP Renewal and Replacement projects including YHDP projects created through reallocation must serve youth aged 24 or younger, including unaccompanied and pregnant or parenting youth who:

**(1)** qualify as homeless under paragraphs (1), (2), or (4) of the homeless definition in 24 CFR 578.3 or Section 103(b) of the McKinney-Vento Homeless Assistance Act;

**(2)** have an unsafe primary night-time residence and no safe alternative to that residence; or

**(3)** qualify as homeless under paragraph (3) of 24 CFR 578.3 if the CoC is approved to serve persons in paragraph (3).

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 44 of 129 PageID #: 202

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

# IV. APPLICATION CONTENTS AND FORMAT

IV.  Application Contents and Forms

A. Standard Forms, Assurances, and Certifications

B. Budget

C. Narratives and Other Attachments

D. Other Application Content

TABLE OF CONTENTS

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 44 of 129 PageID #: 202

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 45 of 129 PageID #: 203

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# IV. APPLICATION CONTENTS AND FORMAT

Applications must include three main elements: a) standard forms, assurances, and certifications; b) budget; and c) narratives and other attachments. The content, forms, and format for each element are included in this section.

You may use this section as a checklist to ensure you submit a complete application.

If you don't provide the required documents in the correct format, your application is incomplete.

Do not submit password protected or encrypted files.

While the CoC Program NOFO is officially posted on Grants.gov, the standard forms, assurances, certifications, budgets, narrative responses, and the ability to include attachments are built into e-snaps, an electronic application system.

HUD does not accept faxed applications or supportive documents.

There are two types of applications under this NOFO that are part of the CoC Consolidated Application;

- CoC Application that includes the CoC responses to the rating factors in Section V.B of this NOFO; and

- Project applications that must be approved by CoCs to be included as part of the CoC Consolidated Application. See Sections II.B and VI of this NOFO for information on eligible project applications and submission requirements.

## A. Standard Forms, Assurances, and Certifications

You must properly complete and submit with your application the standard forms, assurances, and certifications identified below. You can find all forms in the application package or review them and their instructions at Grants.gov Forms. You can also read more about standard forms on HUD's Funding Opportunities page.

The identified forms below are included in the project applicant profile in e-snaps and must be completed by the project applicant before gaining access to the application.

| Forms/Assurances/Certifications | Submission Requirement |
|---|---|
| **Application for Federal Assistance (SF-424)** | Required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Applicant and Recipient Assurances and Certifications (HUD-424B)** | Required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Applicant/Recipient** | Required with the application and completed |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 46 of 129 PageID #: 204

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

| Forms/Assurances/Certifications | Submission Requirement |
|---|---|
| **Disclosure/Update Report (HUD-2880)** | in e-snaps via the information from the Project Applicant Profile. |
| **Certification Regarding Lobbying** | If applicable, required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Disclosure of Lobbying Activities (SF-LLL)** | If applicable, required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Certification for a Drug-Free Workplace (HUD-50070)** | Required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Assurances for Construction Programs (SF-424D)** | If applicable, required with the application and completed in e-snaps via the information from the Project Applicant Profile. |
| **Certification of Need and Compliance with Housing Quality and Habitability Standards.** | If applicable, required with the application and included in e-snaps.<br><br>Collaborative Applicants must certify there is a demonstrated need for all PH renewal projects included in the Renewal Project Listing. Additionally, Collaborative Applicants must certify these projects comply with program requirements and appropriate standards of housing quality and habitability on the Renewal Project Listing. |
| **Indirect Cost Rate Certification (HUD-426)** | If applicable, required with the application and included in e-snaps. |

**The following forms are not built into e-snaps but are required to be submitted by Collaborative applicants with the CoC Priority listing:**

**1. Certification of Consistency with the Consolidated Plan Form HUD-2991.**

The standard form, Certification of Consistency with the Consolidated Plan (form HUD-2991), in which a state or local official certifies that the proposed activities or projects are consistent with the jurisdiction's Consolidated Plan and, if the project applicant is a state or unit of local government, that the jurisdiction is following its Consolidated Plan per the requirement of 24 CFR part 91. Collaborative Applicants must download a new HUD-2991 and complete it for

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 47 of 129 PageID #: 205

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

all project applications submitted and listed on the CoC Project Listings either by submitting one correctly signed and dated HUD-2991 form from the appropriate jurisdiction(s) that includes an attachment listing of all submitted project applications, or a single signed and dated HUD-2991 for each individual project application from the appropriate jurisdiction.

The FY 2026 Form HUD-2991 must be completed and dated between December 10, 2025 and August 26, 2026 and attached to the FY 2026 CoC Priority Listing.

### 2. Tribal Resolution for Projects on Trust Land or Reservations, if applicable.

Any applicant that is not a Tribe or TDHE proposing to site a project on a reservation or trust land must include a Tribal resolution or a letter from an official or principal of the Indian Tribe or TDHE, who is authorized to act on behalf of the Indian Tribe or TDHE. Tribes do not need to include a Tribal resolution to site a project on their own reservation or trust land. A Tribal resolution is the formal manner in which the Tribal government expresses its legislative will in accordance with its organic documents. In the absence of such organic documents, a written expression adopted pursuant to Tribal practices is acceptable.

A CoC that is not a Tribe or TDHE that proposes to locate a new project on a reservation or trust land that is not currently included in the CoC's approved geographic service areas, identified during the CoC Registration process, are required to obtain a Tribal resolution or a letter from an official or principal of the Indian Resolution from the Tribe or TDHE and attach it to the CoC Priority Listing.

### 3. Code of Conduct.

Both you, as the award recipient, and all subrecipients must have a code of conduct (or written standards of conduct). The code of conduct must comply with the requirements included in the "Conducting Business in Accordance with Ethical Standards", as well as any program-specific requirements. These requirements include ethical standards related to conflicts of interest for procurements in 2 CFR 200.318(c) and 2 CFR 200.317, as well as HUD-specific conflict of interest standards. HUD maintains a list of organizations that have previously submitted written standards of conduct on its Code of Conduct for HUD Grant Programs webpage. But it is your responsibility to ensure that the standards are compliant with the noted requirements and that HUD has the latest version of the written standards. Updated written standards should be submitted with the application. Any updates to your written standards, after the application period, should be submitted as directed by the HUD program contact for this NOFO.

### 4. Certification for Opportunity Zone Preference Points (HUD 2996), if applicable.

The HUD-2996 form is not built into e-snaps and must be submitted as an attachment to the CoC application in e-snaps on the Attachment screen if the CoC is requesting Opportunity Zone Preference Points.

## B. Budget

You must submit a budget with your application to support your project narrative.

At a minimum, your budget must indicate direct and any indirect costs.

The project application in e-snaps includes the budget forms available under this NOFO. Project applicants will select the appropriate budget form(s) based on the requested activities

and must be completed for the proposed project. Additionally, there is a section to capture indirect cost rate and the HUD-426 form, if applicable.

**Eligible Costs.**

Except as otherwise stated below, 24 CFR 578.37 through 578.63 identifies the eligible costs that applicants may request under the CoC Program.

**1. YHDP Costs.**

Eligible costs for YHDP projects originally funded under the YHDP Competition are also eligible YHDP Renewal project costs under this NOFO (see section II.B.3.g of this NOFO). Additionally, YHDP Renewal projects may include the YHDP Special Activities described in IV.B.2 below, subject to Renewal project requirements in sections II.B.3.gof this NOFO, as well as VAWA Costs, and Rural Costs, described in sections 4 and 5, below. YHDP Replacement including YHDP Reallocation project applications under this NOFO may include requests for eligible CoC Program Costs; the YHDP activities described in section II.B.3.g; VAWA Costs and Rural Costs described in sections IV.B.4 and 5 below; and the YHDP Special Activities in section IV.B.2 below . HUD will reject any requests for ineligible costs, except as otherwise provided in this NOFO.

**2. Special YHDP Activities.**

YHDP Renewal and YHDP Replacement including YHDP Reallocation projects may submit applications that include the following special YHDP activities, which are ineligible under the CoC Program, subject to the conditions specified in this section:

**a.** Recipients may carry out the activities below with written notice to the Director of HUD's Office of Special Needs Assistance Programs (SNAPS), subject to the requirements governing grant agreement amendments at 24 CFR 578.105. HUD will consider the inclusion of these activities in the project application as notification to the Director of SNAPS.

**(1)** Housing projects may have leases for a minimum term of 1 month plus 1 day under rental assistance budget line items.

**(2)** Projects may use leasing, sponsor-based rental assistance, and project-based rental assistance in RRH projects.

**(3)** In addition to the eligible costs listed in 24 CFR 578.59(a), recipients may use project administration funds to support costs of involving youth with lived experience in project implementation, execution, and improvement.

**(4)** Recipient may use project administrative funds to attend conferences and trainings that are not HUD-sponsored or HUD-approved, provided that the subject matter is relevant to youth homelessness.

**(5)** Projects may employ youth who are receiving services, or housing assistance, from the recipient organization. Recipients that use this special YHDP activity must maintain documentation that discloses the nature of work that the youth performs, and that the youth is not in a position that creates a conflict of interest.

**(6)** Recipients of YHDP may utilize the following housing standards for transitional

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 49 of 129 PageID #: 207

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

housing and Rapid Rehousing units. Recipients implementing this special YHDP activity may also establish standards that exceed or add to these minimum standards and must keep documentation of what standards are applied to the units and proof that the units complied with the standards before assistance is provided.

(a) *Structure and materials.* The structures must be structurally sound to protect residents from the elements and not pose any threat to the health and safety of the residents.

(b) *Space and security.* Each resident must be provided adequate space and security for themselves and their belongings. Each resident must be provided an acceptable place to sleep.

(c) *Interior air quality.* Each room or space must have a natural or mechanical means of ventilation. The interior air must be free of pollutants at a level that might threaten or harm the health of residents.

(d) *Water supply.* The water supply must be free from contamination.

(e) *Sanitary facilities.* Residents must have access to sufficient sanitary facilities that are in proper operating condition, are private, and are adequate for personal cleanliness and the disposal of human waste.

(f) *Thermal environment.* The housing must have any necessary heating/cooling facilities in proper operating condition.

(g) *Illumination and electricity.* The structure must have adequate natural or artificial illumination to permit normal indoor activities and support health and safety. There must be sufficient electrical sources to permit the safe use of electrical appliances in the structure.

(h) *Food preparation.* All food preparation areas must contain suitable space and equipment to store, prepare, and serve food in a safe and sanitary manner.

(i) *Sanitary conditions.* The housing must be maintained in a sanitary condition.

(j) *Fire safety.*

i. There must be a second means of exiting the building in the event of fire or other emergency.

ii. Each unit must include at least one battery-operated or hard-wired smoke detector, in proper working condition, on each occupied level of the unit. Smoke detectors must be located, to the extent practicable, in a hallway adjacent to a bedroom. If the unit is occupied by hearing impaired persons, smoke detectors must have an alarm system designed for hearing-impaired persons in each bedroom occupied by a hearing-impaired person.

iii. The public areas of all housing must be equipped with a sufficient number, but not less than one for each area, of battery-operated or hard-wired smoke detectors. Public areas include, but are not limited to, laundry rooms, community rooms, day care centers, hallways, stairwells, and other common areas.

(7) Recipients may provide moving expenses to a program participant more than once.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 50 of 129 PageID #: 208

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(8)** Recipients may provide payments of up to $500 per month for families that provide housing under a host home and kinship care model to offset the increased costs associated with having youth housed in the unit.

**(9)** YHDP recipients may continue providing supportive services to program participants for up to 12 months after the program participant exits homelessness, transitional housing or after the end of housing assistance.

**(10)** Projects using grant leasing funds may pay above the Fair Market Rent (FMR) for individual units as long as the amount paid is consistent with the reasonable rent standards at 24 CFR 578.51(g).

**(11)** Recipients may use grant funds for the following if they are necessary to assist program participants to obtain and maintain housing. Recipients and subrecipients must maintain records establishing how it was determined that paying the costs was necessary for the program participant to obtain and retain housing and must also conduct an annual assessment of the needs of the program participants and adjust costs accordingly:

**(a)** Security deposits for units in an amount not to exceed 2 months of rent.

**(b)** The costs to pay for any damage to housing due to the action of program participants, which may be paid while the youth continues to reside in the unit. The total costs paid for damage per program participant may not exceed the cost of 2 months' rent.

**(c)** The costs of providing household cleaning supplies to program participants.

**(d)** Housing start-up expenses for program participants, including furniture, pots and pans, linens, toiletries, and other household goods, not to exceed $500 in value per program participant.

**(e)** The one-time cost of purchasing a cellular phone and service for program participant use, provided access to a cellular phone is necessary to obtain or maintain housing and the costs of the phone and services are reasonable per 2 CFR 200.404.

**(f)** The cost of internet in program participants' units if the costs of the service is reasonable per 2 CFR 200.404.

**(g)** Payment of rental arrears consisting of a one-time payment for up to 6 months of rent in arrears, including any late fees on those arrears.

**(h)** Payment of utility arrears of up to 6 months per utility.

**(i)** Up to 3 months of utilities for a program participant, based on the utility costs schedule for the unit size and location.

**(j)** In addition to transportation costs eligible in 24 CFR 578.53(e)(15), recipients may pay gas and mileage costs for a program participant's personal vehicle for trips to and from medical care, employment, childcare, or other services eligible under this section.

**(k)** Legal fees, including court fees, bail bonds, and required courses and equipment.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 51 of 129 PageID
#: 209

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(l)** Program participant's past driving fines and fees that are blocking a young person from being able to obtain or renew a driver's license and impacting their ability to obtain or maintain housing. Additionally, recipients may pay for program participants' costs for insurance and registration for personal vehicles, if the personal vehicle is necessary to reach medical care, employment, childcare, or other services eligible under this section.

**(12)** Recipients of housing projects (RRH, TH, TH-RRH, and PSH) may use YHDP funds to pay for owner incentive and retention payments before occupancy of the unit, or at any point thereafter, provided that the overall amount paid with program funds per unit occupied by the program participant does not exceed three times the rent charged for the unit. These payments may include signing bonuses (a payment offered to an owner as an incentive for leasing a unit to be occupied by a program participant), repairs to bring the unit into compliance with program requirements, or holding fees to reserve a unit for an individual or family experiencing homelessness. Owner incentive and retention payments may not be paid for units owned by the project recipient, subrecipient, their parent organization(s), any other related organization(s), or organizations that are members of a partnership, where the partnership owns the structure.

**(13)** Recipients of Transitional Housing projects may use Single Room Occupancy (SRO) units to house youth. SRO units are subject to regulations at 24 CFR 982.602 and 24 CFR 982.605. Fair Market Rent (FMR) and utility costs for SROs are calculated as 75% of the zero-bedroom FMR and utility costs, respectively.

**(14)** Rental Assistance may be administered by nonprofit providers, Tribes, and TDHEs, in addition to the organizations listed in 24 CFR 578.51(b).

**b.** *YHDP Exceptions.* Under the conditions specified below, recipients may make use of the following built-in exceptions to this NOFO's requirements, subject to approval by the Director of SNAPS and requirements governing grant agreement amendments at 24 CFR 578.105. To expedite grant agreement processing, applicants should include as much information as possible as part of their project application to demonstrate they meet the conditions specified below.

**(1)** Projects may provide up to 36 months of leasing or rental assistance in TH or RRH projects to program participants if the recipient demonstrates: (1) the method it will use to determine which youth need rental assistance beyond 24 months and (2) the services and resources that will be offered to ensure youth are able to sustain their housing at the end of the 36 months of assistance.

**(2)** Projects may continue providing supportive services to program participants for up to 24 months after a program participant exits homelessness, transitional housing or after housing assistance ends if the recipient demonstrates: (1) the proposed length of extended services to be provided; (2) the method it will use to determine whether services are still necessary; and (3) how those services will result in self-sufficiency and ensure stable housing for program participants.

**(3)** Projects may continue providing supportive services to program participants for up to 36 months after program participants exit homelessness, if the services are in

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 52 of 129 PageID #: 210

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

connection with housing assistance, such as the Foster Youth to Independence initiative, or if the recipient can demonstrate that extended supportive services ensures continuity of caseworkers for program participants.

**(4)** Rental assistance may be combined with leasing or operating funds in the same unit, provided that the recipient submits a project plan that includes safeguards to ensure that no part of the project would receive a double subsidy.

**(5)** Projects may provide payments of up to $1,000 per month for families that provide housing under a host home and kinship care model, provided that the recipient can show that the additional cost is necessary to recruit hosts to the program.

**(6)** For YHDP Renewal projects only, YHDP recipients may pay for short-term (up to three months) emergency lodging in motels or shelters as the transitional housing component in a Joint transitional housing-rapid rehousing (TH-RRH) project, provided that the recipient can demonstrate that use of the hotel or motel room is accessible to supportive services.

**c.** *Innovative Activities*. In addition to the specific activities authorized above or in 24 CFR part 578, other innovative activities to reduce youth homelessness may be carried out in a YHDP project, subject to approval by the Director of SNAPS and requirements governing grant agreement amendments at 24 CFR 578.105. Requests to carry out YHDP innovative activities are permitted to be requested in any YHDP application. YHDP Replacement applicant must demonstrate to HUD that the activity meets the following criteria; and to expedite grant agreement processing, must include as much information as possible as part of their project application.

YHDP Renewal or YHDP Replacement applications requesting to carry out Innovative Special YHDP Activities must demonstrate the following:

**(1)** The activity is approved by both the Youth Action Board (YAB) and the CoC lead. For purposes of this section, a YAB is defined as a group of at least 4 youth – aged 24 or younger - with voting power on policy decisions of the CoC (particularly on policies that relate to preventing and ending youth homelessness, and where at least two-thirds of the members have lived experience/expertise of homelessness. The YAB must be a formal committee of the CoC. The YAB should be representative of the youth and young adult population experiencing homelessness in the community;

**(2)** That activity will be testing or likely to achieve a positive outcome in at least one of the four core outcomes for youth experiencing homelessness (stable housing, permanent connections, education/employment, and well-being);

**(3)** The activity is cost-effective; and

**(4)** The activity is not in conflict with fair housing, civil rights, or environmental regulations.

### 3. Rural Costs for Projects Originally Awarded Under the Rural Set Aside of the Special CoC NOFO Competition.

Projects originally awarded under the Rural Set Aside through the Special CoC NOFO Competition that are applying for renewal may only request costs that are eligible under

the CoC Program. This means the following costs are no longer eligible in projects originally awarded under the Rural Set Aside:

**a.** Rent or utility assistance after 2 months of nonpayment of rent or utilities to prevent eviction or loss of utility service are no longer eligible. Funds may no longer be used to pay rent or utility arrear payments up to 6 months on behalf of program participants residing in permanent housing.

**b.** *Emergency food and clothing assistance.* Costs for providing clothing to program participants are not eligible. Costs for providing meals or groceries are an eligible supportive service (24 CFR 578.53(e)(7) and must now be classified on the supportive services budget line item.

**c.** Costs associated with making use of Federal Inventory property programs to house individuals and families experiencing homelessness are no longer eligible. Federal Inventory property programs means the Use of Federal Real Property to Assist the Homeless program authorized by title V of the Act, and implemented by 24 CFR part 581, and the Single-Family Property Disposition Program authorized by section 204(g) of the National Housing Act (12. U.S.C. 1710(g)) and implemented at 24 CFR part 291.

Applicants may move funds currently allocated to these costs in their current grant agreement to other eligible CoC Program costs through the project application.

Costs for funding repairs, repairs necessary to make housing habitable to be used for transitional or permanent housing, emergency short-term lodging costs, and capacity building activities remain eligible; however, these costs must now be classified as Rural Costs (as identified in paragraph 5 below). Applicants may move funds currently allocated to these costs in their current grant agreement to the Rural Costs BLI through the project application.

### 4. VAWA Costs Information.

Section 605(a)(2) of VAWA 2022 amended section 423(a) of the McKinney-Vento Homeless Assistance Act to add the following eligible activity to the CoC program: "Facilitating and coordinating activities to ensure compliance with the emergency transfer plan requirement in [34 U.S.C. 12491(e)] and monitoring compliance with the confidentiality protections in [34 U.S.C. 12491(c)(4)]."

HUD has determined that eligible activities paid for under the VAWA costs category are not subject to the CoC program's spending caps on administrative costs under section 423(a)(10), (11), and (12). This activity may be included in new project applications, added to eligible renewal projects through expansion or added to eligible renewal projects by shifting up to 10 percent of funds from one eligible activity to the VAWA costs line item.

**a.** Examples of eligible costs for emergency transfer facilitation include the costs of assessing, coordinating, approving, denying and implementing a survivor's emergency transfer which includes:

**(1)** Assistance with moving costs. Reasonable moving costs to move survivors for an emergency transfer.

**(2)** Assistance with travel costs. Reasonable travel costs for survivors and their families

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 54 of 129 PageID #: 212

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

to travel for an emergency transfer.

**(3)** Security Deposits. Grant funds can be used to pay for security deposits of the safe units the survivor is transferring to via an emergency transfer.

**(4)** Utilities. Grant funds can be used to pay for costs of establishing utility assistance in the safe unit the survivor is transferring to.

**(5)** Housing Fees. Fees associated with getting survivors into a safe unit via emergency transfer, includes but not limited to application fees, broker fees, holding fees, trash fees, pet fees where the person believes they need their pet to be safe, etc.

**(6)** Case management. Grant funds can be used to pay staff time necessary to assess, coordinate and implement emergency transfers.

**(7)** Housing navigation. Grant funds can be used to pay staff time necessary to identify safe units and facilitate moves into housing for survivors through emergency transfers.

**(8)** Technology to make an available unit safe. Grant funds can be used to pay for technology that the individual believes is needed to make the unit safe, including but not limited to doorbell cameras, security systems, phone and internet service when necessary to support security systems for the unit, etc.

**b.** Examples of eligible costs for monitoring compliance with the VAWA confidentiality requirements include the costs of ensuring compliance with the VAWA confidentiality requirements which includes:

**(1)** Monitoring and evaluating compliance with VAWA confidentiality requirements.

**(2)** Developing and implementing strategies for corrective actions and remedies.

**(3)** Program evaluation of confidentiality policies, practices and procedures.

**(4)** Training on compliance with VAWA confidentiality requirements.

**(5)** Reporting to Collaborative Applicant, HUD and other interested parties on compliance with VAWA confidentiality requirements.

**(6)** Costs for establishing methodology to protect survivor information.

**(7)** Staff time associated with maintaining adherence to confidentiality requirements.

## 5. Rural Costs Information.

Section 5707 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (PL 117-263, December 23, 2022, 136 Stat 2395) amended section 423(a) of the McKinney-Vento Homeless Assistance Act to allow projects in rural areas [as defined in section 2.b.(11) of Appendix I] to use program funds to pay for the following eligible activities:

**a.** Payment of short-term emergency lodging, including in motels or shelters, directly or through vouchers.

**b.** Repairs to units in which individuals and families experiencing homelessness will be housed; or are currently not fit for human habitation.

**c.** Staff training, professional development, skill development, and staff retention activities.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 55 of 129 PageID #: 213

HUD has determined that eligible activities paid for under the rural costs category may be included in new project applications, including YHDP Replacement projects or added to eligible renewal projects, including YHDP Renewal projects, through expansion.

## C. Narratives and Other Attachments

If applicable, you must upload narrative and non-form attachments in e-snaps.hud.gov. When adding the attachments to the form, you can upload PDF, Word or Excel formats.

Collaborative Applicants will provide narrative responses about the CoC planning body, governance structure, overall performance, and the strategic planning processes in e-snaps. The CoC Application describes the CoC's plan for ending homelessness and increasing self-sufficiency and recovery, describes its system-level performance, and addresses the merit criteria specified in section V.B of this NOFO. HUD scores this part of the application with all charts and narratives completed (as applicable) and all required attachments to determine the order in which competitively ranked CoC projects are funded.

Project applicants will provide narrative responses to questions in e-snaps that demonstrate their ability to meet project eligibility and project quality threshold requirements.

## D. Other Application Content

### 1. Technical Application Errors

HUD will contact you to fix a technical error with your timely application after the due date. Technical errors, if corrected, do not affect (positive or negative) your merit rating under this NOFO. Examples of technical errors include, but are not limited to: inconsistencies in funding requests; a missing or incomplete form or certification; failure to submit an otherwise sufficient application under the correct Assistance Listings number or Funding Opportunity Number in Grants.gov; improper signature on a form or certification; and missing or inappropriate eligibility documentation.

HUD will send notice to the authorized organization representative to fix a technical error. You must respond timely and appropriately to HUD's notice (see submission requirements).

Your application is not eligible for funding if you fail to fix the error to HUD's satisfaction by the due date in HUD's notice. HUD will not review information submitted after the due date in HUD's notice.

Applicants should compare their application submission with the requirements in the CoC Program NOFO. The FY 2026 Continuum of Care and Youth Homeless Demonstration Program Grants NOFO located on Grants.gov is HUD's official NOFO. If a discrepancy in the CoC Program NOFO posted on Grants.gov or other information provided in any other version or supporting documentation is found, please notify HUD immediately as indicated in section VIII of this NOFO. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

HUD will post any corrections or amendments to a CoC Program NOFO on Grants.gov.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 56 of 129 PageID #: 214

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

For projects conditionally selected for award, HUD verifies that your organization has an active SAM registration prior to release of awarded funds and will withhold processing funds if your organization's SAM registration has expired or isn't consistent with the information provided on the SAM.gov website. A UEI discrepancy may also occur if HUD approves a grant to be amended to a new recipient (see section V.D.8 of this NOFO).

UEI discrepancies are a curable deficiency that may be corrected by the applicant with timely action. If a UEI discrepancy isn't resolved within the timeframe prescribed by the Notification of Curable Deficiency the applicant receives from HUD, HUD may reject the project.

## 2. Corrections to Deficient Applications

Deficiency is information missing or omitted within a submitted application. Deficiencies typically involve missing documents, information on a form, or some other type of unsatisfied information requirement (e.g., an unsigned form, unchecked box, expansion grant application errors, etc.). Deficiencies may be either curable or non-curable. Correction of technical deficiencies must be received by HUD within 7 calendar days after notification is received by the applicant from HUD via email. The start of the cure period will be the date stamp on the email HUD sends to the authorized representative as noted in the Project Applicant Profile in e-snaps; therefore, it is critical the project applicant's authorized representative's information is accurate. Additionally, HUD reserves the right to respond to unanticipated system defects, ambiguities, and technical difficulties in application submissions in e-snaps through a flexible implementation of its authority to cure application deficiencies through written inquires seeking clarification and additional information (also known as callbacks). Upon proper publication in the Federal Register, HUD reserves the right to extend the Competition deadline for good cause.

F. Other Federal Statutes

CoCs may request, in the FY 2026 CoC Application, up to 10 percent of funding for the fiscal year awarded under this NOFO be approved to serve homeless households with children and youth defined as homeless under other federal statutes who are unstably housed (paragraph 3 of the definition of homeless found at 24 CFR 578.3). Approved CoCs are limited to using only up to 10 percent of the total amount awarded for each fiscal year appropriation to the CoC to serve this population and must determine which project(s) HUD will allow to use some or all their funding for this purpose. The only project types that will be funded in this Competition to serve this population are Transitional Housing, Supportive Services Only, and the Joint TH/PH-RRH component projects.

To be approved to serve this population, CoCs making this request must demonstrate serving this population is of equal or greater priority, which means that it is equally or more cost-effective in meeting the overall goals and objectives of the plan submitted under Section 427(b)(1)(B) of the Act, especially with respect to children and unaccompanied youth, than serving the homeless as defined under paragraphs (1), (2), and (4) of the definition of homeless in 24 CFR 578.3. CoCs must thoroughly describe how the requirements described in Section 427(b)(1)(F) of the Act will be met. Some examples of how a CoC can demonstrate that serving this population is of equal or greater priority than serving those defined as homeless under paragraphs (1), (2), and (4) of the definition of homeless in 24 CFR 578.3 include:

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 57 of 129 PageID #: 215



| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**1.** Evidence that the CoC has adequate resources to house all individuals and families defined as homeless under paragraphs (1) and (4) at 578.3 in their geographic area.

**2.** An analysis that demonstrates that the net public cost (including mainstream resources, resources dedicated to preventing and ending homelessness, such as CoC Program funds, and other municipal funds, such as public works) is reduced if the CoC is able to use CoC Program funds to provide housing and supportive services to those individuals defined as homeless under paragraph (3) at 578.3.

**3.** Evidence that the length of time individuals and families in the CoC's geographic area is low (e.g., less than 30 days) and the CoC has adequate resources to house all people who become homeless under paragraphs (1) and (4) at 578.3 within 30 days.

CoCs must identify the specific project(s) that will use funding for this purpose (up to 10 percent of the CoC's total award) by submitting an attachment to the CoC Application in *e-snaps* that must include the following:

> **a.** project name(s) as listed on the CoC Priority Listing; and

> **b.** amount of funding in the project or per project that will be used for this purpose.

See 24 CFR 578.89 for more information about this limitation.

I. Basic
Information
II. Eligibility
III. Program
Description
IV. Application
Contents and
Format
V. Application
Review
Information
VI. Submission
Requirements and
Deadlines
VII. Post-Award
Requirements and
Administration
VIII. Contact and
Support
Appendix

# V. APPLICATION REVIEW INFORMATION

V. Application Review Information

A. Threshold Review

B. Merit Review

C. Risk Review

D. Selection Process

E. Award Notices

TABLE OF CONTENTS

I. Basic
Information
II. Eligibility
III. Program
Description
IV. Application
Contents and
Format
V. Application
Review
Information
VI. Submission
Requirements and
Deadlines
VII. Post-Award
Requirements and
Administration
VIII. Contact and
Support
Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 59 of 129 PageID #: 217

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# V. APPLICATION REVIEW INFORMATION

## A. Threshold Review

**When you apply**: Your application is reviewed to make sure it meets the threshold requirements of this NOFO. If your application has a technical error, HUD will allow you to correct it. If you fail to meet **any** of the threshold requirements, your application is **not** eligible for HUD funding. If you do meet the threshold requirements, your application moves to Merit Review (the next step).

### 1. Timely Application Submission

Late applications are not evaluated and not eligible for funding. See deadlines in Section VI.

Applicants should review and follow the steps outlined below to ensure applications are complete and submitted by the deadlines established in this NOFO. Documents referenced in this section can be found on the CoC Program page of HUD's website: https://www.hud.gov/program_offices/comm_planning/coc.

### 2. Complete Application

If your application is timely, HUD will confirm completeness. Your application is considered for funding if it is complete and responsive to the requirements in this NOFO. If your application is incomplete, HUD will ask you to fix any technical errors. Otherwise, incomplete and nonresponsive applications are not considered for funding.

### 3. Eligible Applicant

Upon receipt, HUD will confirm whether you are an eligible applicant. Applications from ineligible applicants do not proceed to merit review and are not eligible for HUD funding.

> **a.** *Eligible Project Applicants (McKinney-Vento Act, 24 CFR 578.15, 24 CFR 5.100).* Eligible project applicants for the CoC Program Competition are found at 24 CFR 578.15 and in the Act and include nonprofit organizations, states, local governments, instrumentalities of state and local governments, Indian Tribes and TDHE [as defined in section 4 of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4103) (TDHEs)]. Public housing agencies, as such term is defined in 24 CFR 5.100, are eligible without limitation or exclusion. For-profit entities are ineligible to apply for grants and are prohibited from being subrecipients of CoC Program grant funds.

> **b.** *Collaborative Applicants.* Only CoCs with a valid FY 2026 e-snaps registration will have access to the FY 2026 CoC Consolidated Application in e-snaps, which includes the Consolidated Application (i.e., the CoC Application, the CoC Priority Listing and the project application(s). CoCs should not attempt to change Collaborative Applicants during the FY 2026 CoC Program and YHDP Funding Opportunity without prior HUD approval unless HUD replaces the CoC's designated Collaborative Applicant under the authority of Section 402(c) of the Act. HUD will approve Collaborative Applicant changes outside the annual CoC Program Registration process under the following circumstances:

> > • the Collaborative Applicant made an error when entering the Collaborative Applicant name in the CoC Applicant Profile;
> > • the CoC-designated Collaborative Applicant is no longer in business;

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 60 of 129 PageID #: 218

• the CoC designates a new Collaborative Applicant; or

• HUD designated a new Collaborative Applicant as a remedial action under Section 402(c) of the Act.

In cases where the CoC changes its designated Collaborative Applicant during the CoC Program Registration process, the CoC must notify the local HUD CPD field office, in writing, stating the reason for the Collaborative Applicant change. The notice to HUD must provide documentation of the CoC's approval of the change (e.g., a copy of the meeting minutes to include the date and attendees).

c. *Indian Tribes and Tribally Designated Housing Entities (TDHE).* The Consolidated Appropriations Act, 2021 (Public Law 116-260, approved December 27, 2020) amended Title IV to add Section 435 of the Act to allow Indian Tribes and Tribally Designated Housing Entities (TDHE) to be Collaborative Applicants, eligible entities, or subrecipients of the CoC Program in addition to amending Title IV Section 401 to add the terms "Formula Area" and "Indian Tribe." These amendments mean that not only may Tribes and TDHEs apply for grants through other CoCs, but that formula areas, as that term is defined in the Indian Housing Block Grant program at 24 CFR 1000.302, are eligible to be added to the geographic areas of existing CoCs or may be included in newly formed CoCs through the CoC registration process (see Notice CPD-26-03).

Indian Tribes and TDHEs may:

**(1)** create a CoC;

**(2)** be a Collaborative Applicant;

**(3)** be an eligible project applicant; or

**(4)** receive grant amounts from another entity that receives a grant directly from HUD (i.e. be a CoC grant subrecipient).

However, under 42 U.S.C. 11383(g) only States, Units of General Local Government, nonprofit organizations, and Public Housing Agencies may administer permanent housing rental assistance.

d. *Solo Applicants.* Eligible project applicants that attempted to participate in the CoC planning process in the geographic area in which they operate, that believe they were denied the right to participate in a reasonable manner, may submit a solo project application to HUD by following the procedure found in 24 CFR 578.35. If HUD finds in favor of the solo applicant, HUD may award grant funds. Solo applicants requesting FY 2026 funding must submit their solo project application in e-snaps to HUD by 8:00 PM ET, on August 26, 2026. See section VIII.D.3.a of this NOFO for additional information regarding the Solo Applicant appeal process.

## 4. Threshold Criteria.

Applicants who fail to meet the following threshold eligibility requirements are ineligible.

a. *Project Eligibility Threshold.* HUD will review all projects to determine if they meet the following project eligibility threshold requirements on a pass/fail standard. If HUD determines the applicable standards are not met for a project, HUD will reject the project. HUD will consider any project requesting renewal funding as having met requirements (1)-(4) through its previously approved grant application unless HUD finds information to the

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 61 of 129 PageID #: 219

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

contrary (e.g., monitoring findings, results from investigations by HUD's Office of Inspector General, the recipient routinely does not draw down funds from eLOCCS at least once per quarter, consistently late Annual Performance Report (APR) submissions). Approval of new and renewal projects is not a determination by HUD that a recipient is compliant with applicable fair housing and civil rights requirements.

**(1)** Project applicants and potential subrecipients must meet the eligibility requirements of the CoC Program as described in the Act and the Rule and provide evidence of eligibility required in the application (e.g., nonprofit documentation).

**(2)** Project applicants and subrecipients must demonstrate the financial and management capacity and experience to carry out the project as detailed in the project application and the capacity to administer federal funds. Demonstrating capacity may include a description of the applicant and subrecipient experience with similar projects and with successful administration of SHP, S+C, or CoC Program funds or other federal, state, local, or private resources.

**(3)** The population to be served must meet program eligibility requirements as described in the Act, the Rule, and section III.G.11 of this NOFO.

**(4)** Project applicants, except Collaborative Applicants that only receive awards for CoC Planning costs and, if applicable, UFA Costs, must agree to participate in a local HMIS system. However, in accordance with Section 407 of the Act, any victim service provider that is a recipient or subrecipient must not disclose, for purposes of HMIS, any personally identifying information about any client. Victim service providers must use a comparable database that meets the needs of the local HMIS.

**(5)** Project applicants must submit the required certifications specified in this NOFO.

**(6)** Project applicants must certify affirmatively to the following:

> The project applicant will not engage in illegal racial discrimination. This is consistent with the requirements of 2 CFR 200.300(a).

> The project applicant will not operate drug injection sites or "safe consumption sites" in violation of 21 U.S.C. 856(a)(1), knowingly permit the use or distribution of illicit drugs on property under their control in violation of 21 U.S.C. 856(a)(2), or knowingly distribute drug paraphernalia in violation of 21 U.S.C. 863. This is consistent with the objectives outlined in Section III.B above and is consistent with the requirements of 2 CFR 200.300(a).

> This certification is not a requirement that program participants must be sober in order to receive assistance, participate in treatment in order to receive assistance, or be evicted or exited from assistance for a first-time violation of a drug-related program policy or lease requirement.

**(7)** HUD reserves the right to verify past performance and evaluate the eligibility of a project application submitted during the CoC Program Competition to ensure that it can

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 62 of 129 PageID #: 220

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

adequately manage federal awards and comply with all applicable federal laws. HUD will not penalize applicants for complying with the terms and conditions of prior HUD grants.

**b. *Renewal Project Threshold.*** To maintain the competitive and objective nature of the CoC Program under the McKinney Vento Act and comply with 2 CFR 200.309 and 200.205, which together require renewals for federal grants to be issued based on objective and merit-based criteria, all renewals will be re-evaluated each year.

CoCs must consider the need to continue funding for projects expiring in CY 2027 (January 1, 2027 to December 31, 2027) when applying for FY 2026 CoC and YHDP funding. Renewal projects must meet the minimum project eligibility, capacity, timeliness, and performance standards identified in this NOFO or they will be rejected from consideration for funding:

**(1)** When considering renewal projects for award; HUD will review information in eLOCCS, APRs, and information provided from the local HUD CPD field office, including monitoring reports and audit reports as applicable, and performance standards on prior grants, and will assess projects using the following criteria on a pass/fail basis:

**(a)** whether the project applicant's performance met the plans and goals established in the initial application or grant as amended;

**(b)** whether the project applicant demonstrated all timeliness standards for grants being renewed have been met, including those standards for the expenditure of grant funds;

**(c)** the project applicant's performance in assisting program participants to achieve and maintain self-sufficiency and independent living and records of success, except dedicated HMIS projects are not required to meet this standard; and

**(d)** evidence of unwillingness of project applicants to accept technical assistance, a history of inadequate financial accounting practices, indications of project mismanagement, a drastic reduction in the population served, program changes have been made without prior HUD approval, or the loss of project site control.

**(2)** HUD reserves the right to reduce or reject a project application submitted during the CoC Program Competition based on HUD's evaluation for reasons including, but not limited to, the following:

**(a)** outstanding obligation to HUD that is in arrears or for which a payment schedule has not been agreed upon;

**(b)** audit finding(s) for which a response is overdue or unsatisfactory;

**(c)** history of inadequate financial management accounting practices;

**(d)** evidence of untimely expenditures on prior award;

**(e)** history of other major capacity issues that have significantly affected the operation of the project and its performance;

**(f)** history of not reimbursing subrecipients for eligible costs in a timely manner, or at least quarterly; and

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 63 of 129 PageID #: 221

**(g)** history of serving ineligible program participants, expending funds on ineligible costs, or failing to expend funds within statutorily established timeframes.

**(h)** Compliance with audits for large grant recipients (over $1,000,000 or more) as required by 2 CFR 200.501.

**c. *New Project Threshold.*** HUD will review all new project applications to determine if they meet the following project quality threshold requirements. Projects created through reallocation are new projects.

**(1)** HUD will consider YHDP Replacement project applications including applications for new YHDP projects created through YHDP reallocation as having met project quality threshold requirements if the project application activities and costs are eligible under this NOFO. If a YHDP Replacement (including YHDP Reallocation) project application is not for activities and costs that are eligible under this NOFO, HUD will not reject the project under this project quality threshold, but HUD will require the project applicant to correct or revise information submitted after the final CoC Program award announcement but before executing the grant agreement.

**(2)** HUD will review the UFA Costs submitted by the UFA designated Collaborative Applicant to ensure appropriate match and eligibility of costs requested.

**(3)** HUD will assess all new project applications for the following minimum project eligibility, capacity, timeliness, and performance standards.

**(a)** project applicants must have satisfactory capacity, drawdowns, and performance for existing grant(s) funded under the CoC Program, as evidenced by timely reimbursement of subrecipients, regular drawdowns, and timely resolution of any monitoring findings; however, this does not apply to project applicants who have never received a CoC Program funded project;

**(b)** for expansion project applications, project applicants must describe the part of the project that is being expanded and demonstrate the project is not replacing other funding sources; and

**(c)** project applicants must demonstrate their ability to meet all timeliness standards per 24 CFR 578.85. HUD reserves the right to deny a funding request for a new project, if the request is made by an existing recipient that HUD finds to have significant issues related to capacity, performance, unresolved audit, or monitoring findings related to one or more existing grants; or does not routinely draw down funds from eLOCCS at least once per quarter. HUD also reserves the right to withdraw funds if no APR is submitted on the prior grant. Hud also reserves the right to reject a project if the recipient is not compliant with audits for large grant recipients (over $1,000,000 or more) as required by 2 CFR 200.501.

**(4)** Additionally, for HUD to consider new projects as meeting project quality threshold, each new project must meet the following criteria as applicable. If awarded, a recipient must meet all the criteria listed in the criteria column for its component prior to executing a grant agreement.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 64 of 129 PageID #: 222

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| **(a) Transitional Housing (TH)** | | |
|---|---|---|
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New Transitional Housing projects must receive at least 6 out of 8 points available for this project type. New TH projects that do not receive at least 6 points will be rejected. | 2 | Demonstrate that the project will provide and/or partner with other organizations to provide eligible supportive services that are necessary to assist program participants to obtain and maintain housing (i.e., case management, behavioral healthcare, employment training, etc.) |
| | 1 | The applicant has prior experience operating transitional housing or other projects that have successfully helped homeless individuals and families exit homelessness within 24 months or has a plan in place to ensure homeless individuals and families will exit homelessness within 24 months. |
| | 1 | The applicant has previously operated or currently operates transitional housing or another homelessness project, or has a plan in place to ensure that at least 50 percent of participants exit to a positive destination within 24 months and at least 50 percent of participants exit with employment income as reflected in HMIS or another data system used by the applicant. |
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |
| | 2 | Describe how the proposed project will:<br><br>• assess the service needs of program participants,<br><br>• and provide individualized services for program participants during their time in Transitional Housing that will result in at least 20 hours per week of engagement in services, activities or employment for all program participants, except for a program participant over age 62 or who is an individual with handicaps as defined in 24 |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 65 of 129 PageID #: 223

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

|  |  | CFR 8.3 or a with a developmental disability as defined under 24 CFR 578.3 (examples of services or activities include case management, counseling, treatment, volunteering, work therapy, education, job training, community-building activities, etc.) Employment may contribute to the 20 hours per week of engagement. The project description provided here does not constitute a reporting or documentation requirement. Indicate that the proposed project will create service plans for each program participant that include: <br><br> • the services to be provided, when and how often services will be provided, by whom all services will be provided; <br><br> • program participant goals, strategies for achieving those goals, and target dates for achievement to focus on improved health and wellness, housing stability, and increased employment income leading to financial stability and self-sufficiency. |
|  | 1 | Demonstrate the average cost per household served for the project is reasonable. 2 CFR 200.404. |

**(b) Supportive Services Only (SSO) Standalone (24 C.F.R. 578.37(a)(3) and 578.53)**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New SSO – Standalone project applications must receive at least 4 out of the 5 points available for | 1 | The Supportive Services project is necessary to assist people in exiting homelessness, addressing barriers to stable housing (e.g., substance use disorder, unemployment, childcare, etc.) and increasing self-sufficiency and the Recipient will conduct an annual assessment of the service needs of the program participants. |
|  | 2 | The proposed project has a strategy for providing supportive services to eligible program participants |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 66 of 129 PageID #: 224

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| this project type. New SSO standalone projects that do not receive at least 4 points will be rejected. | | including those with histories of unsheltered homelessness and those who do not traditionally engage with supportive services. |
|---|---|---|
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |
| | 1 | Demonstrate the average cost per household served for the project is reasonable. 2 CFR 200.404. |

### (c) Supportive Services Only (SSO) Street Outreach

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New SSO project applications that focus on street outreach and indicate so in their project application must receive at least 5 out of the 6 points available for this project type. Projects that do not receive at least 5 points will be rejected. | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |
| | 2 | The proposed project has a strategy for providing supportive services to eligible program participants including those with histories of unsheltered homelessness and those who do not traditionally engage with supportive services. |
| | 1 | Demonstrate that the applicant has a history of, or a plan for, partnering with first responders and law enforcement to engage people living in places not meant for human habitation to access emergency shelter, treatment programs, reunification with family, transitional housing or independent living. The applicant must cooperate and not interfere or impede with the enforcement of local laws such as public camping and public drug use laws and assist/be willing to assist first responders in their efforts to engage homeless individuals. |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 67 of 129 PageID #: 225

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | 1 | The applicant has experience providing outreach services, or a plan for providing outreach services, consistent with the activity description at 24 CFR 578.53(e)(13) and has a plan for or has demonstrated effectiveness at helping people successfully exit from places not meant for human habitation to emergency shelter, treatment programs, transitional housing or permanent housing programs. |
| | 1 | Demonstrate the average cost per household served for the project is reasonable. 2 CFR 200.404. |

**(d) SSO-Coordinated Entry (SSO-CE)**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New SSO-CE project applications (also known as centralized or coordinated assessment) must receive at least 3 out of the 4 points available for this project type. New SSO-CE projects that do not receive at least 3 points will be rejected. | 1 | The Coordinated Entry system is easily available and reachable for all persons within the CoC's geographic area who are seeking homelessness assistance. The system must also be accessible for persons with disabilities within the CoC's geographic area. |
| | 1 | There is a strategy for advertising that is designed specifically to reach households experiencing homelessness with the highest needs. |
| | 1 | There is a standardized assessment process. |
| | 1 | The project will ensure program participants are directed to appropriate housing and services that fit their needs. |

**(e) Permanent Housing: Permanent Supportive Housing (PH-PSH)**

| New Project Application | Points Availa | Criteria |
|---|---|---|

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 68 of 129 PageID #: 226

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Rating Factors | ble | |
|---|---|---|
| New Permanent Housing projects must receive at least 3 out of the 5 points available for this project type. New Permanent Housing projects that do not receive at least 3 points will be rejected. | 1 | The type of housing proposed, including the number and configuration of units, will fit the needs of the program participants. |
| | 1 | The type of supportive services and assistance that will be offered to program participants will ensure that the participant is able to successfully obtain and retain permanent housing and in a manner that fits their needs (e.g. transportation, safety planning, enhanced case management). If the applicant is proposing to expand an existing PH project, it must demonstrate how they are expanding supportive services to program participants, including where appropriate, on-site supportive services. |
| | 1 | The project will serve homeless individuals or families with a disability in accordance with 24 CFR 578.37(a)(1)(i). |
| | 1 | Demonstrate the average cost per household served for the project is reasonable. 2 CFR 200.404. |
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |

**(e) Permanent Housing: Rapid Rehousing (PH-RRH)**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New Permanent Housing projects must receive at least 4 out of the 6 points available for this project type. New | 1 | The provision of tenant-based rental assistance will help individuals and families achieve self-sufficiency within 24 months. |
| | 2 | The type of supportive services and assistance that will be offered to program participants (e.g., case management, substance use treatment, |

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 69 of 129 PageID #: 227

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Permanent Housing projects that do not receive at least 4 points will be rejected. | | mental health treatment, and employment assistance) will ensure that the participant is able to successfully obtain self-sufficiency and exit homelessness. |
|---|---|---|
| | 1 | The applicant has previously operated or currently operates a homelessness project where, or has a plan in place to have, at least 50 percent of participants exit to permanent housing within 24 months and at least 50 percent of participants exit with employment income as reflected in HMIS or another data system used by the applicant, or has a plan in place to ensure this. |
| | 1 | Demonstrate the average cost per household served for the project is reasonable. 2 CFR 200.404. |
| | 1 | The project will be supplemented with resources from other public or private sources, that may include mainstream health, social, and employment programs such as Medicare, Medicaid, SSI, and SNAP. |

**(f) Homeless Management Information System (HMIS)**

| New Project Application Rating Factors | Points Available | Criteria |
|---|---|---|
| New HMIS project applications must receive at least 3 out of the 4 points available for this project type. New HMIS projects that do not receive at least 3 points will be rejected. | 1 | How the HMIS funds will be expended in a way that furthers the CoC's HMIS implementation. |
| | 1 | The HMIS collects all Universal Data Elements as set forth in the HMIS Data Standards. |
| | 1 | The ability of the HMIS to un-duplicate client records. |
| | 1 | The HMIS produces all HUD-required reports and provides data as needed for HUD reporting (e.g., APR, quarterly reports, data for CAPER/ESG |

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 70 of 129 PageID #: 228

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | reporting) and other reports required by other federal partners. |
|---|---|---|
| **(g) CoC Planning – Collaborative Applicants Only** | | |
| **New Project Application Rating Factors** | **Points Available** | **Criteria** |
| New CoC Planning projects, submitted only by the CoC's designated Collaborative Applicant, must receive at least 3 out of the 5 points available for this project type. CoC Planning projects that do not receive at least 3 points will be rejected. | 1 | Governance and Operations-The CoC conducts meetings of the entire CoC membership that are inclusive and open to members and demonstrates the CoC has a written governance charter in place that includes CoC policies. |
| | 1 | CoC Committees-The CoC has CoC-wide planning committees, subcommittees, or workgroups to address the needs of persons experiencing homelessness in the CoC's geographic area that recommends and sets policy priorities for the CoC. |
| | 2 | The proposed planning project that will be carried out by the CoC with Planning grant funds is compliant with the provisions of 24 CFR 578.7. |
| | 1 | The funds requested will improve the CoC's ability to evaluate the outcome of both CoC Program-funded and ESG-funded projects. |

## B. Merit Review

If your application meets the threshold requirements, a panel will review and score its merits. The panel may include HUD employees and non-employees. They will evaluate your application based on the following criteria. The results of the evaluation are shared with senior HUD officials who make the final decisions about funding consistent with this NOFO.

**Merit Review Summary**

| Merit Review Summary | |
|---|---|
| **Criterion** | **Maximum number of points = 200** |
| **a. Project Capacity, Review, and Ranking.** | 14 |
| **b. System Performance.** | 64 |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 71 of 129 PageID #: 229

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| c. CoC Coordination and Engagement. <br> I. Accountable Structure and Planning <br> II. Community Coordination <br> III. Coordination to Serve Subpopulations | 122 |
|---|---|
| **Bonus Points** | |
| **CoC Merger and UFA Bonus (V.B.1.d)** | 6 |
| **Policy Initiative Preference Points (V.B.2)** | 14 |

## 1. Rating Factors

Your application must include a response to the following criteria.

HUD will use all of the factors outlined in this section to establish the CoC's score for the FY 2026 CoC Program Competition.

**Rating Factors Details**

a. *Project Capacity, Review, and Ranking.* HUD will award up to 14 points to CoCs that demonstrate the existence of a coordinated, inclusive, and outcome-oriented community process for the solicitation, objective review, ranking, and selection of project applications.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| (1) *Objective Criteria and System Performance.* | 6 | The CoC must attach the written process or tool it used to review, rate, and rank project applications for this NOFO. In making selections, CoCs should consider factors such as financial stability, performance history, capacity, audit findings, and public complaints. This written process or tool must: <br><br> Demonstrate it used objective criteria (e.g., cost-effectiveness, performance data, type of population served) to review, rate, and rank project applications and that these factors account for at least 50% of the total available points (up to 1 point). <br><br> Demonstrate that it used system performance measures in |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 72 of 129 PageID #: 230

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | their local review, selection, and rating process and that these factors account for at least 25% of the total points available (up to 2 points). |
| | | For housing projects (TH, PH-PSH, PH-RRH) that the following measures were considered (up to 3 points): |
| | | • Returns to homelessness; |
| | | • Employment income; and |
| | | • Supportive service participation requirements. |
| **(2) *Ranking and Selection Process.*** | 3 | The CoC must: <br><br> • Invite new proposals from entities that have not previously received funding if such eligible entities exist; <br><br> • Prior to the application deadline, post on their website all parts of the Consolidated Application, and notify community members and key stakeholders. CoCs that do not have a website must post this information to a partner website within the CoC (e.g., a city or county website); <br><br> • Attach a listing of all projects submitted to HUD from their CoC's local competition that includes all projects their CoC considered during their local competition: (1) the final score, (2) project rank, (3) accepted or rejected status, (4) funding amounts, (5) reallocated funds added to or subtracted from projects listed; and <br><br> • Notify project applicants, in writing outside of *e-snaps*, who submitted their project applications to the CoC by the CoC-established deadline, whether their project application(s) will be accepted and ranked, rejected, or reduced on the CoC Priority Listing no later than 15 days before the NOFO application submission deadline, and where a project application is being rejected or reduced, the CoC must indicate the reason(s) for the rejection or reduction. |
| **(3) *Reallocation.*** | 5 | CoCs are encouraged to review the renewal project eligibility criteria at V.A.4.a and V.A.4.b, the risk review at V.C, data from Annual Performance Reports, system performance measures, and other outcome and performance data to reallocate funding from lower performing projects to higher performing projects. <br><br> • Describe how the CoC actively reviews the performance of existing CoC Program funded projects and have a |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 73 of 129 PageID #: 231

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## V. Application Review Information

| | | standard process for reallocating funding from lower performing projects to create new high performing projects; OR<br><br>• Demonstrate that the CoC has cumulatively reallocated at least 20 percent of their CoC's ARD between the FY 2021 and the FY 2026 CoC Program Competitions. |
|---|---|---|

**b.** ***System Performance.*** HUD will award up to 64 points to CoCs that have a CoC system-wide performance measurement process related to reducing homelessness.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **(1) *Reducing the Number of Homeless Individuals and Families.***<br>CoCs should work to achieve sustained long-term, meaningful reductions in unsheltered homelessness in their communities. | 20 | The CoC will receive:<br><br>• Up to 5 points for demonstrating a decrease of at least 20 percent in the number of unsheltered homeless individuals and families in the 2026 PIT compared to the prior year's data.<br><br>• Up to 5 points for demonstrating decreases in the number of unsheltered homeless individuals and families between the 2024 and 2025 PIT Counts AND the 2025 and 2026 PIT Counts.<br><br>• 2 points for demonstrating a decrease in the number of unsheltered homeless individuals and families between the 2024 and 2026 PIT Counts.<br><br>• 2 points for demonstrating a decrease in unsheltered homelessness between 2018 or 2019 and 2026 PIT Counts.<br><br>• 3 points for demonstrating at least a 5 percent decrease in the number of individuals and families experiencing chronic homelessness between the 2025 and 2026 PIT Counts.<br><br>• 3 points for demonstrating a decrease of at least 20 percent in the combined number of sheltered and unsheltered individuals and families in the 2026 PIT compared to the prior year's data. |
| **(2) *Reduce Encampments.*** | 8 | • Describe, using quantitative evidence, a reduction in the number of encampments or the number of people residing in encampments in the geographic area of the CoC, and if there is no reduction, explain any plans the CoC has to participate in efforts to |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 74 of 129 PageID #: 232

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | reduce these numbers. |
|---|---|---|
| **(3) *Reduce First Time Homelessness.*** | 2 | • Demonstrate a reduction in the number of first-time homeless of at least 20% as reported in HUD's Homelessness Data Exchange (HDX);<br><br>• Describe the CoC's plan to decrease the number of individuals and families becoming homeless for the first time. |
| **(4) *Length of Time Homeless.*** | 2 | • Demonstrate a reduction in the length-of-time homeless compared to the prior year's data as reported in HDX;<br><br>• Describe the CoC's plan to reduce the length of time individuals and families remain homeless. |
| **(5) *Successful Exits from Assistance.*** | 6 | • Demonstrate that the rate of successful exit from ES, SH, TH, and RRH is at least 50% (up to 2 points);<br><br>• Demonstrate that at least 20% of program participant exits from TH/RRH/PSH collectively are to unsubsidized housing using HMIS data (up to 4 points). |
| **(6) *Returns to Homelessness.*** | 6 | • Demonstrate the rate at which persons who exited to permanent housing destinations experienced additional spells of homelessness over a 12- month and 24-month period as reported in HDX:<br><br>Is less than 8% over 24 months (3 points, or 1 point if less than 16% over 24 months).<br><br>Is less than 7% over 12 months (3 points, or 1 point if less than 11% over 12 months). |
| **(7) *Jobs and Income Growth.*** | 12 | • Demonstrate that the percentage of program participants who had an increase in income from employment (not government assistance) in the CoC was 20 percent or higher as reported in HDX (up to 6 points);<br><br>• Demonstrate that at least 25 percent of people leaving programs in the CoC had an increase in income from employment (up to 6 points); |
| **(8) *Timely*** | 2 | Demonstrate that the CoC: |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 75 of 129 PageID #: 233

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| *Submission of Data.* The CoC collected and submitted data in a timely manner. | | • Conducted a Housing Inventory (HIC) and Point-in-Time (PIT) count during the last 10 days in January 2026, or if an exception was provided by HUD, during the time period agreed upon by the CoC and HUD;<br><br>• Submitted both the 2026 HIC and PIT count data in HDX 2.0 by April 30, 2026, 8:00 PM EDT, or an alternate date approved by HUD;<br><br>• Submitted their Longitudinal System Analysis (LSA) data in HDX 2.0 by the submission deadline of January 16, 2026, 11:59 PM EST, or an alternate date approved by HUD; and HUD determined that there were at least 2 usable files; and<br><br>• Submitted FY 2024 System Performance Measures data in HDX 2.0 by the submission deadline of 8:00 PM EDT on March 4, 2026, or an alternate date approved by HUD. |
| *(9) HMIS and Comparable Database Participation* | 2 | • Demonstrate at least 85 percent of the beds in the CoC's geographic area are covered in HMIS and comparable databases. The bed coverage rate is the number of HMIS and comparable database participating beds divided by the number of year-round beds dedicated to persons experiencing homelessness in the geographic area covered by the CoC. |
| *(10) Tracking Participant Outcomes in HMIS and Comparable Databases.* The CoC has low rates of unknown exit destinations. | 2 | • Demonstrate the rate of unknown exit destinations in HMIS for housing projects (TH, PSH, RRH, SH) is less than 10 percent. |
| *(11) Unit Utilization Rates.* The CoC utilizes funded units. | 2 | • Demonstrate the average unit utilization rate in the CoC across housing projects is at least 85 percent. |

   **c.** *CoC Coordination and Engagement.* HUD will award up to 122 points to CoCs that

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 76 of 129 PageID #: 234

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## V. Application Review Information

demonstrate coordination with other systems of care that serve homeless individuals and families.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **Accountable Structure and Planning (up to 16 points)** | | |
| **(1) *Stakeholder Participation*** | 2 | The CoC must indicate it has participation from a broad array of stakeholders, not limited to organizations listed in 24 CFR 578.5(a), within the geographic area: <br><br> Relevant organizations include nonprofit homeless assistance providers, victim service providers, faith-based organizations, governments, businesses, advocates, public housing agencies, school districts, social service providers, mental health agencies including Certified Community Behavioral Health Clinics (CCBHCs) and CMHCs, local court systems, hospitals, universities, affordable housing developers, law enforcement, employment programs including the Local Workforce Development Board (WDB) and American Job Centers, and organizations that serve veterans and homeless and formerly homeless individuals. |
| **(2) *Representative Governance Board*** | 8 | Indicate a CoC decision-making governance board representative of the community that includes: <br><br> • at least 1 person with current or former experience of homelessness (up to 1 point); <br><br> • at least 3 elected public officials (or 1 elected official if the CoC is in a rural area) (up to 3 points); <br><br> (4 points for including all of the below, 2 points for a majority of the below.) <br><br> • a representative of the business community such as a member of a Business Improvement District; <br><br> • a representative of law enforcement; <br><br> • a representative of a recovery housing/sober living provider; <br><br> • a representative from a behavioral or primary health provider such as from a Federally Qualified Health Center, CCBHC, Healthcare for the Homeless, or other accessible primary care |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 77 of 129 PageID #: 235

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

| | | |
|---|---|---|
| | | provider; <br> • a representative of a local workforce development organization or system such as a member of the Local Workforce Development Board, State Workforce Agencies, or American Job Centers; <br> • a representative from a local court system managing Assisted Outpatient Treatment (AOT) and/or other civil commitment processes; or from specialty courts (e.g., Mental Health Court, Drug Court, Care Court.) |
| **(3)** *Transparent Processes.* | 2 | Describe how the CoC has a transparent process (e.g., communicated in a public manner such as on the CoC's website) in place to: <br> • Invite new members to join and the invitation process is publicly available within the CoC's geographic area at least annually. <br> • Solicit and consider opinions regarding the CoC's general performance, strategies, and priority setting process from a broad array of individuals and organizations with knowledge of homelessness in the geographic area or an interest in preventing or ending homelessness in the geographic area. <br> • Accept and consider proposals from organizations that have not previously received CoC Program funding including faith-based organizations. |
| **(4)** *Comprehensive Strategies.* | 4 | Describe how the CoC will incorporate comprehensive strategies for reducing homelessness, including interventions in 42 U.S.C. 11386b(d) and other targeted projects for specific subpopulations, by providing a plan to address a gap in the CoC's current homelessness system. The plan should include: <br> • Identifying the gap, using data or stakeholder feedback; <br> • The strategy to address the needs of all relevant subpopulations; <br> • Quantifiable performance measures; <br> • Timelines for the completion of specific tasks; |

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 78 of 129 PageID #: 236

|  |  | • Identifying specific funding sources for planned activities; and |
|  |  | • An individual or body responsible for overseeing implementation of specific strategies. |
| **Community Coordination. (up to 72 points)** <br><br> The CoC is coordinating with specific housing and service providers and other community partners to address homelessness. |||
| **(5)** *Treatment and Recovery Services.* | 20 | • Demonstrate, by listing the projects and treatment providers, that substance use treatment is available on-site for at least 30% of TH/RRH/PSH projects by listing the projects and treatment providers. Rural CoCs (as listed at https://www.hud.gov/hud-partners/community-coc) will receive full points for identifying access to treatment; <br><br> • Describe how the CoC partners with, or has projects that provide, outpatient treatment for mental health and substance use disorders with a range of appropriate levels of care, psychosocial interventions, medication management, suicide prevention, and recovery supports; <br><br> • Describe how the CoC partners with, or has projects that provide access to, peer recovery specialists or other forms of peer support and recovery navigation; <br><br> • Describe how the CoC identifies individuals experiencing Serious Mental Illness and connects them with the services necessary to promote stability, such as Assertive Community Treatment teams and other models that combine intensive care coordination and assertive outreach with comprehensive treatment. <br><br> • Identify partnerships the CoC has with providers and entities providing services in connection with Drug Courts and other specialty courts serving individuals with mental and substance use disorders, Assisted Outpatient Treatment (AOT) programs, and inpatient civil commitment. <br>     o Describe how the CoC coordinates with |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 79 of 129 PageID #: 237

| | | these providers to support housing stability and movement towards independence, including by leveraging court orders. |
| | | • Identify partnerships the CoC has with the local crisis system of care including 988 and crisis contact centers, mobile crisis and outreach services, and crisis stabilization services. |
| | | • Demonstrate that for every 2 persons reporting chronic substance use in the CoC's most recent PIT count, there is at least 1 CoC-funded unit that requires program participant engagement in substance abuse treatment services as a condition of continued participation in the program in accordance with 24 CFR 578.75. List the projects the units are part of. The units may be existing renewals or newly proposed under this NOFO.<br><br>   o At least 1 unit per 2 per persons = 6 points<br><br>   o At least 1 unit per 4 persons = 3 points |
| | | • Indicate the availability of 24/7 access to detox, residential, and inpatient behavioral health treatment within the geographic area of the CoC; |
| | | • Identify at least one formal partnership with a Certified Community Behavioral Health Clinic (CCBHC) or Community Mental Health Center (CMHC), SAMHSA Projects for Assistance in Transition from Homelessness (PATH) provider, Grants for the Benefit of Homeless Individuals (GHBI) provider, or a similar facility if none of the above are located in the geographic area; |
| | | • Identify at least one new or existing CoC project that operates sober housing in accordance with 24 CFR 578.93(b)(5). |
| | | • Describe how the CoC coordinates with the programs named in this section to facilitate warm hand-offs to stable housing providers and prevent entry into homelessness. |
| **(6) *Investment in Supportive*** | 8 | Demonstrate that the CoC is investing adequately in |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 80 of 129 PageID #: 238

| | | |
|---|---|---|
| *Services.* | | supportive services by showing either:<br><br>• through proposed CoC funding, leveraging, match, and other formal partnerships, the CoC is providing supportive services with a value of 50% of the CoC's Annual Renewal Demand; or<br><br>• 30% of their proposed CoC funding is used for supportive services relative to their Annual Renewal Demand. |
| **(7) *Participation Requirements for Supportive Services.*** | 8 | Demonstrate that housing projects (TH, PH-PSH, PH-RRH, and Joint projects) require program participants to take part in supportive services (e.g. case management, employment training, substance use disorder treatment) in line with 24 CFR 578.75(h) by providing direct language from supportive service agreements (contract, occupancy agreement, lease, or equivalent).<br><br>• 100% of CoC housing projects have participation requirements (8 points).<br><br>• 50% of CoC housing projects have participation requirements (4 of the 8 points).<br><br>Except that consistent with 24 CFR 5.2005(b)(1) assistance may not be denied on the basis or as a direct result of the fact that the participant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, if the participant otherwise qualifies for admission, assistance, participation, or occupancy. |
| **(8) *ESG Recipients and Emergency Shelter.*** | 2 | • Describe how the CoC has and will continue to consult with ESG recipients in the planning and allocation of ESG funds;<br><br>• Describe how the CoC coordinates with shelter providers to connect individuals and families with CoC assistance. |
| **(9) *Data Sharing for Improved Outcomes and Transparency.*** | 2 | • Describe how the CoC has or will share PIT, HIC, HMIS, and System Performance data with state and local government as permitted by law in order to inform the homelessness response system.<br><br>• Describe how the CoC utilizes other data sources alongside HMIS to improve care (e.g., health care utilization and claims data, electronic health care record data; admission, discharge, and transfer |

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 81 of 129 PageID #: 239

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | data; and law enforcement and corrections system data). |
|---|---|---|
| **(10) *Employment and Workforce Development.*** | 5 | Identify at least one partnership that the CoC has with employment and workforce development programs and organizations such as the Local Workforce Development Board, State Workforce Agency, American Job Center (also known as One-Stop Career Centers), registered apprenticeship program, community and technical college, union training program, adult education provider, or State Vocational Rehabilitation agency. |
| **(11) *Street Outreach, Law Enforcement and First Responders.*** | 5 | • Demonstrate an increasing number of people exit street outreach to a positive destination;<br><br>• Describe how Street Outreach projects (including co-response) cooperate with first responders and law enforcement to increase positive interactions in order to increase housing and service engagement and promote use of CoC services. |
| **(12) *Family or Support Network Reunification.*** | 4 | Describe how the CoC or its recipients assist with family or support-network reunification efforts for individuals experiencing homelessness or living in CoC-funded housing (e.g., case management, travel costs, arrangement of assistance in another geographic area.) |
| **(13) *Public Housing Agencies.*** | 2 | • Indicate that the CoC has an agreement in place with one or more of their public housing agencies to enable participants to transition from Transitional Housing, Rapid Re-Housing, and Permanent Supportive Housing to HUD assisted housing. |
| **(14) Protecting Public Safety.**<br><br>HUD encourages the most effective use of funding for efforts to end homelessness, quickly rehouse individuals, and minimize trauma (42 U.S.C 11381). | 14 | HUD has a vested interest in ensuring that all grantees are maximizing their potential Federal award to accomplish the program's purposes. To that end, to receive full points, CoCs should:<br><br>• Demonstrate, by providing evidence, that the CoC cooperates and does not interfere with or impede local efforts to advance the objectives below, and assists first responders in providing services to homeless individuals.<br><br>• Identify local laws, policies, or other practices that help or hinder the CoC's ability to advance |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 82 of 129 PageID #: 240

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Law enforcement and public safety protections play a critical role in accomplishing these purposes. | | the objectives below and provide a plan explaining how the CoC will leverage beneficial policies while overcoming the harmful effects of restrictive ones. If you cannot provide any mitigating steps, please explain why. Include qualitative and quantitative details in your response.<br><br>   o  Quickly clear tents and encampments on public property and connect individuals who are camping in public with appropriate services. In your response, describe the current status of tents and encampments in the CoC's geographic area.<br><br>   o  Decrease the public use of illicit drugs and quickly connect individuals who are using illicit drug in public with appropriate services and/or law enforcement. In your response, describe the current status of overdoses and illicit drug use in public spaces in the CoC's geographic area.<br><br>   o  Utilize standards that address homeless individuals who are a danger to themselves or others (e.g., involuntary commitment.)<br><br>   o  Comprehensively share information, including location information, in accordance with the [Sex Offender Registry and Notification Act](#) (SORNA).<br><br>The CoC should maintain records reflecting the analysis performed in response to this rating criteria. |
| (*15) Outreach* | 2 | Describe the CoC's strategy to outreach to all individuals and families experiencing homelessness across their geographic area. |
| **Coordination to Serve Subpopulations. (up to 34 points)**<br><br>The CoC is coordinating outreach, assistance and services for specific subpopulations experiencing homelessness. | | |
| (16) *Children and Youth.* | 6 | • Indicate written agreements are in place between the CoC or its HUD-funded projects and educational supports and services for |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 83 of 129 PageID
#: 241

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | children ages 0-5, such as Public Pre-K, Head Start, Child Care (including Child Care and Development Fund), or home visiting (including Maternal, Infant and Early Childhood Home and Visiting or MIECHV); |
|---|---|---|
| | | • Identify formal partnerships the CoC has with youth education providers including Local Educational Agencies (LEAs), McKinney-Vento liaisons, school districts, GED programs, community and technical colleges, and other post-secondary education providers; |
| | | • Describe policies and procedures that have been adopted to inform individuals and families who become homeless of their eligibility for educational services; |
| | | • Describe how the CoC coordinates with foster care or child welfare services to assist youth transitioning from public systems of care; |
| | | • Describe how the CoC coordinates with RHY-funded providers including Street Outreach Programs, Basic Center Programs, Transitional Living Programs, and Maternity Group Homes where such providers exist. |
| **(17)** *Families.* | 4 | Identify at least one RRH or TH project in the CoC that primarily or exclusively serves families with children experiencing homelessness in accordance with 24 CFR 578.93(b). Describe how the project: <br><br> • Provides supportive services focused on improving incomes to pay rent such as workforce development, job training, or registered apprenticeship programs; and <br><br> • Leverages funding from mainstream family service systems such as Temporary Assistance for Needy Families (TANF). <br><br> • Combines housing assistance with childcare, parenting support, pregnancy-related and child healthcare, and education. |
| **(18)** *Veterans.* | 4 | Identify at least one partnership the CoC has with the Department of Veterans Affairs or other Veteran Serving Organizations to do the following: |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 84 of 129 PageID #: 242

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | |
|---|---|---|
| | | • Refer veterans identified by the CoC to VA or other Veteran Serving Organizations for assistance; <br><br> • Coordinate the provision of emergency shelter, outreach, supportive services, and housing; <br><br> • Ensure access to a full spectrum of employment and career pathway opportunities; <br><br> • Share data with the Department of Veterans Affairs as appropriate; and <br><br> • Identify and fill service gaps for veterans. |
| **(19) *Survivors of Domestic Violence, Dating Violence, Sexual Assault, and Stalking.*** | 4 | Identify at least one partnership the CoC has with victim service providers, state domestic violence coalitions, state sexual assault coalitions, anti-trafficking service providers or other organizations who help provide shelter, housing, and services to individuals and families of persons experiencing trauma or a lack of safety related to, or fleeing or attempting to flee domestic violence, dating violence, sexual assault, and stalking. |
| **(20) *Justice System Re-entry.*** | 4 | Identify at least one partnership the CoC has to prevent homelessness among people transitioning from prisons, jails, or court-ordered programs. |
| **(21) *High Utilizers of Healthcare Systems.*** | 4 | Identify at least one partnership or project the CoC has to provide specialized supportive services for homeless individuals with a high level of medical needs. |
| **(22) *Aging and Elderly.*** | 4 | Identify at least one partnership or project the CoC has to serve aging and elderly individuals experiencing homelessness such as with a provider of residential care, assisted living, or medical respite services. CoC-funded projects may establish preferences for elderly individuals or families. |
| **(23) *Permanent Supportive Housing for Chronically Homeless Individuals and Families.*** | 4 | Identify at least one RRH or PSH project that prioritizes individuals experiencing chronic homelessness. Describe how that project: <br><br> • Provides on-site behavioral healthcare; <br><br> • Has a policy for assessing program participant need for higher level of care (i.e., assisted living, residential treatment); and |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 85 of 129 PageID #: 243

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| | | • Has a policy for assessing program participant readiness for moving on to unsubsidized or other permanent housing. |
|---|---|---|

**d. *CoC Merger or Unified Funding Agency Bonus Points.*** HUD will award up to a possible 6 bonus points to Unified Funding Agencies or to CoCs that merged after the FY 2024 CoC Program Registration deadline. To receive consideration as a merged CoC, new CoCs must contain all the geographic area of at least two CoCs that were considered completely separate CoCs in prior CoC Program competitions.

| Rating Factor | Maximum Points | To Receive Maximum Points |
|---|---|---|
| **Unified Funding Agency or CoCs Merged after the FY 2024 CoC Program Registration CoC Program Registration deadline.** | 6 | Unified Funding Agency – all UFAs will receive maximum points.<br><br>Merged CoCs - all CoCs that merged will receive maximum points. |

*For the Section 3 requirements above, you can opt to have the default Section 3 rating factor below, or incorporate the rating elements below into another rating factor that includes other elements.*

*If 24 CFR Part 75 (Section 3) applies to the grant, retain the rating factor titled **"Section 3"** below and adjust the points accordingly, up to a maximum of four (4) points. These points are part of the total 100 points available.*

*NOFOs for grants that are required to comply with Section 3 must award points (maximum of 4) for the inclusion of a quality Section 3 plan.*

*If the NOFO is **not** required to comply with Section 3 and does not award Section 3 points, you may either keep the final row of text for informational purposes or simply remove this row from your NOFO.*

## 2. Policy Initiative Preference Points

Preference points are added to your overall application score. You do not need to address the policy initiatives in this section to receive an award. If you choose to address a policy initiative in your application, you must adhere to the information with any award.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 86 of 129 PageID #: 244

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

## a. Opportunity Zones

You may receive up to four (4) points, if your proposed activities are within an Opportunity Zone. To receive points, you must complete and submit form HUD-2996, Certification for Opportunity Zone Preference Points. If you expect to use less than 50% of the award in Opportunity Zones, you won't receive preference points.

## b. Advancing Recovery by Prohibiting Illicit Drug Enablement

Apart from the required selection criteria, you may receive up to ten (10) points if you can describe the policy or statement the CoC has in place to ensure that all housing projects submitted by the CoC will not operate drug injection sites or "safe consumption sites," knowingly distribute drug paraphernalia on or off property under their control, knowingly permit the use or distribution of illicit drugs on property under their control, or conduct, permit, encourage, or allow any of these activities under the pretext of "harm reduction."

None of the above constitute a requirement that program participants must be sober in order to receive assistance, participate in treatment in order to receive assistance, or be evicted or exited from assistance for a first-time violation of a drug-related program policy or lease requirement, although those practices may be allowable under 24 CFR 578. Full points will be awarded for a description of a clear CoC policy or statement in addition to affirmative certifications in section V.A.4.a.(6) for all projects submitted by the CoC.

To receive full points, the policy or statement must:

**(1)** Prohibit CoC-funded housing projects from operating drug injection sites or "safe consumption sites," knowingly distributing drug paraphernalia on or off property under their control, knowingly permitting the use or distribution of illicit drugs on property under their control, or conducting any of these activities under the pretext of "harm reduction;"

**(2)** Describe what remedies will be taken for CoC-funded housing projects determined by the CoC to be in violation of the above;

**(3)** Encourage the provision of substance use disorder treatment and recovery housing within or outside of the CoC; and

**(4)** Not restrict or prohibit CoC-funded housing projects that require program participants to be sober or to participate in treatment as a condition of assistance in accordance with 24 CFR 578.

## 3. Other Factors

Your application must respond to the following additional criteria.

## a. Budget

HUD may evaluate the budget. HUD may assess whether the budget aligns with planned program activities and objectives. HUD may consider whether the budget and the requested performance period are fully justified and reasonable in relation to the proposed project.

The project budget information will be reviewed to ensure:

- The requested costs are eligible under the CoC Program and this NOFO.

- The total amount of funding is within the amount of funding available to the CoC.

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 87 of 129 PageID #: 245

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

- If funds are requested for project administrative costs, the amount requested is no more than 10 of the total funding requested.

## b. Certification of Consistency with the Consolidated Plan

You must ensure that the activities in your application are consistent with your local Consolidated Plan.

All project applications submitted and listed on the CoC Priority Listing by Collaborative Applicants must be included in the certification either by submitting one correctly signed and dated HUD-2991 from the appropriate jurisdiction that includes an attachment listing of all submitted project applications, or a single signed and dated HUD-2991 for each individual project application from the appropriate jurisdiction. See section IV.A.1 for more information.

## C. Risk Review

Before making any awards, including renewal awards, HUD will evaluate each applicant's likelihood of successfully carrying out the project. This assessment helps identify risks that may affect the advancement toward or the achievement of a project's goals and objectives. 2 C.F.R. 200.206(b)(1). Here's what HUD looks at:

**Past Performance:**

- Government-wide performance data, as noted in 2 CFR 200.206(a)

- Public sources like news reports, Inspector General findings, Government Accountability Office reports, and complaints with a reasonable basis

- History of performance. The applicant's record in managing Federal awards, if it is a prior recipient of Federal awards, including timeliness of compliance with applicable reporting requirements, failing to make significant progress in a timely manner, failing to meet planned activities in a timely manner, conformance to the terms and conditions of previous Federal awards, and, if applicable, the extent to which any previously awarded amounts will be expended prior to future awards. HUD will not penalize a renewal applicant who sufficiently complied with the terms and conditions in prior NOFOs that are in direct conflict with those contained herein.

- Reports from past audits, including those performed under 2 CFR part 200, subpart F– Audit Requirements

- History of finishing activities on time and using any promised matching or leveraged funds

- Debarments or suspensions

- Misuse of federal funds for purposes outside of the program

**Organizational Health:**

- Financial stability and capacity, including compliance with cost principles in 2 CFR Part 200 Subpart E (200.400 et seq.), and where applicable, 200 Part 170

- Quality of management systems and ability to meet the management standards in 2 CFR part 200

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 88 of 129 PageID #: 246

- Ability to follow all required laws and rules

- The applicant's ability to effectively implement statutory, regulatory, or other requirements imposed on non-Federal entities

- Capacity, including staffing structures and capabilities

**Results:**

- Ability to promote self-sufficiency and economic independence

- Number of people served or targeted for assistance

- History of illegal discrimination, including illegal racial discrimination

- History of subsidizing or facilitating illicit drug use or other illicit activities that conflict with the purposes of this NOFO

HUD in its discretion may use the results of the risk review as a sufficient and independent basis to make adverse funding decisions, including rejecting an award, applying special conditions on the award, or reducing the amount of an award.

## D. Selection Process

When making award funding decisions, HUD will consider:

- Threshold review results, including eligibility requirements.

- Merit review results.

- Risk review results.

To the extent allowed by law, HUD may also consider:

- The scope of the overall projected impact on the program and administrative goals and priorities in this NOFO.

- Reasonableness of the estimated costs to the government.

- The applicant's readiness to conduct the proposed work.

- Likelihood that the proposed project will result in the benefits expected.

- Broad range of recipients beyond recurrent recipients.

- Geographic dispersion.

- All else being equal, preference for applicants with lower indirect cost rates.

- Applicants with demonstrated success in implementing Gold Standard Science (applicable to research awards).

- Applicants with potential to produce immediate results and potential for longer-term, breakthrough results, based on the goals of this NOFO (applicable to research awards).

To the extent allowed by law, HUD may exercise its discretion in deciding whether and how to issue an award based on the above criteria, including decisions to:

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 89 of 129 PageID #: 247

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

- Fund applications in whole or in part.

- Impose special conditions on an award

- Fund applications at a lower amount than requested.

- Choose to fund no applications under this NOFO.

- Withdraw an award offer and make an offer of funding to another eligible application, if terms and conditions are not finalized or met timely.

- Use additional funds made available after NOFO publication to either fully fund an application or fund additional applications.

- Correct HUD review and selection errors. If HUD commits an error that causes an applicant not to be selected, HUD may make an award to that applicant when and if funding is available.

- Release another NOFO, if funding is available and if HUD does not receive applications of merit to obligate the funds.

## 1. Threshold Review.

HUD will conduct a project eligibility review on all projects, and a new project threshold review and renewal project threshold review on new and renewal projects respectively.

If a new project application passes the project eligibility threshold review in section V.A.4.a and receives enough points to pass the new project threshold review in section V.A.4.c of this NOFO but does not receive all the points available for its project type, HUD may place conditions on the grant award that must be satisfied before HUD will execute a grant agreement with the applicant for the project. If an applicant is unable to satisfy the condition(s) within the timeframe specified by HUD, HUD reserves the right to withdraw the conditionally awarded funds.

## 2. Conditional Selection and Adjustments to Funding.

HUD Headquarters will conditionally select project applications for funding using the following process:

**a. *HUD Funding Process.*** All project applications, including YHDP renewal and replacement projects, must be competitively ranked, except for CoC Planning and, if applicable, UFA Costs Applications.

**(1)** HUD will select all CoC Planning and UFA Costs applications that meet project eligibility threshold requirements. Only one CoC Planning and one UFA Costs (if applicable) project application can be submitted per CoC.

**(2)** HUD will then select all projects in Tier 1 that pass project eligibility thresholds as described in section V.A.4 of this NOFO.

**(3)** HUD will then review DV Bonus projects (this does not include DV Reallocation or the renewal of projects originally funded under the DV Bonus) already selected for funding through the above process and determine whether $104,000,000 has been awarded to DV Bonus projects:

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 90 of 129 PageID #: 248

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

**(a)** If at least $104,000,000 has been selected for conditional award no further action is needed.

**(b)** If $104,000,000 has not been selected for conditional award – HUD will continue down the list and fund additional DV Bonus projects by project-level score until at least $104 million has been selected.

**(4)** HUD will then review Permanent Housing projects for families with children already selected for funding through the above process and determine whether $430,000,000 has been awarded to Permanent Housing projects that serve families with children:

**(a)** If at least $430,000,000 has been selected for conditional award no further action is needed.

**(b)** If $430,000,000 has not been selected for conditional award – HUD will continue down the list and fund additional Permanent Housing for families with children projects by project-level score until at least $430 million has been selected.

**(5)** HUD will then select new Transitional Housing (TH) or Supportive Service Only (SSO) projects ranked in Tier 2 that meet project eligibility thresholds in the order of project score as described in section V.D.3.b below until $1,300,000,000 of new projects have been selected.

**(6)** HUD will then continue selecting new projects ranked in Tier 2 that meet project eligibility thresholds in the order of project score as described in section V.D.3.b below until $1,300,000,000 of new projects have been selected.

**(7)** If at any point, HUD selects new projects in an amount more than $1,300,000,000 HUD will remove all remaining unselected new projects, recalculate Tier 2 scores, and continue selecting projects.

**b.** As authorized under the Consolidated Appropriations Act, 2017 (Public Law 115-31; 131 Stat. 135) for fiscal year 2017 and hereafter, HUD will conditionally select a renewal grant that exceeds $10 million that was originally awarded pursuant to the matter under the heading "Department of Housing and Urban Development–Permanent Supportive Housing" in chapter 6 of title III of the Supplemental Appropriations Act, 2008 (Public Law 110-252; 122 Stat. 2351).

**c.** If an ineligible renewal project submitted under this NOFO is used in the reallocation process; or an ineligible YHDP Renewal or YHDP Replacement project is submitted, HUD will remove the ineligible project when calculating the final ARD amount for the CoC. To be eligible for renewal, reallocation, or replacement in the FY 2026 CoC and YHDP Competition, a project must have an expiration date in Calendar Year (CY) 2027 (between January 1, 2027, and December 31, 2027).

**3. Additional HUD Funding Process Information.**

CoCs and applicants should ensure there is a thorough understanding of the information provided in this NOFO. HUD has a two-tier funding selection process for FY 2026 funding. HUD will establish Tier 1 and Tier 2 amounts for each CoC, based on each CoC's Annual Renewal Demand. HUD will post a report that lists the available amounts for each CoC's PPRN, estimated ARD, Tier 1, CoC Planning, estimated CoC Bonus amounts, and estimated

DV Bonus amounts on HUD's website.

The maximum amount a CoC may apply for is the sum of the CoC's ARD, eligible CoC Bonus amounts, eligible DV Bonus amounts, eligible CoC planning amounts and if applicable, eligible UFA costs amounts.

The selection process described in this section of the NOFO will also be used for CoC Collaborative Applicants designated as UFAs.

Note that for FY 2026, DV Bonus and YHDP projects will be selected using the Tier 1 and Tier 2 selection process.

**a. *Tier 1.*** Tier 1 is equal to 60 percent of the CoC's Annual Renewal Demand (ARD). HUD will conditionally select project applications in Tier 1 from the highest scoring CoC application to the lowest scoring CoC application and according to the rank assigned by the CoC on the CoC Priority listing, provided the project applications pass project eligibility thresholds.

Any competitively ranked project may be placed in Tier 1 according to the CoC's local rating and ranking process and based on local needs and priorities.

**b. *Tier 2.*** Tier 2 is the difference between Tier 1 and the sum of each CoC's ARD, CoC Bonus, and DV Bonus.

HUD will evaluate project applications placed in Tier 2 for project eligibility and project quality threshold requirements and project renewal threshold requirements, if applicable; and HUD will determine funding using the CoC Application score as well as the CoC project ranking.

HUD will award a point value to each ranked new and renewal project application that is in Tier 2 using a 100-point scale, and conditionally select applications in Tier 2 using this point value from the highest scoring project application to the lowest:

**(1)** *CoC Score.* Up to 50 points in direct proportion to the score received on the CoC Application, e.g., if a CoC received 65 out of 130 points on the CoC Application, the project application would receive 25 out of 50 points for this criterion.

**(2)** *CoC Project Ranking.* Up to 40 points for the CoC's ranking of the project application(s). To consider the CoCs ranking of projects, HUD will assign point values directly related to the CoCs' ranking of project applications. The calculation of point values will be 40 times the quantity (1-x) where x is the ratio of the cumulative funding requests for all projects or portions of projects ranked higher by the CoC in Tier 2 plus one half of the funding of the project of interest to the total amount of funding available in Tier 2 for the CoC.

**(3)** *Service Participation.* Up to 10 points for projects that indicate that they have or will incorporate supportive service participation requirements in their program design, based on individual need in accordance with 24 CFR 578.75(h). Supportive Service Only (SSO) and HMIS will automatically receive 10 points in this category.

Consistent with 24 CFR 5.2005(b)(1) assistance may not be denied on the basis or as a direct result of the fact that the participant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, if the participant otherwise qualifies for

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 92 of 129 PageID #: 250

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

admission, assistance, participation, or occupancy.

**c. *Projects Straddling Tiers.*** If a project application straddles the Tier 1 and Tier 2 funding line, HUD will conditionally select the project up to the amount of funding that falls within Tier 1. Using selection criteria in section V.D.3.b above, HUD may fund the Tier 2 portion of the project. If HUD does not fund the Tier 2 portion of the project, HUD may award the project at the reduced amount based on the amount of funding that falls within Tier 1, provided the project is still feasible with the reduced funding (e.g., is able to continue serving homeless program participants effectively).

**d. *Domestic Violence, Dating Violence, Sexual Assault, and Stalking Bonus (DV Bonus).*** This NOFO provides approximately $104 million for "rapid re-housing projects and supportive service projects providing coordinated entry, and for eligible activities that the Secretary determines to be critical in order to assist survivors of domestic violence, dating violence, sexual assault, or stalking." In this NOFO, Transitional Housing is an eligible activity determined critical to assist survivors of domestic violence, dating violence, sexual assault, or stalking.

Each CoC may only submit one new SSO-CE DV Bonus project; however, there is no limit to the number of TH projects and PH-RRH projects CoCs may apply for, provided each application is for at least $50,000. A project applicant may also apply to expand an existing renewal project, including one that was previously awarded with DV Bonus funding, in accordance with section II.B.3.iof this NOFO; however, only the new project application for the expansion will be considered for DV Bonus funds through this process. DV Bonus funding may be used to expand an existing renewal project that is not dedicated to serving individuals and families who are fleeing or attempting to flee domestic violence, dating violence, sexual assault, or stalking who qualify as homeless under paragraphs (1) or (4) of the definition of homeless at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act so long as the DV Bonus funds for expansion are solely for additional units, beds, or services dedicated to persons eligible to be served with DV Bonus funding.

CoCs must rank all new DV Bonus project applications on the New Project Listing of the CoC Priority Listing with a unique number ranking and, when the project is part of an expansion, the corresponding renewal project application must be on the Renewal Project Listing with a unique rank number as well. HUD will only select a new DV Bonus project that expands an existing renewal project if HUD conditionally selects the existing renewal project for funding.

## 4. Conflict of Interest of Consultants or Technical Experts Assisting HUD.

Consultants and technical experts who assist HUD in evaluating applications for funding under published CoC Program NOFOs are subject to 18 U.S.C. 208, the Federal criminal conflict-of-interest statute, and the Standards of Ethical Conduct for Employees of the Executive Branch regulation published at 5 CFR Part 2635. Therefore, consultants and technical experts who have assisted or plan to assist applicants with preparing applications for CoC Program NOFOs are prohibited from serving on a selection panel or serving as a technical advisor to HUD. Anyone involved in reviewing CoC Program NOFO applications, including departmental staff, experts, and consultants, must avoid conflicts of interest or the

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 93 of 129 PageID #: 251

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

appearance of such conflicts. These individuals must also disclose to HUD's Office of General Counsel Ethics Law Division the following information, if applicable:

**a.** How the selection or non-selection of any applicant under a CoC Program NOFO will affect the individual's financial interests, as provided in 18 U.S.C. 208, or

**b.** How the application process involves a party with whom the individual has a covered relationship under 5 CFR 2635.502.

The consultant or technical expert assisting HUD must disclose this information before participating in any matter regarding a program NOFO. Applicants with questions regarding these provisions or concerning a conflict of interest should call the Office of General Counsel Ethics Law Division, at (202)708-3815 (this is not a toll-free number). HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.

### 5. Adjustments to Projects.

HUD may adjust the selection of competitive projects as follows:

**a. *CoC Maximum Award and FMR Adjustments.*** The process for determining a CoC's maximum award amount is detailed in 24 CFR 578.17(b). HUD must adjust awards for leasing, operating, and rental assistance BLIs based on changes to the Fair Market Rents (FMR). 24 CFR 578.51(f) requires that HUD will determine the award amount for Rental Assistance projects by multiplying the number and size of units proposed by the FMR in place at the application submission deadline.

HUD will make these adjustments as follows:

**(1)** Funds awarded for rental assistance will be adjusted in one of two ways:

**(a)** Funds awarded for rental assistance in all new and renewal projects requesting the FMR will be adjusted by applying the FMR in effect at the time of application submission to HUD, including instances where the FMR for a specific area has decreased from the previous year.

**(b)** Funds awarded for rental assistance for renewal projects that request less than FMR, that is, a per-unit amount based on the actual rent costs per unit (II.B.4i.) will be increased based on the average increase in FMR amounts within the CoC's geographic area, weighted for population density. If the FMR for a specific area decreased from the previous year, the project will be awarded the lesser amount of the per-unit amount requested by the project applicant, based on the actual rent costs per unit, or the FMR after adjustment.

**(2)** HUD will increase funds awarded for operating and leasing in PH projects based on the average increase in FMR amounts within the CoC's geographic area, weighted for population density. Because leasing and operating costs do not decrease relative to rent amounts for specific units (e.g., operating costs for 10 units that have rents of $500 are likely the same as for 10 units that have rents that are $450) HUD will not decrease leasing and operating BLIs if FMRs decrease in the geographic area. The operating and

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 94 of 129 PageID #: 252

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

leasing BLIs in these projects will remain the same as in the most recent grant agreement or grant agreement amendment.

**b.** *Cost of Living Adjustment Factor.* HUD will adjust amounts for the supportive services and HMIS Costs budget lines for renewing projects by the following factor: Most recent three-year average of changes in State Quarterly Census of Employment and Wages (QCEW) for the category Social Assistance (NAICS 624). Data can be found at: https://www.bls.gov/cew/data.htm.

## 6. Geographic Diversity.

HUD has determined that geographic diversity is an appropriate consideration in selecting homeless assistance projects in the CoC Program Competition. HUD believes that geographic diversity can be achieved best by awarding grants to as many CoCs as possible. To this end, in instances where any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Northern Mariana Islands, the Virgin Islands, and American Samoa do not have at least one funded CoC, HUD reserves the right to fund eligible project(s) with the highest total score in the CoC.

## 7. Funding Diversity.

HUD reserves the right to reduce the amount of a grant, if necessary, to ensure that no more than 10 percent of assistance made available under this NOFO will be awarded for projects located within any one unit of general local government or within the geographic area covered by any one CoC.

## 8. Grant Award Transfers and Recipient Changes.

Except as identified in (a)-(e) below, HUD will only execute grant agreements with the organization that submitted the FY 2026 project application in e-snaps. In instances where HUD and the conditionally selected applicant do not finalize the terms and conditions of the award, HUD may select another eligible applicant [Sec. II.A]

HUD will continue to consider requests to change a project recipient after a grant agreement has been executed in accordance with 24 CFR 578.105.

Under this NOFO, HUD may treat the change of a project applicant as a curable deficiency in instances where a FY 2026 CoC renewal application does not reflect the new recipient as the applicant. These instances include:

**a.** In cases where a recipient of an expiring grant awarded under a prior FY CoC or YHDP competition NOFO applies to renew their award under this NOFO and after applying for FY 2026 funds, HUD approves and both HUD and the recipient execute a grant agreement amendment to transfer the expiring grant;

**b.** In cases where a nonprofit organization is awarded a FY 2026 grant and subsequently merges with another or reorganizes, and the grant will be operated by substantially the same entity;

**c.** For HMIS grants, in cases where the CoC designates a new HMIS lead, but the prior HMIS lead is awarded a FY 2026 HMIS grant

**d.** For CoC Planning grants, in cases where the CoC designates a new Collaborative

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 95 of 129 PageID #: 253

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Applicant, but the prior Collaborative Applicant is awarded the FY 2026 CoC Planning grant

**e.** At its sole discretion, HUD may consider the transfer of an Award under other circumstances not described in (a)-(d) above.

### 9. Use of unawarded funds.

In the case that funding remains available under this NOFO after HUD follows the selection process described in V.D.2 and V.D.3 above and any subsequent appeals process as described in VIII.D below, HUD reserves the right to issue a supplemental NOFO.

## E. Award Notices

If your application is successful, HUD will email an award notice to the authorized official representative from the SF-424. HUD will also notify unsuccessful applicants.

The award notice communicates the amount of the award, important dates, and the terms and conditions you need to follow. The notice may also include HUD-imposed award conditions as provided under 2 CFR 200.208.

You agree to the award terms and conditions by either drawing funds from HUD's payment system or signing the agreement with HUD. If you do not agree to the award terms and conditions, HUD may select another eligible applicant.

Under 2 CFR 200.458 pre-award costs are allowable with written approval from HUD if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award. However, HUD will not consider eligibility for pre-award costs until after the date of the HUD selection notice. Additionally, the incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

For selected projects, HUD will require recordation of a HUD-approved use and repayment covenant before funds can be drawn down (the form can be obtained from the local HUD CPD field office) for all grants of funds for new construction, acquisition, and rehabilitation. (24 CFR 578.81) HUD Field Office Counsel must approve the use and repayment covenants in advance of their being recorded, and proof of recording must be submitted to HUD Field Office Counsel before HUD will release grant funds, other than acquisition funds.

If the award includes funds for acquisition, HUD may allow recipients to draw down acquisition funds before recording the Declaration of Restrictive Covenant if the HUD Field Office confirms that the escrow agent has received the Declaration of Restrictive Covenant and the recording instructions. The recipient or subrecipient may not draw down any funds other than acquisition funds until HUD Field Counsel has confirmed the Declaration of Restrictive Covenants has been recorded.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 96 of 129 PageID #: 254

# VI. SUBMISSION REQUIREMENTS AND DEADLINES

VI. Submissions Requirements and Deadlines

    A.   Deadlines

    B.   Submission Methods

    C.   Other Submissions

    D.   False Statements

TABLE OF CONTENTS

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 97 of 129 PageID #: 255

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# VI. SUBMISSION REQUIREMENTS AND DEADLINES

You must apply electronically, unless you qualify to submit a paper application. See Find the Application Package to make sure you have everything you need to apply online.

Make sure you are current with SAM.gov and UEI requirements before applying for the award. See the Before You Begin section of this NOFO.

## A. Deadlines

### 1. Application submission deadline:

The application deadline is 11:59:59 PM Eastern time on:

08/26/2026

HUD must receive your application by the deadline. Applications received after the deadline are late. Late applications are not eligible for HUD funding.

If HUD receives more than one application from you, HUD will review only the last submission.

HUD may extend an application due date based on emergency situations such as Presidentially-declared natural disasters. An improper or expired registration and password issues are not causes to allow HUD to accept applications after the deadline date.

Applicants must complete and submit their applications in *e-snaps* at **https://esnaps.hud.gov/**. The deadline to submit applications for FY 2026 funding is 8:00 PM ET on August 26, 2026.

24 CFR 578.9 requires CoCs to design, operate, and follow a collaborative process for the development of an application in response to a NOFO issued by HUD. As part of this collaborative process, CoCs must implement internal deadlines to ensure transparency and fairness at the local level. The implementation of deadlines that meet the standards outlined below for FY 2026 CoC Program project applications are part of the scoring criteria as detailed in section V.B of this NOFO.

### 2. CoC Notification to Project Applicants.

The CoC is required to notify, in writing outside of e-snaps, all project applicants who submitted their project applications to the CoC by the local CoC-established deadline whether their project application(s) will be accepted and ranked on the CoC Priority Listing, rejected, or reduced by the CoC no later than 15 days of the FY 2026 CoC Program application submission deadline.

Where a project application is being rejected or reduced, the CoC must provide the project applicant with the reason(s) for the rejection or reduction. CoCs failing to provide this information to a project applicant that submits its project application by the local competition deadline will receive 0 points under section V.B.1.a.(2) of this NOFO.

### 3. Major Disaster Areas.

If a major disaster impacts a CoC's geographic area, as declared by the President under the Stafford Act, during the CoC Program application process that will impact the submission of

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 98 of 129 PageID #: 256

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

the CoC Priority Listing and FY 2026 project applications, the CoC's Collaborative Applicant must send written notification to Karen DeBlasio, Office of Special Needs Assistance Program (SNAPS) at CoCDisaster@hud.gov. The email must include:

**a.** the nature of the disaster, date(s) the major disaster occurred, how the major disaster affected the Collaborative Applicant, the CoC, or its project(s);

**b.** the duration, and the impact on the Collaborative Applicant, the project applicants, or the CoC to meet the local competition deadline; and

**c.** the anticipated amount of time the CoC is requesting for an extension (e.g., number of days, weeks, or months). This does not mean HUD will allow the full amount of time requested.

Based on the timing and the extent of the major disaster, HUD may extend the application deadline for the affected CoC(s). All requests received will be confirmed via the Federal Emergency Management Agency (FEMA) website, https://www.fema.gov/disaster.

## B. Submission Methods

### 1. Electronic Submission

The official documents HUD uses to solicit applications for this NOFO are posted on Grants.gov; however, you must register and submit your application through esnaps.hud.gov. HUD does not accept applications or supportive documents via fax.

**a.** *CoC Registration.* HUD required Collaborative Applicants to complete the FY 2026 CoC Program Registration in accordance with Notice CPD-26-03: Continuum of Care Program Registration. If a Collaborative Applicant did not complete the FY 2026 CoC Program Registration, HUD moved the previous year's registration forward with no changes.

**b.** *CoC Review of Project Applications Prior to Submission to HUD.* HUD expects CoCs to implement a thorough review and oversight process at the local level for both new and renewal project applications to be submitted to HUD for the FY 2026 CoC Program Competition. HUD's experience is that many project applications contain information resulting in conditions on the grant; or for more serious infractions, HUD rejecting a project application. Deficient project applications prolong HUD's review process, which results in delayed funding announcements, lost funding for CoCs due to HUD rejecting projects, and delays accessing project funds to house and assist homeless individuals and families. HUD expects CoCs to closely review the information provided in each project application, including Renewal, Replacement, or Reallocation projects, to ensure:

**(1)** all proposed program participants will be eligible for the program component type selected;

**(2)** the information provided in the project application and proposed activities are:

**(a)** eligible and consistent with program requirements in the Rule;

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 99 of 129 PageID
#: 257

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(b)** eligible and consistent with DV Renewal, DV Reallocation and DV Bonus requirements in sections II.B.3.d, II.B.3.e, and V.D.3.d of this NOFO; or
**(c)** eligible and consistent with YHDP Renewal and YHDP Replacement project requirements which includes YHDP Reallocation provided in sections II.B.3g and II.B.3.h of this NOFO;

**(3)** each project narrative is fully responsive to the question being asked and that it meets all the criteria for that question as required by this NOFO;

**(4)** the data provided in various parts of the project application are consistent; and

**(5)** all required attachments correspond to the list of attachments in e-snaps, must contain accurate and complete information and must be dated between December 10, 2025 and August 26, 2026.

**c.** *Collaborative Applicant Submission Requirements.* Collaborative Applicants must submit the FY 2026 Consolidated application by the FY 2026 application submission deadline. HUD will consider the CoC Consolidated Application properly submitted for review when the Collaborative Applicant submits the FY 2026CoC Application, the FY 2026 CoC Priority Listing, and all FY 2026 project applications on behalf of the CoC.

The "Submit" button will not be available on the Submission Summary of the FY 2026 CoC Application and FY 2026 CoC Priority Listing until all required sections of the application and all parts of the listings have been completed. Collaborative Applicants should review the Submission Summary form carefully to ensure no sections state "Please Complete."

Collaborative Applicants should export a PDF copy of the Submission Summary form from the FY 2026 CoC Application and the FY 2026 CoC Priority Listing after they have been submitted to HUD and before closing their internet browser. This is the Collaborative Applicant's receipt of submission and proof of compliance with the FY 2026 application deadline.

The CoC Consolidated Application includes the following:

**(1) FY 2026 CoC Application which includes the following:**

**(a) CoC Review, Score, and Ranking Procedures.** The CoC's written procedures that are publicly posted for all interested stakeholders and applicants that clearly describe the project-level review and ranking process that is used by the CoC to determine how CoC Program project applications submitted to the CoC are reviewed, scored, and ranked.

**(b) CoC Public Notice.** A screenshot(s) from the CoC's website, or a partner website, that includes the date the CoC notified the public of its local competition process, the due date for project applications, and the full CoC Application and CoC Priority Listing that includes all Project Listings of project applications submitted to HUD as accepted (in the case of non-competitive CoC Planning and UFA costs), approved and ranked or rejected.

**(c) CoC Review and Ranking Process.** Documents the process used by the CoC in the local competition to review, assess, and score new and renewal project

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 100 of 129 PageID #: 258

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

applications, a copy of one scored project application form used by most renewal project applicants that includes the objective criteria and system performance criteria and their respective maximum point values and the actual points your CoC awarded to the project applicant; and the local competition selection results for new and renewal project applications.

**(d) Notification to Project Applicants of projects rejected or reduced.** The notification of the action (rejection or reduction) that must be sent to the project applicant at least 15-days prior to the HUD application submission deadline, if a new or renewal project application was submitted to the CoC in the local competition and the CoC rejected it or reduced its funding request as part of the CoC's local process.

**(e) Public Notification of Ranked Project Applications.** The notification of action that all project applicants who submitted new and renewal project applications in the local CoC competition are notified at least 15-days prior to the HUD application submission deadline of the CoC's acceptance that includes the ranked position of the project applications. This notification may be posted publicly or sent via email to individual project applicants.

**(f) Projects to Serve Persons Defined as Homeless under paragraph (3) of 24 CFR 578.3.** If the CoC is seeking to serve persons defined as homeless under paragraph (3) of the homeless definition, a list of projects that will serve persons defined as homeless under paragraph (3) of the homeless definition.

**(g) The FY 2026 HDX Competition Report.** The FY 2026 HDX Competition Report contains data submitted to HUD via HDX, including HIC, PIT count, and system performance data.

**(2) FY 2026 Project Application(s), including for each project application:**

**(a) Charts, narrative responses, and attachments.**

**(b) Documentation of Applicant and subrecipient Eligibility.** All nonprofit project applicants must attach eligibility documentation to the Project Applicant Profile. If nonprofit subrecipients are included in a project application, subrecipient eligibility documentation must be attached to the project application.

**(c) HUD required forms.** The HUD-required forms are built into e-snaps and must be fully completed and electronically signed before project applicants have access to the project application (see section IV.A of this NOFO).

**(3) FY 2026 CoC Priority Listing.** The CoC Priority Listing in e-snaps must include the following completed forms, certifications, and attachments:

**(a) Project Reallocation Form.** The Reallocation form allows CoCs to indicate which eligible new projects, if any, will be reduced or eliminated through the reallocation process.

**(b) CoC and YHDP Project Listings.** The CoC project listing forms require the following project applications to be ranked, with unique rank numbers, in order of priority. Any project not ranked with a unique rank number must be rejected. The forms under this requirement include:

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 101 of 129 PageID #: 259

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**i.** CoC New Projects (including CoC Bonus and CoC Reallocation projects;

**ii.** CoC Renewal Projects (including DV Renewal and Special NOFO Renewal projects);

**iii.** DV Bonus Projects;

**iv.** DV Reallocation Projects;

**v.** YHDP Renewal Projects;

**vi.** YHDP Replacement Projects (including YHDP Reallocation projects).

If a CoC, in collaboration with the Youth Action Board (YAB), determines that it no longer has an identified need to renew an eligible YHDP project under this NOFO, the Collaborative Applicant must indicate in the Priority Listing the project information and amounts that will be removed from the CoC's ARD and made available under a subsequent YHDP NOFO Competition.

**(c)** CoC Planning and UFA Costs Project Application Listings. These project listing forms include the following non-ranked project applications:

**i.** CoC Planning Project Listing; and

**ii.** UFA Costs Project Listing, if applicable.

Collaborative Applicants must ensure the CoC only submits one project application for CoC Planning, and if the CoC's Collaborative Applicant is a HUD-designated UFA, one UFA Costs project application.

**(d)** Form HUD-2991, Certification of Consistency with the Consolidated Plan (See section IV.A.1 of this NOFO).

**(e)** Tribal Resolution, if applicable (See section IV.A.2 of this NOFO).

## d. Project Application Submissions.

Project applications must include the population(s) and subpopulation(s) they will serve, the type of housing and services they will provide, and the budget activities they are requesting. Project applicants must also provide documentation of applicant and subrecipient eligibility. All nonprofit project applicants must attach eligibility documentation to the Project Applicant Profile. If nonprofit subrecipients are included in a project application, subrecipient eligibility documentation must be attached to the project application.

Collaborative Applicants applying for CoC Planning and UFA Costs (if designated as a UFA by HUD) must provide a description of the activities that will be carried out with CoC Program grant funds.

Additionally, all project applicants must ensure their organization has a Code of Conduct that complies with the requirements of 2 CFR part 200, as may be amended from time to time, and is included on HUD's website. If the organization's Code of Conduct does not appear on HUD's website, the project applicant must attach its Code of Conduct that includes all required information to its Project Applicant Profile in e-snaps.

For more information on project applications, see section II.B of this NOFO.

## e. Timely Submissions.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 102 of 129 PageID #: 260

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

HUD will not fund applications that are not received on time. Also, failure to submit a complete CoC Consolidated Application may result in HUD finding that the CoC does not meet the requirements of the Act or its implementing regulations under 24 CFR 578.13. If the Secretary makes that finding, HUD may take remedial action to ensure fair distribution of grant funds to eligible entities within the CoC's geographic area, which includes the possibility that HUD will designate another eligible applicant to be the Collaborative Applicant for the CoC. In addition to the remedial actions listed in 24 CFR 578.13(a), HUD may also impose another remedial action, such as requiring the CoC to create new policies and procedures to ensure that the Collaborative Applicant performs its duties.

### f. Resolving Technical Difficulties.

CoC and project applicants experiencing technical difficulty with any part of the Application should notify HUD immediately for assistance and document all attempts to obtain assistance. Notification of technical difficulties are to be sent to CoCNOFO@hud.gov. HUD will not provide assistance directly related to content, only to troubleshoot submission issues.

CoCs that are submitting new and renewal applications for FY 2026 CoC and YHDP funding should print the Submission Summary form for the FY 2026 CoC Priority Listing for proof of compliance with the FY 2026 application deadline. HUD will not give funding consideration to any Collaborative Applicant whose FY 2026 CoC Priority Listing is determined to be late and the Collaborative Applicant is unable to provide HUD with a record of submission that verifies the CoC Consolidated Application was submitted prior to the application deadline date and time.

HUD strongly suggests that applicants use the "Export to PDF" functionality in e-snaps to save a hard copy of all submission documents for their records. This can be completed prior to or after submission.

If after notice and reasonable opportunity to be heard, HUD finds pursuant to 24 CFR 578.13 that one or more CoCs have failed to comply with the requirements of the Act and the Rule, HUD may, solely at its discretion and only if sufficient funds become available by recapture, publish a new NOFO for eligible applicants in CoCs that HUD determined do not meet the requirements of the Act and program regulations.

**Need Help?** See the Contact and Support section of this NOFO.

## 2. Electronic Submission Application Waiver

You may request a waiver from the requirement to submit your application electronically. The request must show good cause and detail why you are technologically unable to submit electronically. An example of good cause may include: a valid power or internet service disruption in the area of your business office. Lack of SAM.gov registration is not good cause.

Use the information in the Contact and Support section of this NOFO to submit a written request to HUD. You must **submit your waiver request at least 15 calendar days before the application deadline**.

The regulatory framework of HUD's electronic submission requirement is the final rule

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 103 of 129 PageID #: 261

established in 24 CFR 5.1005. CoCs seeking a waiver of the electronic submission requirement must request a waiver in accordance with 24 CFR 5.1005. If a Collaborative Applicant finds it cannot submit its application electronically and must seek a waiver of the electronic grant submission requirement, its request must be postmarked no later than 60 days after the publication date of this NOFO. To expedite the receipt and review of each request, Collaborative Applicants may email their written requests to the Office of Special Needs Assistance Program (SNAPS) at CoCNOFO@hud.gov. If HUD does not have sufficient time to process the waiver request, HUD will not grant a waiver. HUD will not consider paper applications received without a prior approved waiver or after the established deadline.

## C. Other Submission Information

### 1. Intergovernmental Review

This NOFO is not subject to Executive Order 12372. No action is needed.

### 2. Technical Application Errors

HUD will contact you to fix a technical error with your timely application after the due date. Use the following submission requirements to respond to HUD's notice.

### a. Fix Errors in Electronic Applications

To fix an error in response to a HUD notice, you must email the corrections to HUD at CoCNOFO@hud.gov.

HUD allows 7 calendar days from the date of the HUD notice to fix an error. If the due date to fix an error falls on a Saturday, Sunday, Federal holiday, or on a day when HUD's Headquarters office in Washington, DC is closed, then the due date is the next business day.

### b. Fix Errors in Paper Applications

You must fix an error in your paper application, in accordance with HUD's notice. If your paper application includes an incorrect UEI, HUD will request you supply the correct UEI.

## D. False Statements

By submitting your application, you acknowledge that you have read and understood federal laws and regulations, grant terms and conditions, and rules and requirements applicable to HUD's Continuum of Care (CoC) program as described in this NOFO. As part of your application for CoC funding, you must provide the certifications and assurances described below to ensure that you understand your obligation to protect the funds from fraud. Furthermore, grant recipients must require each subrecipient to provide the same anti-fraud certifications and assurances.

On behalf of the applicant, and in support of your application for the CoC grant, you certify under the penalty of perjury, that:

(1) You have the authority to make the following representations on behalf of yourself and the applicant, and you understand that these representations will be relied upon as material in any HUD decision to make an award to the applicant based on its application.

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 104 of 129 PageID #: 262

(2) You have the legal authority to apply for the federal assistance sought by the application, and that the applicant has the institutional, managerial, and financial capability to ensure proper planning, management, and completion of the project described in the application.

(3) The information provided in the application is true, accurate, and complete.

(4) Throughout the period of performance for the award, if any,

a. The applicant will comply with and follow all federal laws and regulations, grant terms and conditions, and rules and requirements applicable to HUD's Continuum of Care program;

b. The applicant will require all subrecipients to comply with and follow all federal laws and regulations, grant terms and conditions, and rules and requirements applicable to HUD's Continuum of Care program;

c. The applicant will notify HUD within fifteen (15) calendar days if the applicant becomes aware of any violation of HUD requirements pertinent to the award by any person or entity–including, but not limited to the applicant, any subrecipient, or contractor;

d. The applicant will maintain safeguards to address and prevent any conflicts of interest, and to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest; and

d. The applicant will comply with HUD's conflict-of-interest requirements stated at 24 CFR 578.95.

(5) The applicant will give HUD, the Office of Inspector General, and the Comptroller General of the United States, through any authorized representative, access to and opportunity to examine all records, books, papers, documents, or electronic records related to the award, if any, made by HUD.

(6) The applicant will establish an accounting system in accordance with generally accepted accounting standards or HUD directives, consistent with 2 C.F.R. § 200.302, "Financial Management," and 2 C.F.R. § 200.303, "Internal Controls."

(7) The applicant will submit the performance, financial, and program reports as outlined in the NOFO and required by federal laws and regulations.

(8) The applicant will require that the language of these Anti-Fraud Certifications and Assurances be included in the award documents or agreements for all subawards as defined at 2 CFR 200.1and that the applicant will seek from all subrecipients the same certifications and assurances.

(9) You understand that complying with the terms, conditions, and requirements of your award, if any, is a material condition of remaining eligible for HUD funding.

Finally, by submitting your application, you acknowledge that you understand that providing false or misleading information during any part of the application, award, or performance phase of an award may result in criminal, civil, or administrative sanctions, including but not limited to: charges and remedies provided for by applicable state laws and regulations; fines,

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 105 of 129 PageID #: 263

restitution, and/or imprisonment under 18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729 et seq.; double damages and civil penalties under the Administrative False Claims Act, 31 U.S.C. §§ 3801-3812; civil recovery of award funds; suspension and/or debarment from all federal procurement and non-procurement transactions, Federal Acquisition Regulations Part 9.4 or 2 C.F.R. Part 180; and other remedies including termination of active HUD award.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 106 of 129 PageID #: 264

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# VII. POST - AWARD REQUIREMENTS AND ADMINISTRATION

VII. Post-Award Requirements and Administration

A. Administrative, National and Departmental Policy Requirements and General Terms and Conditions

B. Environmental Requirements

C. Remedies for Noncompliance

D. Reporting

TABLE OF CONTENTS

# VII. POST-AWARD REQUIREMENTS AND ADMINISTRATION

## A. Administrative, National and Departmental Policy Requirements, and General Terms and Conditions

You must follow the applicable provisions in the Administrative, National & Departmental Policy Requirements and Terms for HUD Financial Assistance – 2026:

**Administrative**

1. Build America, Buy America (BABA) (Sections 70901-52 of Public Law 117-58; 41 U.S.C. 8301 et seq; and 2 CFR Part 184)

2. Uniform Relocation Assistance and Real Property Acquisition Policies Act (42 U.S.C. § 4601 et seq.; 49 CFR part 24; and applicable program regulations)

3. Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR part 200)

4. HUD requirements related to safeguarding resident/client files consistent with 2 CFR 200.303(e)

5. The Federal Funding Accountability and Transparency Act (FFATA) (2 CFR part 170)

6. Eminent Domain

7. Participation in HUD-Sponsored Program Evaluation (12 U.S.C. 1701z-1; 12 U.S.C. 1702z-2; 24 CFR part 60; and FR-6278-N-01)

8. The Freedom of Information Act (FOIA) (5 U.S.C. § 552(b) and 24 CFR 15.107(b))

9. Presidential Executive Actions affecting federal financial assistance programs

- Executive Order (EO) 14332 (*Improving Oversight of Federal Grantmaking*)

- EO 14303 (*Restoring Gold Standard Science*)

- EO 14219 (*Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*);

- EO 14218 (*Ending Taxpayer Subsidization of Open Borders*);

- EO 14202 (*Eradicating Anti-Christian Bias*);

- EO 14205 (*Establishment of the White House Faith Office*)

- EO 14182 (*Enforcing the Hyde Amendment*);

- EO 14173 (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*);

- EO 14168 (*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*)

- EO 14151 (*Ending Radical and Wasteful Government DEI Programs and Preferencing*); and

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 108 of 129 PageID #: 266

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

- EO 14148 (*Initial Rescissions of Harmful Executive Orders and Actions*)

**Civil Rights and Other Protections**

10. The Fair Housing Act (42 U.S.C. 3601-3619) and Civil Rights laws (24 CFR 5.105(a))

11. Affirmatively Furthering Fair Housing (AFFH) requirements (42 U.S.C. § 3608(e)(5) and 24 CFR 5.150 et seq)

12. Economic Opportunities for Low-and Very Low-income Persons (12 U.S.C. § 1701u and 24 CFR part 75)

13. Compliance with Immigration Requirements (8 U.S.C. § 1601-1646; and Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*)

14. Accessible Technology requirements (29 U.S.C. § 794d; 29 U.S.C. 794; and 42 U.S.C. 12131-12165 and implementing regulations at 36 CFR part 1194 (Section 508 regulations), 24 CFR § 8.6 (Section 504 effective communication regulations), 28 CFR part 35, subpart H (DOJ Web Access Rule), and 28 CFR part 35, subpart E (DOJ's Title II communications regulations))

15. Ensuring, when possible, the consideration of small businesses, minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms consistent with 2 CFR 200.321

16. Equal Participation of Faith-based Organizations in HUD Programs and Activities consistent with 42 U.S.C. 2000bb et seq.; 24 CFR 5.109; Executive Order (EO) 14202, *Eradicating Anti-Christian Bias;* and EO 14205, *Establishment of the White House Faith Office*

17. Accessibility for Persons with Disabilities requirements (29 U.S.C. § 794 and implementing regulations at 24 CFR parts 8 and 100; 28 CFR part 35)

18. Applicable Violence Against Women Act (VAWA) requirements in the Housing Chapter of VAWA (34 U.S.C. § 12491-12496); 24 CFR part 5, subpart L; and program-specific regulations

19. Trafficking in persons (Section 106(g) of the Trafficking Victims Protections Act of 2000 (TVPA), as amended 22 U.S.C. § 7104(g) and implementing regulations at 2 CFR part 175)

**Environmental**

20. Environmental requirements that apply in accordance with 24 CFR part 50 or part 58; 42 U.S.C. 4321 et seq.

**Business Integrity**

21. Conducting Business in Accordance with Ethical Standards (Code of Conduct), including 2 CFR 200.317, 2 CFR 200.318(c), and other applicable conflicts of interest requirements

22. Prohibition on Certain Telecommunication and Video Surveillance Services or Equipment (41 U.S.C. § 3901 and 2 CFR 200.216)

23. Waste, Fraud, Abuse, and Whistleblower Protections (41 U.S.C. § 4712)

24. Drug-Free Workplace (2 CFR part 2429)

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 109 of 129 PageID #: 267

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

In addition, if any part or provision of the award agreement or terms of this NOFO are enjoined or held to be void or unenforceable in any jurisdiction, they shall be ineffective as to such jurisdiction and only to the extent of such prohibition or enjoinment and shall not invalidate or affect the legality or enforceability of the remaining provisions and applications of the Agreement and Notice. In the event the enjoinment of such provisions is stayed, dissolved, or reversed, the full terms of the award agreement and NOFO, including such provisions, will automatically become effective. This clause is self-executing and will become effective, binding, and enforceable automatically upon issuance of this NOFO.

Additionally,

**1.** Awards made under this NOFO will not be used to engage in illegal racial discrimination including racial preferences.

**2.** Awards made under this NOFO will not be distributed in a way that violates or otherwise is used to interfere with constitutional protections guaranteed for speech and religious beliefs and the free exercise of religion.

**3.** Awards made under this NOFO will not be used to fund any project, service provider, or organization that operates illegal drug injection sites or "safe consumption sites" in violation of 21 U.S.C. § 856, knowingly permit the use or distribution of illicit drugs on property under their control in violation of 21 U.S.C. 856(a)(2), or knowingly distribute drug paraphernalia in violation of 21 USC 863. This is not a requirement that program participants must be sober in order to receive assistance, participate in treatment in order to receive assistance, or be evicted or exited from assistance for a first-time violation of a drug-related program policy or lease requirement.

**4.** Pursuant to 2 CFR 200.332(b)(2), all agreements or contracts made with subrecipients under this NOFO must contain the same terms and conditions as those in the grant agreement issued by HUD. Any conflicting terms and conditions must be approved by HUD.

## B. Environmental Requirements

### 1. Environmental Review

You must follow these environmental review requirements, including regulations at:

24 CFR part 50

24 CFR part 58

Notwithstanding 24 CFR 578.31 and 24 CFR 578.99(a) of the Rule, and in accordance with Section 100261(3) of MAP-21 (Pub. L. 112-141, 126 Stat. 405), activities under this NOFO are subject to environmental review by a responsible entity under HUD regulations at 24 CFR part 58 or by HUD under 24 CFR part 50.

   **a.** All HUD assisted activities, even projects that only involve exempt activities, require some level of environmental review. Two types of projects are Categorically Excluded from review under the National Environmental Policy Act (NEPA) and not subject to compliance with the laws and authorities listed under 24 CFR 58.5 (CENST): All scattered-site projects where program participants choose their own unit and are not restricted to units within a pre-determined specific project site or sites are categorized in

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 110 of 129 PageID #: 268

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

24 CFR 58.35(b)(1) as CENST. This includes both tenant-based rental assistance and tenant-based leasing projects where program participants choose their own unit and do not involve any physical work or impacts beyond routine maintenance as defined by Notice CPD-16-02: Guidance for Categorizing an Activity as Maintenance for Compliance with HUD Environmental Regulations. The Exempt/CENST environmental review form is only required for each project, not every unit.

**b.** For activities under a grant to a recipient other than a state or unit of general local government that generally would be subject to review under 24 CFR part 58, HUD may make a finding in accordance with 24 CFR 58.11(d) and may itself perform the environmental review under the provisions of 24 CFR part 50 if the recipient objects in writing to the responsible entity's performing the review under part 24 CFR part 58.

**c.** Irrespective of whether the responsible entity in accordance with 24 CFR part 58 (or HUD in accordance with 24 CFR part 50) performs the environmental review, the recipient must supply all relevant and available information necessary for the responsible entity (or HUD, if applicable) to perform for each property any required environmental review. The recipient also must carry out mitigating measures required by the responsible entity (or HUD, if applicable) or select alternative property.

**d.** The recipient, its project partners, and their contractors may not acquire, rehabilitate, convert, lease, repair, dispose of, demolish, or construct property for a project under this NOFO, or commit or expend HUD or non-HUD funds for such eligible activities under this NOFO, until the responsible entity (as defined by 24 CFR 58.2(a)(7)) has completed the environmental review procedures required by 24 CFR part 58 and the environmental certification and Request for Release of Funds (RROF) have been approved or HUD has performed an environmental review under 24 CFR part 50 and the recipient has received HUD approval of the project. HUD will not release grant funds if the recipient or any other party commits grant funds (i.e., incurs any costs or expenditures to be paid or reimbursed with such funds) before the recipient submits and HUD approves its RROF (where such submission is required).

## 2. NOFO Impact Determination Related to the Environment

This NOFO has no significant impact related to the environment. HUD has made a Finding of No Significant Impact (FONSI) as required by HUD regulations at 24 CFR part 50, which implement section 102(2)(C) of the National Environmental Policy Act of 1969 (42 USC § 4332(2)(c)). To learn more about this FONSI, go to HUD's Funding Opportunities web page.

## 3. Lead-Based Paint Requirements

You must follow the lead-based paint rules below if you fund any work on pre-1978 housing. This includes buying, leasing, support services, operating, or work that disturbs painted surfaces.

- HUD's rules (Lead Disclosure Rule; and Lead Safe Housing Rule).
- EPA's rules (Renovation, Repair and Painting Rule, and Lead Abatement, Inspection and Risk Assessment Rule).

You must discuss the Lead Disclosure Rule if you fund education or counseling on buying or

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 111 of 129 PageID #: 269

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

renting housing that may have been built before 1978. You must also discuss the Lead Safe Housing Rule if the education or counseling focuses on buying or renting HUD-assisted pre-1978 housing.

## C. Remedies for Noncompliance

HUD may terminate all or a part of your award as described under 2 CFR 200.340 through 200.343 pursuant to the terms and conditions of your award, including, to the extent authorized by law:

- if an award no longer effectuates the program goals or agency priorities; or

- in the case of a partial termination, if HUD determines that the remaining portion of the award will not accomplish the purposes for which the HUD award was made.

HUD may also impose specific conditions on your award or take other remedies as described by 2 CFR 200.339 through 200.343, if you do not comply with the U.S. Constitution, Federal statutes, regulations, or your award terms and conditions.

For more information on CoC Program sanctions and remedies for noncompliance see 24 CFR 578.107.

## D. Reporting

HUD requires recipients to submit performance, financial, and program reports as outlined below. You must comply with these reporting requirements to remain eligible for HUD funding. See Section VII.C. of this NOFO.

Further, the Recipient hereby acknowledges that HUD is in the process of implementing new grants management and reporting tools for all records pertinent to the Federal award. Recipient agrees to report on grant performance and financial activities (including vendor and cash disbursement supporting details for the Recipient and its Subrecipients) using these new tools when they are released and to satisfy occasional requests for records pertinent to the federal award, consistent with the requirements for recordkeeping, access to records, and reporting laid out in 2 CFR part 200, which may be amended from time to time. HUD will work with the Recipient to support its transition to the new reporting tools. HUD reserves the right to exercise all of its available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include, without limitation, requiring additional or more detailed financial reports, suspension of disbursements, and all other legally available remedies, to the furthest extent permitted by law.

| Report | Description | When |
|---|---|---|
| Federal Funding Accountability and Transparency Act (FFATA) | • Awards equal to or greater than $30,000<br><br>• Data on executive compensation and first-tier subawards<br><br>• See Public Law 109-282 | See 2 CFR Appendix A to Part 170(a)(2)(ii) |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 112 of 129 PageID #: 270

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VII. Contact and Support | Appendix |

| Report | Description | When |
|---|---|---|
| | and 2 CFR part 170 <br>• HUD reports initial prime recipient data to usaspending.gov <br>• Submit via SAM.gov | |
| Reporting on Recipient Integrity and Performance Matters | • Total value of all current Federal awards exceeds $10,000,000 for any period of time during the period of performance of this Federal award <br>• See Appendix XII to 2 CFR 200 <br>• Submit via SAM.gov | See 2 CFR Appendix-XII to Part 200 I.(d) |
| Annual Performance Report (APR) | • Collect and report data use of funds annually. <br>• Projects receiving funds for acquisition, new construction, or rehabilitation must submit APRs for 15 years from the date of initial occupancy or the date of initial service provision. | See 24 CFR 578.103(e) |
| Federal Financial Report, SF-425 | • Summary of key financial data <br>• See 2 CFR 200.328 | See 2 CFR 200.328 or award terms |
| Race, Ethnicity, and Other Data Reporting | Recipients that provide HUD-funded program benefits to individuals or families, report data on the race, color, religion, sex, national origin, age, disability, and family characteristics of persons and households funded by this program. | Annually through the Homeless Data Exchange submission. |

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 113 of 129 PageID #: 271

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

| Report | Description | When |
|---|---|---|
| Audit Requirements | In accordance with program regulations at 24 CFR 578.103, project recipients must maintain records within the timeframe required and make any reports that HUD may require. Project recipients may report the data as part of their APR submission to HUD.<br><br>• Single or program-specific audit is required if annual expenditures equal to or greater than $1,000,000 in Federal awards<br><br>• Required for the fiscal year in which the expenditure occurs<br><br>Financial statement audit and programmatic compliance evaluation | See 2 CFR part 200 subpart F and Appendix XI to 2 CFR part 200 |
| Section 3 Reporting Regulations | Recipients are required to report their Section 3 activities per 24 CFR 75.25 if funds were awarded for housing rehabilitation, housing construction, and other public constructions. | See HUD's Section 3 website for additional information including annual reporting requirements. |

**1. Program Specific Reporting Requirements.**

**a.** In accordance with program regulations at 24 CFR 578.103, project recipients must maintain records within the timeframe required and make any reports that HUD may require. Project recipients may report the data as part of their APR submission to HUD. Also, project recipients who expend $1,000,000 or more in 1 year in federal awards must have a single or program-specific audit for that year in accordance with the provisions of 2 CFR part 200, subpart F.

**b. Section 3 Reporting Regulations.** Recipients are required to report their Section 3 activities per 24 CFR 75.25 if funds were awarded for housing rehabilitation, housing construction, and other public constructions. See HUD's Section 3 website for additional

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 114 of 129 PageID #: 272

information including annual reporting requirements.

**c.** Award notices may also include requirements for sub-award reporting in compliance with the requirements of the Federal Financial Assistance Accountability and Transparency Act of 2006 (Pub. L. 109-282) (FFATA) and Section 872 of the Duncan Hunter National Defense Authorization Act for Fiscal Year 2009 (Pub. L. 110-417), referred to as "Section 872." See the General Section for further information.

**e.** An estimate of the reporting and recordkeeping burden of the CoC Program can be found in the [Federal Register Publication](#) of the Rule.

## 2. Administrative and Other Program Requirements.

Federal agencies are required to measure the performance of their programs. HUD captures this information from monitoring visits and APRs

# VIII. CONTACT AND SUPPORT

VIII. Contact and Support

    A.   Agency Contact

    B.   Grants.gov

    C.   Sam.gov

    D.   Debriefing

    E.   Applicant Experience Survey

    F.   Other Online Resources

TABLE OF CONTENTS

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 116 of 129 PageID #: 274

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | IX. Appendix |

# VIII. CONTACT AND SUPPORT

Individuals who are deaf or hard of hearing, as well as individuals who have speech or communication disabilities may use a relay service. To learn more about how to make an accessible telephone call, visit the webpage for the Federal Communications Commission.

## A. Agency Contact

### 1. Program and Application Requirements

Name: HUD Office of Community Planning and Development

Email: CoCNOFO@hud.gov

Note: HUD's assistance is limited by the standards at 24 CFR 4.26.

HUD staff will be available to provide general clarification on the content of this NOFO; however, HUD staff are prohibited from assisting any applicant in preparing the application(s) in e-snaps.

**a. Local HUD Community Planning Development (CPD) Office.** Questions regarding specific program requirements should be directed to the local HUD CPD field office, a directory of which can be found at https://www.hud.gov/program_offices/field_policy_mgt/localoffices.

**b. Training and Resources.** Collaborative Applicants and project applicants that need assistance completing the applications in e-snaps or understanding the program requirements under the CoC Program may access the Rule, training materials, and program resources via https://www.hud.gov/hud-partners/community-coc.

**c. Questions.** CoCs, Collaborative Applicants, and project applicants that require information and technical support concerning this NOFO and the application in e-snaps may submit an inquiry to CoCNOFO@hud.gov. Starting 2 days prior to the application deadline, this email address will respond only to emergency technical support questions up to the deadline of 8:00 PM ET on August 26, 2026. Applicants experiencing technical difficulty should contact CoCNOFO@hud.gov immediately for assistance and document their attempts to obtain assistance.

### 2. Paper Application Waiver Request

Name: Office of Special Needs Assistance Programs

Email: CoCNOFO@hud.gov

Phone: (202) 708-4300

HUD Organization: Community Planning and Development

Street: 2415 Eisenhower Ave

City: Alexandria

VA VIRGINIA

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 117 of 129 PageID #: 275

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

22314

**HUD Reform Act.** HUD is prohibited from disclosing covered selection information during the selection process. The selection process includes NOFO development and publication, and concludes with the announcement of selected recipients of financial assistance. HUD will not assist you with completing your application.

HUD will only return calls related to paper application requests. All other calls will not be returned.

All other requests or questions regarding this NOFO must be sent via email to CoCNOFO@hud.gov

## B. esnaps.hud.gov

CoCs, Collaborative Applicants, and project applicants that require information and technical support concerning this NOFO and the application in e-snaps may submit an inquiry to CoCNOFO@hud.gov. Starting 2 days prior to the application deadline, this email address will respond only to emergency technical support questions

## C. SAM.gov

If you need help, you can call 866-606-8220 or live chat with the Federal Service Desk.

## D. Debriefing and Appeals

1. After public announcement of awards, HUD will debrief the Collaborative Applicant upon your written request. Submit your written request to the agency contact for program and application requirements in this NOFO. HUD may limit the information provided to protect the integrity of the competition.

2. You may appeal an application decision or a HUD funding decision. Email your appeal to snapsappeals@hud.gov. The subject line of your email must include the CoC Number, "Appeal Notice," and type of appeal, i.e., Participation, HUD Error, or Consolidated Plan Certification. A sample email Subject Line is, Subject: XX-500 – Appeal Notice–Consolidated Plan Certification.

24 CFR 578.35 provides the appeal process options. Sections 578.35(b)(3), (b)(4), (c)(1), and (d)(2) authorize HUD to establish requirements for the form and manner of submissions for appeals by Solo Applicants, applicants with denied or decreased funding, and from competing CoCs. For HUD to consider an appeal under 24 CFR 578.35(b) or (c), the solo project applicant must follow the applicable application process set forth in this NOFO. This NOFO also provides guidance to CoCs and applicants regarding appeals of a jurisdiction's refusal to sign the Consolidated Plan certification for a project under 24 CFR 578.35(c).

Additionally, HUD is clarifying the impact that Solo Applicant appeals will have on HUD signing grant agreements for funds awarded under this NOFO. If HUD receives one or more Solo Applicant appeals from a CoC, HUD will determine the amount of funding the Solo Applicant(s) have requested which may delay signing grant agreements for the awarded project(s) listed at the bottom of the CoC's Priority Listing that has requested funding under this NOFO equal to double the amount requested by the Solo Applicant(s). Refer to the Solo Applicant appeal process in section VIII.D.3.a of this NOFO for additional information about

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 118 of 129 PageID #: 276

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

the Solo Application appeal process.

Finally, for the purposes of the appeals identified in this NOFO where 24 CFR 578.35 requires that all evidence be sent to the CoC and that the CoC respond to evidence, this means that correspondence to the CoC should be addressed to the CoC-designated Collaborative Applicant and all correspondence to HUD from the CoC should be addressed from the CoC's designated Collaborative Applicant. If the CoC has authorized another entity other than the Collaborative Applicant to respond to the appeals identified in this NOFO on its behalf, it should notify HUD by sending an email to snapsappeals@hud.gov.

### 3. Types of Appeals.

The provision at 24 CFR part 578 sets forth the following types of appeals:

- *Solo Applicants.* A process for eligible project applicants that attempted to participate in their CoC planning process and believe they were denied the right to participate in a reasonable manner.

- *Denied or Decreased Funding.* A process for eligible applicants that are denied funds by HUD or that requested more funds than HUD awarded to them.

- *Consolidated Plan Certification.* A process for eligible applicants whose jurisdiction refused to provide a Certification of Consistency with the Consolidated Plan (form HUD-2990).

- *Competing CoCs.* A process when more than one CoC selects the same geographic area, for eligible applicants of lower-scoring CoCs, to appeal to HUD's decision to fund the competing CoC. Should two or more CoCs select the same geographic codes associated with formula areas during the CoC Program Registration process, HUD will use the competing CoC process provided by 24 CFR 578.35(d).

### a. Solo Applicant.

Per the Act, "A solo applicant may submit an application to the Secretary for a grant under subsection (a) and be awarded such grant on the same basis as such grants are awarded to other applicants based on the criteria described in section 11386a of this title, but only if the Secretary determines that the solo applicant has attempted to participate in the continuum of care process but was not permitted to participate in a reasonable manner. The Secretary may award such grants directly to such applicants in a manner determined to be appropriate by the Secretary." 42 U.S.C. 11382(*i*)

To apply as a solo applicant, the project applicant must submit a Solo Applicant Project Application in e-snaps by the application submission deadline of August 26, 2026 at 8:00 PM ET. Additionally, the solo applicant, Collaborative Applicant, and HUD must take the following steps (See 24 CFR 578.35 for more information):

(1) *Written Notice of Intent to Appeal.* The solo applicant must submit a written notice of intent to appeal, with a copy to the CoC, with their funding application.

(2) No later than 30 days after the date that HUD announces the awards, the solo applicant shall submit in writing, with a copy to the Collaborative Applicant, all relevant evidence supporting its claim. The submission shall be emailed to

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 119 of 129 PageID #: 277

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

snapsappeals@hud.gov.

**(3)** The CoC has 30 days from the date of its receipt of the solo applicant's evidence to respond to HUD in writing, with a copy to the solo applicant. The submission must be emailed to snapsappeals@hud.gov.

**(4)** HUD will notify the solo applicant and the CoC of its decision within 60 days of receipt of the CoC's response.

**(5)** If HUD finds that the solo applicant was not permitted to participate in the Continuum of Care planning process in a reasonable manner, then HUD may award a grant to the solo applicant when funds next become available and may direct the Continuum of Care to take remedial steps to ensure reasonable participation in the future. HUD may also reduce the award to the Continuum's applicant(s) and may order the Continuum of Care to take remedial steps to ensure that the solo applicant can reasonably participate in future funding opportunities.

**b. Denied or Decreased Funding.**

Eligible applicants, including project applicants and Collaborative Applicants, that submitted an application to HUD in response to this NOFO, that were either not awarded funds by HUD, or that requested more funds than HUD awarded, may appeal HUD's decision within 45 days after the final funding announcement. HUD will only consider for funding or additional funding applicants the CoC ranked within the CoC's maximum amount available. Collaborative Applicants that submitted CoC planning, and if applicable, UFA Costs project applications can appeal decreased funding if they can demonstrate HUD decreased the submitted project application's funding request to less than 5 percent of the CoC's FPRN or $1,250,000; whichever is less. To appeal HUD's decision, the applicant must submit a written appeal to HUD, with a copy to the authorized representative from the CoC's designated Collaborative Applicant. The written appeal must include evidence demonstrating HUD error and follow the instructions in this section.

The applicant must submit its written appeal by email to snapsappeals@hud.gov, from the organization's email address on the organization's letterhead and signed by the authorized representative–electronic signatures are acceptable.

**(1)** *Denied Funding.* To appeal HUD's decision, the applicant must submit a written appeal to HUD using the process outlined in Section VIII.D.2 of this NOFO within 45 days of the date of the funding announcement of the conditional awards from HUD, with a copy to the authorized representative from the CoC's designated Collaborative Applicant.

**(a)** Projects, including projects for CoC Planning funds and Unified Funding Agency (UFA) costs, could have been rejected by HUD because:

**i.** the individual project application failed to meet project eligibility, project quality, and project renewal thresholds set forth in this NOFO;

**ii.** the individual project application met project eligibility, project quality, and project renewal thresholds set forth in this NOFO, but was ranked in a position where a portion of the grant funds was outside the CoC's maximum award

amount, and after HUD reduced its funding to fit within the CoC's maximum award amount, HUD determined that the project was no longer feasible; or

**iii.** HUD did not have sufficient funding to fund all eligible projects ranked within the CoC's maximum award amount.

**(b)** For applicants that were fully denied funding for a grant, the applicant must provide evidence that demonstrates HUD error in not awarding the grant. Documentation submitted by the applicant must include:

**i.** documentation that the project was ranked within the maximum award amount available to the CoC;

**ii.** evidence from the project application supporting the applicant's claim that the project application met project eligibility, project quality, and project renewal thresholds set forth in this NOFO; and

**iii.** evidence that the applicant believes HUD failed to follow its selection threshold criteria set forth in this NOFO, which resulted in the project not being funded.

**(c)** For applicants that were denied funding due to the individual project's funding being decreased to such a level that the project was no longer feasible, documentation submitted by the applicant must include:

**i.** documentation that the project was ranked within the maximum award amount available to the CoC;

**ii.** evidence from the project application supporting the applicant's claim that the project application met project eligibility and project quality thresholds set forth in this NOFO;

**iii.** evidence that the applicant believes HUD failed to follow its selection threshold criteria set forth in this NOFO which resulted in the project not being funded (e.g., selecting a lower-scored project within the CoC or a similar project from another CoC); and

**iv.** the evidence in section VI.B.1.b of this NOFO as well as evidence for decreased funding in section VIII.D.3.b.(2) of this NOFO.

**(d)** For CoCs that were denied funding due to the score of the CoC Application or the score of the project application not being high enough to result in the funding of project(s) within the CoC, and the lower score for one or both application types was the result of HUD error, the CoC may appeal the CoC or project application score and request funding for affected projects. Documentation submitted by the Collaborative Applicant on behalf of the CoC must include evidence of HUD error when calculating the Coc Application or project application score.

**(2)** *Decreased Funding.* To appeal HUD's decision, the applicant must submit a written appeal to HUD using the process outlined in section VIII.D.2 of this NOFO within 45 days of the date of the final funding announcement of the conditional awards from HUD, with a copy to the authorized representative of the CoC's designated Collaborative Applicant.
Documentation submitted by the applicant must include evidence of the HUD error the

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 121 of 129 PageID #: 279

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

applicant believes was made.

**(3)** *HUD Decision and Notification of Decision.* Where HUD determines that HUD error occurred, and the applicant should have been awarded additional funding, HUD will provide funding from the next available funds and make necessary adjustments by amending the award. HUD will reverse a decision only when the applicant can show that HUD error caused the denial or decrease.

### c. Consolidated Plan Certification

1. *Written Appeal.*

An applicant may appeal to HUD a jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan. The appeals process is as follows:

With the project application that is submitted by the application deadline, the applicant must submit a written appeal. Project applicants may submit its appeal in e-snaps with its project application. When submitted with the project application in e-snaps, the applicant must also email a copy of this appeal to the jurisdiction that denied the Certification of Consistency with the Consolidated Plan and should send a copy to the authorized representative from the CoC's designated Collaborative Applicant, unless it is the Collaborative Applicant that is filing the appeal. Otherwise, the project applicant or Collaborative Applicant may submit the appeal to HUD using one of the methods in section VIII.D.2 of this NOFO. The written appeal must include the following information:

**(a)** a copy of the applicant's request to the jurisdiction for the Certification of Consistency with the Consolidated Plan;

**(b)** a copy of the jurisdiction's response stating the reasons for denial, including the reasons the proposed project is not consistent with the jurisdiction's Consolidated Plan in accordance with 24 CFR 91.510(c); and

**(c)** a statement of the reasons why the applicant believes its project is consistent with the jurisdiction's Consolidated Plan.

The appeal may include additional information the applicant believes supports its appeal, including:

i. any additional communication between the applicant and the jurisdiction regarding the request for certification of consistency; and

ii. documentation that identifies to whom within the jurisdiction the evidence was sent and the date on which it was sent.

**(2)** *Jurisdiction Response.* The jurisdiction will have 10 days after the receipt of the applicant's written appeal to submit a written response to HUD. The response must be sent by email to snapsappeals@hud.gov on the organization's letterhead, with a copy to the project applicant and the authorized representative of the CoC's designated Collaborative Applicant. The response must include the following information:

**(a)** an explanation of the reasons originally given for refusing to provide the Certification of Consistency with the Consolidated Plan; and

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 122 of 129 PageID #: 280

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

**(b)** written rebuttal to any claims made by the applicant in the written appeal.

**(3)** *HUD Decision and Notification of Decision.*

**(a)** HUD will review the submissions and will provide written notification, by email, of its decision to the applicant and the jurisdiction, with a copy to the authorized representative from the CoC's designated Collaborative Applicant within 45 days of the date of the receipt of the jurisdiction's response. In making its decision, HUD will consider whether the applicant submitted the request to the appropriate certifying jurisdiction and the reasonableness of the jurisdiction's refusal to provide the certificate.

**(b)** If HUD finds that the certifying jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan was reasonable, then HUD will automatically reject the project application. If HUD finds that the certifying jurisdiction's refusal to provide a certification of consistency with the Consolidated Plan was not reasonable, then HUD will consider the project application for funding in the respective FY CoC Program Competition in accordance with the review standards set forth in this NOFO.

**(c)** If the jurisdiction failed to provide written reasons for refusal, including the reasons why the project is not consistent with the jurisdiction's Consolidated Plan in its initial response to the applicant's request for a certification, HUD will find for the applicant without further inquiry or response from the political jurisdiction.

**(d)** HUD will provide written notification of its decision within 45 days of the date of HUD's receipt of the jurisdiction's response. Where the jurisdiction failed to provide a written response, HUD will provide written notification of its decision within 55 days of the date of HUD's receipt of the project applicant's response.

## E. Applicant Experience Survey

You are encouraged to provide feedback on your application experience by completing our Applicant Experience Survey. Your feedback is optional; you are not required to provide personal information. HUD may use your feedback to improve future NOFOs. Your feedback has no impact on funding decisions.

## F. Other Online Resources

You are encouraged to review the online resources to learn background on some of the NOFO requirements.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 123 of 129 PageID #: 281

# APPENDIX

Appendix

Appendix I Definitions

TABLE OF CONTENTS

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 123 of 129 PageID #: 281

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 124 of 129 PageID #: 282

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

# APPENDIX

## Appendix I. Definitions

### 1. Standard Definitions

For standard definitions not listed below, refer to 2 CFR 200.1.

**Affirmatively Furthering Fair Housing (AFFH)** - statutory obligation to affirmatively further the purposes and policies of the Fair Housing Act (see also 24 CFR 5.151, as amended by 90 FR 11020).

**Consolidated Plan** has the same meaning as defined at 24 CFR part 91.

**Eligibility requirements** are mandatory requirements for an application to be considered for funding.

**Opportunity Zone (OZs)** are defined in 26 U.S.C. 1400Z-1. In general, OZs are census tracts located in low-income communities where new investments, under certain conditions, may be eligible for preferential tax treatment.

**Primary Point of Contact (PPOC)** is the person HUD may contact with questions about the application submitted. The PPOC is listed in item 8F on the SF-424.

**System for Award Management (SAM)** has the same meaning as in 2 CFR 25.100(b).

**Threshold Requirements** are eligibility requirements you must meet before HUD rates your application for funding.

**Unique Entity Identifier (UEI)** has the same meaning as in 2 CFR 25.100(a).

### 2. Program Definitions.

Regulatory citations are provided below so applicants can refer to specific areas of the Rule. Projects awarded CoC Program funds are subject to the program regulations as they may be amended from time to time. However, YHDP Renewal and YHDP Replacement projects and awards are subject to CoC Program regulations except as otherwise provided in this NOFO.

The definitions and concepts contained in this section include terms that are important for all applicants to understand in order to complete all parts of the FY 2026 CoC Consolidated Application in e-snaps on behalf of the CoC.

a. *The following terms are defined in 24 CFR 578.* Applicants must refer to the Rule for the definitions contained in this section.

**(1)** Annual Renewal Amount (ARA)
**(2)** Applicant
**(3)** Centralized or Coordinated Assessment System
**(4)** Chronically Homeless
**(5)** Collaborative Applicant
**(6)** Continuum of Care
**(7)** Consolidated Plan
**(8)** Establishing and Operating the CoC. -24 CFR 578.5 and 24 CFR 578.7 detail the requirements for the establishment of a CoC and its responsibilities.

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 125 of 129 PageID #: 283

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

**(9)** Final Pro Rata Need (FPRN)

**(10)** High Performing Community (HPC)

**(11)** Homeless Management Information System (HMIS)

**(12)** HMIS Lead

**(13)** Homeless. - Although not reflected in the regulation, section 605 of Violence Against Women Act Reauthorization Act of 2022 amended Section 103(b) of the Act and requires HUD to consider certain individuals and families as homeless. This amendment took effect on October 1, 2022. Notwithstanding anything to the contrary contained elsewhere in this NOFO, where 578.3 paragraph (4) is referenced, applicants may apply to serve the population as defined in Section 103(b) of the Act.

**(14)** Permanent Housing

**(15)** Permanent Supportive Housing

**(16)** Preliminary Pro Rata Need (PPRN)

**(17)** Private Nonprofit Organization

**(18)** Program Participant

**(19)** Project

**(20)** Rapid Rehousing (RRH).

**(21)** Recipient

**(22)** Subrecipient

**(23)** Transitional Housing

**(24)** Unified Funding Agency

**(25)** Victim Service Provider

**b. *CoC Program NOFO Terms***. The following terms may be used during the administration of CoC Program grants. The definitions and specific concepts pertaining to these terms are further explained below:

**(1) Annual Renewal Demand (ARD) (24 CFR 578.17(b)(2)).** The total amount of all the CoC's projects that will be eligible for renewal in the CoC Program Competition, before any required adjustments to funding for leasing, rental assistance, and operating Budget Line Items (BLIs) based on FMR changes. HUD will calculate the ARD by combining the total amount of funds requested by eligible renewal projects in each FY funding opportunity, including:

**(a)** renewal projects approved and ranked on the Renewal Project Listing;

**(b)** renewal project amount(s) that were reallocated as recorded on the reduced or eliminated reallocation forms of the CoC Project Listing;

**(c)** YHDP renewal projects on the YHDP Renewal Project Listing; and

**(d)** YHDP Replacement projects, including YHDP Reallocation projects, on the YHDP Reallocation and Replacement Project Listing. YHDP Replacement projects are eligible for funding through the replacement of YHDP Renewal projects. The YHDP Replacement application must request the same amount of funding that is eligible for YHDP Renewal.

**(2) CoC Merger.** The CoC merger is a process where two or more CoCs voluntarily agree to merge the entire geographic area of all CoCs into one larger CoC. HUD strongly encourages CoCs that struggle with capacity to merge with a neighboring CoC or Balance of State CoC during each fiscal year's CoC Program Registration process.

Case 1:26-cv-00436-MSM-AEM Document 7-2 Filed 07/02/26 Page 126 of 129 PageID #: 284

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

To encourage CoC mergers and mitigate the potential adverse scoring implications that may occur when a high performing CoC merges with one or more lower-performing CoC(s), HUD will award 6 bonus points to the FY 2026 CoC Application Score for CoCs that registered as a merged CoC during the FY 2026 CoC Program Registration process.

**(3) Formula Area**. Defined in the Indian Housing Block Grant Program at 24 CFR 1000.302.

**(4) CoC Geographic Area.** 24 CFR 578.5 requires representatives from relevant organizations within a geographic area to establish a CoC to carry out the duties within the geographic area. The boundaries of identified CoC geographic areas cannot overlap, and any overlapping geographies are considered Competing CoCs. HUD follows the process at 24 CFR 578.35(d) to determine which CoC HUD will fund in the case of CoC geographic areas that overlap.

**(5) Homelessness and Human Trafficking.** HUD is clarifying that persons who are fleeing or attempting to flee human trafficking may qualify as homeless under paragraph (4) of the homeless definition at 24 CFR 578.3 or section 103(b) of the McKinney-Vento Homeless Assistance Act and may be eligible for certain forms of homeless assistance under the CoC Program, subject to other restrictions that may apply. HUD considers human trafficking, including sex trafficking, to be "other dangerous or life-threatening conditions that relate to violence against the individual or family member" under paragraph (4) of the definition of homeless at 24 CFR 578.3 and "other dangerous, traumatic, or life-threatening conditions related to the violence against the individual or a family member in the individual's or family's current housing situation" under section 103(b) of the McKinney-Vento Homeless Assistance Act.

**(6) Host Home and Kinship Care.** Host Home and Kinship Care is limited to YHDP Renewal and replacement grants. This is a model of housing where a family agrees to permit a youth program participant to reside with them. Recognizing the addition of another person in the home may increase costs to the family, HUD will consider YHDP Replacement project applications that propose to house youth with families and subsidize the additional costs attributable to housing the youth, including recruitment of hosts. An example of eligible costs would be additional food or transportation costs, which are eligible supportive services under 24 CFR 578.53(e)(7) or 24 CFR 578.53(e)(15). Recipients must keep records related to this determination for HUD review upon request. The residence is in a community-based setting and the family may be related to youth program participants with a time-limited or unlimited length of stay.

**(7) Housing Inventory Count (HIC).** A complete listing of the CoC's HUD and non-HUD funded beds dedicated to individuals and families experiencing homelessness in the CoC's geographic area.

**(8) Merged CoC.** A Merged COC is a CoC that includes geographic area that was associated with one or more other CoCs in any of the prior three registration periods (the FY 2023 CoC Registration period or later) and that CoC no longer operates.

**(9) New Tribal CoC. A** New Tribal CoC is a CoC that has newly registered in one of the prior three registration periods (FY 2023 CoC Registration period or later) that includes a

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 127 of 129 PageID #: 285

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

Formula Area (see definition in paragraph (3) above).

**(10) Reservation and Trust Land.** For purposes of this Notice, Reservations and Trust Land are types of formula areas as specifically delineated under HUD's IHBG program at 24 CFR 1000.302.

**(11) Rural Area.** For this competition a rural area is a county which:

**(a)** has no part of it within an area designated as a standard metropolitan statistical area by the Office of Management and Budget;

**(b)** is within an area designated as a metropolitan statistical area or considered as part of a metropolitan statistical area and at least 75 percent of its population is local on U.S. Census blocks classified as non-urban; or

**(c)** is located in a state that has a population density of less than 30 persons per square mile (as reported in the most recent decennial census), and of which at least 1.25 percent of the total acreage of such State is under Federal jurisdiction, provided that no metropolitan city in such State is the sole beneficiary of the grant amounts awarded under this NOFO. A metropolitan city means a city that was classified as a metropolitan city under section 102(a) of the Housing and Community Development Act of 1974 (42. U.S.C. 5302(a)) for the fiscal year immediately preceding the fiscal year for which CoC program funds are made available.

**(12) Self-sufficiency.** Consistent with the purposes of the McKinney-Vento Act, 42 U.S.C. § 11381(4), means the ability to meet basic needs, including a place to live, without public or private assistance. This is consistent with dictionary definitions of the term. The Oxford English Dictionary defines *self-sufficiency* as the "state or condition of not needing or relying on external assistance, support, or aid." Similarly, Merriam-Webster defines *self-sufficient* as "able to maintain oneself or itself without outside aid : capable of providing for one's own needs."

**(13) Shared Housing.** YHDP Renewal and YHDP Replacement projects, including YHDP Reallocations, may provide rental assistance for shared housing where youth may reside with family or another unrelated person. The youth leases from the property owner and shares the unit with the family or unrelated person. The unit may be a house or an apartment.

**(a)** YHDP rental assistance cannot be provided to a youth to reside in a unit occupied by an immediate family member. For this NOFO "immediate family member" includes parents, grandparents, and legal guardians.

**(b)** YHDP rental assistance cannot be provided to a youth in a shared housing unit if the landlord is an immediate family member of the youth.

**(c)** YHDP rental assistance may only be provided to a youth if the youth can enter into a valid, binding, and enforceable lease under applicable state or local law. This includes a legally appointed guardian executing a lease on behalf of a youth or an emancipated youth entering into a lease.

**(d)** YHDP Renewal and replacement grants may provide a shared housing option for youth program participants who are not part of a household but are interested in

Case 1:26-cv-00436-MSM-AEM   Document 7-2   Filed 07/02/26   Page 128 of 129 PageID #: 286

| I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix |

sharing a housing unit with a roommate unrelated to the program participant.

**(14) Special NOFO.** A competition administered under the Continuum of Care Supplemental to Address Unsheltered and Rural Homelessness designed to target efforts to reduce unsheltered homelessness in communities with very high levels of unsheltered homelessness and homelessness in rural areas. Funding through this Competition was awarded through either the Unsheltered Set Aside or the Rural Set Aside.

**(15) Split CoC.** A split CoC is a CoC that has newly registered during the prior three registration periods (FY 2023 CoC Registration period or later) and includes geographic area that was previously associated with another CoC that continues to operate.

**(16) YHDP Replacement Process, including YHDP Reallocation.** The YHDP Replacement process occurs when: (1) a CoC reallocates a YHDP Renewal project to create one or more new YHDP project(s) that has the same recipient referred to as YHDP Replacement in this NOFO; (2) a CoC is reallocating a YHDP Renewal project to create one or more new projects with a new recipient referred to as YHDP Reallocation in this NOFO; or (3) a CoC is reallocating YHDP Renewal project(s) to create YHDP Expansion applications through the YHDP Replacement process. For more information on YHDP Reallocation, see sections II.B.3.h of this NOFO.

Appendix II. Endnotes

[1] 2025 AHAR

[2] 2025 AHAR

[3] Based on national award reports at HUD Exchange

[4] Are Cities' Pledges to End Homelessness Working?

[5] USICH Opening Doors - Federal Strategic Plan to Prevent and End Homelessness - HUD Exchange

[6] The 2024 Annual Homelessness Assessment Report (AHAR to Congress) Part 1: Point-In-Time Estimates of Homelessness, December 2024

[7] How-Congress-Can-Reform-Governments-Misguided-Homelessness-Policies-20221011.pdf

[8] Tier 1 of FY24-25 CoC NOFO

[9] The 2024 Annual Homelessness Assessment Report (AHAR to Congress) Part 1: Point-In-Time Estimates of Homelessness, December 2024

[10] CoC_AwardComp_NatlTerrDC_2024.pdf

[11] Health Conditions Among Unsheltered Adults in the US

[12] CASPEH_Report_62023.pdf

[13] Mortality Among People Experiencing Homelessness in San Francisco During the COVID-19 Pandemic | Public Health | JAMA Network Open | JAMA Network

[14] Addressing Places in Seattle Where Overdoses and Crime are Concentrated: An Evidence-Based Approach

Case 1:26-cv-00436-MSM-AEM    Document 7-2    Filed 07/02/26    Page 129 of 129 PageID #: 287

I. Basic Information | II. Eligibility | III. Program Description | IV. Application Contents and Format | V. Application Review Information | VI. Submission Requirements and Deadlines | VII. Post-Award Requirements and Administration | VIII. Contact and Support | Appendix

[15] [2022 Annual Homelessness Assessment Report (AHAR) to Congress, Part 2: Annual Estimates of Sheltered Homelessness in the United States](#)

[16] [System-Performance-Measures-Data.xlsx](#)

[17] [2022 Annual Homelessness Assessment Report (AHAR) to Congress, Part 2: Annual Estimates of Sheltered Homelessness in the United States](#)

[18] [2022 Annual Homelessness Assessment Report (AHAR) to Congress, Part 2: Annual Estimates of Sheltered Homelessness in the United States](#)

[19] [National Crime Poll | Cicero Institute](#)

[20] [How-Congress-Can-Reform-Governments-Misguided-Homelessness-Policies-20221011.pdf](#)

[21] [Sex Offenders: An Overlooked but Significant Subpopulation of the Homeless | Cicero Institute](#)

[22] [Homeless Data and Plan News Release FINAL 3-21-22.pdf](#)

[23] [hes_resultsupdated.pdf](#)

[24] [Addressing Places in Seattle Where Overdoses and Crime are Concentrated: An Evidence-Based Approach](#)

[25] [2024 National Public Safety and Homelessness Poll | Cicero Institute](#)

[26] [Austin's homeless population dispersing after 2 years of camping ban enforcement | Community Impact](#)

[27] [20240304161555229_23-175 Amicus BOM Cicero PDFA.pdf](#)

[28] [History of The Salvation Army](#)

[29] [EXCLUSIVE: In Cities Across America, Homeless Services Are Doled Out Based on Race and Sexual Identity](#)